# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

In re: E. Palestine Train Derailment ----------------------------- BARBARA ADAMS; ERIC ADKINS; IAN BAKER; KAREN BAKER; LARRY BAKER; SAMUEL BARNHOUSE; ELIAS RALEY; CHAD BROWN; CHRIS REED; JESSICA BROWN; DOROTHY REYNOLDS; RICHARD J. BRUNO; JASON REYNOLDS; BRYON BUHECKER; JACK REYNOLDS; CINDY BUSSARD; NICHOLAS REYNOLDS; WALTER CALL; STACEY RINEHART; JOHN CARR; ARABELLA ROBERTS, (minor); ERIN CAPOTS; ROBERT RYND; JEREMY CARTER; SHIRLEY RYND; LUIS CHENG; EDWARD SICELOFF; ALAN COPE DEAN; PAUL SIMMONS; CHAD DAVIDSON; RHONDA SIMMONS; SAMANTHA DAVIDSON; CHESTER SMITH; NATHAN DENES; MONICA SOSA; ZAYNE DENES; DEBORAH STANLEY; AIRYONNA DENES; MARK STILES; DARYL DEVINE; RUBY STILES; JULIE DEWALT; STACEY STOCKUNAS; RILEY DICKEY, Minor; GENARO TORRES; SARA DICKEY; RACHEL TORRES; TYLER DICKEY; REBECCA TORRES; AUSTIN DRUCKENBROD; CYNTHIA TRIMBLE; KATHY JO DYKE; BRAYDON TROSKY; RICHARD DYKE; BROOKLYN TROSKY; LAUREN FEGERT; JASON TROSKY; LANCE FELGER; FRANK UNGARO; NEKO FIGLEY; MICHAEL FLAHERTY, Deceased; LINDA UNGARO; BRUCE FOGEL; PATRICK UNGARO; MEGAN FOGEL; DARLA VANNI; BRIAN FORWARD; ERIC VANNI; JOSHUA FORWARD; CHRISTOPHER VEITZ; AMBER FOSNAUGHT; LILLIAN VEITZ; AMY JO FOSTER; LINDY VEITZ; ANTHONY GENE FOSTER; LOGAN VEITZ; BRANDI FOSTER; TANNER VEITZ; CECILIA ROSE FOSTER; MEGAN VOGEL; SOPHIA MARIE FOSTER; BRANDI WAGONER; TRAVIS FOSTER; JULIE WAITE; TAMARA LYNN FREEZE; RUSSEL WAITE; MARY FROST; SHELBY WALLACE; JACOB GAUL; DEB WALTON; MANDY GAUL; SCOTT WALTON; SANDRA GILBERT; JAMES THOMAS WARD; SHAWNA GLASS; MAVERICK JAMES WARD; ANA ISABEL GRAUSO; SOPHIA MERYL WARD; SAMUEL GRAUSO; VIDA RESURRECTION WARD; JESSE GREATHOUSE; RICHARD WEAVER; MARCIE GREEN; OWEN WEIGEL; KENDRA GROSCOST; TAYLOR REYNOLDS

WEIGEL; CLARA GUESMAN; TINA WILD; ELIJAH HAINES; CHERYL WILLIAMS; VIOLET HAINES; WILLIAMS LOGGINS; ZOEY HAINES; EMMA WISE; ANDREW HARMON; RONI WISE;BOBBY HICKS; RICHARD MULL; CIERA HICKS; PATRICIA MICCO; GAGE HICKS; ETHAN MAHON; MICHAEL HICKS; IRIS MATTERN; TARA HICKS; VENITA MATHENEY; ALLEN HILL; ANGELA MACIAS; MICHAEL HOBRAT; CHELSEA MACOLINO; NOELLE HOBRAT; DENNIS MANLEY; TALESHA HOOD; MICHAEL MARTIN; GREG HOULETTE; CURTIS MAY; WILLIAM SMILEY HUGAR; EDWARD MCNEE; KATHERINE HUTCHISON; FAITH MILLER; SUE JAMERY; KURT MILLER; ANALYNN JASKOLA; MELISSA MILLER; FAITH JASKOLA; ARTHUR MUNYON; NICHOLAS JASKOLA; BRENDA MUNYON; JUSTIN JAVENS; KRISTY MUNYON; KENNETH W. JOHNSON; LINDA MURPHY; AMANDA MAZZETTI KEMMER; MORGAN MURPHY; BRAD KEMMER; RUSSELL MURPHY; CAINE KEMMER; MICHAEL MUSULIN; CHLOE KEMMER; BREANA NALESNIK; ALISSA KETTERER; ESTATE OF JOSEPH DONALD OLSON; LORI KETTERER; SHERRI LENNY L. KIEHL; NATHAN PIRTZ; LANDON KIRBY; LORI POSEY; LANNA KIRBY; DAVID QUIMBY; BERNIE KOSAR, SR.; LAUREN QUIMBY; BETH KOSAR; TERESA QUIMBY; NICHOLAUS KUZEMCHAK; THOMAS LEWIS; SOPHIA KUZEMCHAK; ROBERT LIPOSKY; KAITLYN KUZEMCHAK; STEVEN LOCKARD; LINDSAY KUZEMCHAK; STEVEN LOCKARD, JR.; MIA KUZEMCHAK; VONNETTIA LOCKARD; DANA KYKER; TIFFANY LOGGINS; TERRI LATTANZIO; TOM YOUNG; CHRISTOPHER RALEY; LYNN YOUNG; COLE RALEY

Movant-Appellants

vs.

NORFOLK SOUTHERN RAILROAD COMPANY; NORFOLK SOUTHERN CORPORATION

Defendants - Appellees

Appeal from the U.S. District Court for the Northern District of Ohio, Eastern Division, Honorable Benita Y. Pearson, United States District Judge Case No. 4:23-cv-00242-BYP

_____

## BRIEF OF APPELLANTS

_____

***/s/ Jedidiah I. Bressman***
Jedidiah I. Bressman
**BRESSMAN LAW**
2727 Tuller Parkway, Suite 100
Dublin, Ohio 43017
Phone: (614) 538-1116
Fax: (614) 761-8399
Jedidiah@bressmanlaw.com
Counsel for Appellant

# CORPORATE DISCLOSURE STATEMENT

Appellants are individual class members and natural persons; no disclosure is required of them under Fed. R. App. P. 26.1. Counsel will file the Sixth Circuit disclosure of corporate affiliations as required by 6 Cir. R. 26.1.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT .................................ix

STATEMENT OF RELATED CASES .........................................ix

JURISDICTIONAL STATEMENT ............................................1

STATEMENT OF THE ISSUES..............................................2

STATEMENT OF THE CASE ...............................................2

    A. Nature of the Case and the Underlying Class Settlement .............2

    B. The Fairness Hearing and Class Counsel's Representations About Health Risks.........................................................4

    C. The District Court's Consideration of the Settlement, Petty's Contrary Expert Report, and the Druckenbrod Diagnosis. ...........6

    D. Chronology of Newly Discovered Evidence....................................8

    E. The Motions for Relief and the Filings Below .............................10

    F. Contemporaneous Sixth Circuit and Supreme Court Proceedings on the Objectors' Appeal ...................................................11

    G. The District Court's Denial of Relief ........................................12

    H. This Appeal........................................................12

SUMMARY OF THE ARGUMENT .......................................12

ARGUMENT ...........................................................15

    *Standard of Review*.................................................15

  I.  The District Court Abused Its Discretion in Denying Rule 60(d)(3) Fraud on the Court Relief. ...........................................16

    A. The Legal Standard for Fraud on the Court Under Rule 60(d)(3) ...................................................................16

    B. Each of the Five Carter / Demjanjuk Elements Is Satisfied on the Record ..................................................................18

      1. Element 1: Conduct on the Part of an Officer of the Court.. 18

      2. Element 2: Conduct Directed to the Judicial Machinery Itself ..............................................................18

      3. Element 3: Intentionally False, Willfully Blind, or in Reckless Disregard for the Truth .......................................20

      4. Element 4: Positive Averment or Concealment When Under a Duty to Disclose..............................................21

      5. Element 5: Deceived the Court ...........................................24

    C. The Record Independently Satisfy the "Several Notches Above (b)(3)" Standard. ...................................................25

    D. Two Errors in the District Court's Contrary Analysis .............25

E. Response to Contrary Arguments ..............................................27

F. Relief Requested Under This Argument ...................................28

II. The District Court Abused Its Discretion in Denying Rule 60(b)(3) Relief Because Norfolk Is Plainly an Opposing Party and Because Movants Established Fraud, Misrepresentation, and Misconduct. ...............................................................................................28

    A. Norfolk Is Unambiguously an "Opposing Party" Within Rule 60(b)(3). ...............................................................................29

    B. On the Record, Norfolk's Own Conduct Satisfies Rule 60(b)(3) by Clear and Convincing Evidence...........................................30

      1. Norfolk Made Affirmative Misrepresentations About Environmental Testing. ......................................................30

      2. NS Structured the Settlement to Preclude Adverse Expert Evidence. ...............................................................................32

      3. The Supplemental Termination Agreement Was Concealed From Class Members. .........................................................34

      4. The District Court's Distinction of Movants' Cases Was Overbroad. ...........................................................................34

      5. Response to Contrary Arguments........................................35

        a) Norfolk's "No Involvement" Framing..............................35

        b) The Hunter "Settlement Negotiations" Formulation. .....36

        c) Class Counsel's "Nothing New" Framing........................37

      6. Relief Requested.................................................................37

III. The District Court Abused Its Discretion in Denying Rule 60(b)(6) Relief Because Extraordinary Circumstances Support Relief and the One-Year Bar Does Not Foreclose the Motions......................38

    *Standard of Review* ......................................................................38

    A. Rule 60(b)(6) Is Available Because This Argument Rests on Extraordinary-Circumstances Grounds That Rule 60(b)(3) Cannot Reach.............................................................................38

      1. Rule 23(g) Fiduciary Duty Is a Freestanding Category of Extraordinary Circumstances............................................39

      2. Judicial-Supervisory Abdication Is a Freestanding Category of Extraordinary Circumstances............................................41

      3. The Ground is Distinct From Argument II's Rule 60(b)(c) Claim. ...................................................................................42

    B. Extraordinary Circumstances Support Relief .........................43

    1. Public-Relations Firm Engaged to Produce Class-
       Communications Video ........................................................43
    2. Class Members Were Not Informed of Their Own Retained
       Expert's Contrary Opinions ................................................44
    3. Post-Approval Evidence Contradicts the Pre-Approval
       Health Representations. ......................................................44
  C. Narrowly Tailored Relief. .........................................................45
  D. The Motions Were Filed Within a Reasonable Time ...............45
  E. Response to Contrary Arguments .............................................46
  F. Relief Requested .......................................................................46

IV.  Neither This Court's Prior Bond-Dismissal Order in In re East
    Palestine Train Derailment, 158 F.4th 704 (6th Cir. 2025), Nor the
    District Court's Post-Judgment Reliance on It, Bars Movants' Rule
    60 Motions .......................................................................................47
  *Standard of Review* ......................................................................47
  A. The Sixth Circuit's 158 F.4th 704 Disposition Made
    Preliminary Cardizem Merits Assessments Within a Procedural
    Bond-Dismissal Framework, Not a Merits Ruling on the
    Grounds Now Before This Court. ..............................................47
    1. The Jurisdictional Dismissal Rested Solely on Fed. R. App.
       P. 4(a)(5)(A) ........................................................................49
    2. The Bond-Failure Dismissal Was a Powers Equitable
       Balancing.............................................................................49
    3. The Panel's Merits Assessment Was Preliminary Within
       Cardizem's Factor Three, Not a Full Merits Adjudication. .49
    4. The Panel's Merits Assessment Reached the Environmental-
       Data Question, Not Rule 23(g) or Fraud-on-the-Court........51
  B. Movants Were Not Parties to the Prior Appeal and Are Not
    Bound ........................................................................................51
  C. The Present Rule 60 Evidence Was Not in the 158 F.4th 704
    Record .......................................................................................53
  D. The Jinks / Bell / Aikens "No Substitute for Appeal" Doctrine
    Does Not Reach These Facts .....................................................54
    1. The Rule 60 Grounds Could Not Have Been Raised on the
       Direct Appeal .....................................................................54
    2. Movants Were Not the Appellants in the Direct Appeal .....55
  E. Response to Contrary Arguments .............................................56
  F. Relief Requested Under This Argument ...................................57

V.    The Release Disclaimers Do Not Bar Rescission Because Fraud Vitiates Consent, and Class Counsel's Concealment Reaches the Very "Opportunity to Confer" and "Unknown Consequences" Provisions on Which the District Court Relied ..............................58

    A. The District Court Acknowledged the Governing Rule and Then Failed to Apply It...................................................................58

    B. The "Public Information" Rationale Cannot Sustain the Order. ......................................................................................................59

    C. The Release Disclaimers Do Not Bar Recission........................60

    D. Response to the District Court's Additional Arguments ..........62

    E. The Appropriate Remedy..........................................................63

VI.   Alternative Relief — Remand for Evidentiary Hearing on Material Disputed Facts .............................................................................64

    *Standard of Review* ........................................................................64

    A. The District Court Denied the Motions Without Any Evidentiary Hearing...................................................................64

    B. Movants Have Made a Colorable Showing on Each Ground....65

    C. Specific Disputed Facts on Remand..........................................65

    D. Scope of the Requested Evidentiary Hearing and Rule 62.1 / 12.1 Considerations .................................................................66

    E. Relief Requested in the Alternative .........................................66

CONCLUSION ......................................................................................67

CERTIFICATE OF COMPLIANCE.......................................................68

CERTIFICATE OF SERVICE................................................................69

ADDENDUM .........................................................................................70

# TABLE OF AUTHORITIES

**Cases**

*Ackermann v. United States, 340 U.S. 193 (1950)* .................................. 55

*Aikens v. Ingram, 652 F.3d 496 (4th Cir. 2011)* .................. 54, 55, 56, 58

*Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997)* .......................... 52

*In re Auto. Parts Antitrust Litig., 33 F.4th 894 (6th Cir. 2022)* ....... 40, 44

*Bell v. Eastman Kodak Co., 214 F.3d 798 (6th Cir. 2000)* .......... 54, 55, 58

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313 (1971)*
.................................................................................................................. 51

*Buck v. Davis, 580 U.S. 100 (2017)* ................................................ 43, 45

*In re Cardizem CD Antitrust Litig., 391 F.3d 812 (6th Cir. 2004)* . passim

*Carter v. Anderson, 585 F.3d 1007 (6th Cir. 2009)* ..................... 17, 24, 57

*Demjanjuk v. Petrovsky, 10 F.3d 338 (6th Cir. 1993)* ........... 17, 19, 25, 57

*In re Dry Max Pampers Litig., 724 F.3d 713 (6th Cir. 2013)* ........... 39, 40

*In re East Palestine Train Derailment, 158 F.4th 704 (6th Cir. 2025)* .. ix,
3, 10, 47, 48, 57

*Evans v. City of Ann Arbor, No. 22-1774, 2023 WL 5146731 (6th Cir.
Aug. 10, 2023)* .......................................................................................... 1

*In re Ferro Corp. Derivative Litig., 511 F.3d 611 (6th Cir. 2008)* .... 16, 64

*GenCorp, Inc. v. Olin Corp., 477 F.3d 368 (6th Cir. 2007)* ..................... 54

*Giasson Aerospace Sci., Inc. v. RCO Eng'g, Inc., 872 F.3d 336 (6th Cir.
2017)* ................................................................................................. 17, 25

*Glazer v. Lehman Bros., Inc., 394 F.3d 444 (6th Cir. 2005)* ................... 62

*Gonzalez v. Crosby, 545 U.S. 524 (2005)* .............................................. 38

*Hansberry v. Lee, 311 U.S. 32 (1940)* ........................................ 52, 53, 56

*Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)* .... 18,
21, 63

*Hernandez v. Results Staffing, Inc., 907 F.3d 354 (5th Cir. 2018)* ... 34, 35

*H.K. Porter Co. v. Goodyear Tire & Rubber Co., 536 F.2d 1115 (6th Cir.
1976)* ................................................................................................. 17, 22

*Hunter v. Sterling Mortg. & Inv. Co., No. 21-1496, 2022 WL 633845 (6th
Cir. Mar. 4, 2022)* ...................................................................... 17, 25, 36,

*Info-Hold, Inc. v. Sound Merch., Inc., 538 F.3d 448 (6th Cir. 2008)*
.......................................................................................................... passim

*Ingram Corp. v. J. Ray McDermott & Co., 698 F.2d 1295 (5th Cir. 1983)*
.......................................................................................................... passim

*Integrated Pipe & Supply, LLC v. Critical Path Res., Inc.*, No. 4:23-CV-02006, 2024 WL 554151 (S.D. Tex. Feb. 12, 2024)..........................26, 27

*Jinks v. AlliedSignal, Inc.*, 250 F.3d 381 (6th Cir. 2001)..... 54, 55, 56, 58

*Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843 (6th Cir. 2010).......................16

*Jordan v. Paccar, Inc.*, No. 95-3478, 1996 WL 528950 (6th Cir. Sept. 17, 1996) ...........................................................................................29, 30, 34

*King v. United States*, 143 F.4th 705 (6th Cir. 2025) .......................38, 43

*Kobatake v. E.I. DuPont De Nemours & Co.*, 162 F.3d 619 (11th Cir. 1998) ............................................................................ 58, 59, 61, 62

*Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097 (9th Cir. 2006)29, 30

*McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586 (6th Cir. 2002)................................................................38, 42, 43

*MMAR Grp., Inc. v. Dow Jones & Co.*, 187 F.R.D. 282 (S.D. Tex. 1999) ..................................................................................................34, 35

*United States v. Moored*, 38 F.3d 1419 (6th Cir. 1994) ..........................47

*Olle v. Henry & Wright Corp.*, 910 F.2d 357 (6th Cir. 1990)..................46

*Park W. Galleries, Inc. v. Hochman*, 692 F.3d 539 (6th Cir. 2012)........63

*Powers v. Citizens Union Nat'l Bank & Tr. Co.*, 329 F.2d 507 (6th Cir. 1964) ...........................................................................................48, 49

*Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978) .................34, 35

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299 (6th Cir. 2016).........................................................................................39

*Sheely v. Feezle*, No. 25-929, 2026 WL 568332 (U.S. Mar. 2, 2026).......11

*Taylor v. Sturgell*, 553 U.S. 880 (2008)..........................................15, 51

*Thompson v. Bell*, 580 F.3d 423 (6th Cir. 2009) ....................................46

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981)...................................50

*Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305 (1985)......50

**Statutes**

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1332(d)..................................................................................1

**Rules and Other Authorities**

Fed. R. App. P. 4..............................................................................1, 48, 49

Fed. R. App. P. 12.1 ...................................................................66

Fed. R. App. P. 25 .....................................................................69

Fed. R. App. P. 26.1 ......................................................................i

Fed. R. App. P. 32 .....................................................................68

Fed. R. Civ. P. 6 ................................................................. *passim*

Fed. R. Civ. P. 23(g) ........................................... 18, 22, 23, 61

Fed. R. Civ. P. 60 .............................................................. *passim*

Fed. R. Civ. P. 62.1 ...................................................................66

6 Cir. R. 26.1 ..................................................................................i

6 Cir. R. 32 ................................................................................68

## STATEMENT REGARDING ORAL ARGUMENT

Appellants request oral argument. This appeal presents recurring questions about the interaction of Fed. R. Civ. P. 60(b)(3), (b)(6), and (d)(3) with the district court's continuing Rule 23(e) duties.

## STATEMENT OF RELATED CASES

In re East Palestine Train Derailment, 158 F.4th 704 (6th Cir. 2025), cert. denied sub nom. Sheely v. Feezle, No. 25-929, 2026 WL 568332 (Mar. 2, 2026) (objectors' appeal from same underlying judgment). No other related case is known to counsel.

# JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1332(d) (Class Action Fairness Act) and retained jurisdiction over post-judgment motions under Federal Rule of Civil Procedure 60. This Court has jurisdiction under 28 U.S.C. § 1291 over the order under review, which denied Movants' Motions for Relief from Judgment under Fed. R. Civ. P. 60(b)(3), 60(b)(6), and 60(d)(3), and is a final, appealable post-judgment order

The Motions for Relief (RE 993, PageID# 68906; RE 994, PageID# 69016) were filed on September 25 and 29, 2025, within one year of the Final Approval Order (RE 557, PageID# 14580), entered September 27, 2024), satisfying Fed. R. Civ. P. 60(c)(1). The Rule 60(d)(3) claim is not subject to a time limitation. *See Evans v. City of Ann Arbor*, No. 22-1774, 2023 U.S. App. LEXIS 21023, at *18 (6th Cir. Aug. 10, 2023) ("[T]his time bar does not apply to Rule 60(d), which imposes no time limit on a court to 'set aside a judgment for fraud on the court,'").

The district court denied both Motions on May 1, 2026 (RE 1053, PageID# 73040). Appellants filed their Notice of Appeal on May 29, 2026 (RE 1054, PageID# 73069), 28 days after entry, which is timely under Fed. R. App. P. 4(a)(1)(A).

# STATEMENT OF THE ISSUES

1. Whether the district court abused its discretion in denying Rule 60(d)(3) relief where Class Counsel commissioned an "independent" expert video, presented it as such to the class and the district court, and concealed the arrangement until it was discovered by counsel in June 2025.

2. Whether the district court erred in construing Rule 60(b)(3) to categorically exclude Class Counsel from the "opposing party" requirement, and whether it further erred in holding Rule 60(b)(6) unavailable as a residual safety valve.

3. Whether Appellants' Personal Injury Payment releases are subject to rescission for fraudulent inducement notwithstanding Release ¶ 6, ¶ 19, and Norfolk Southern's status as counterparty, where the confidential Supplemental Termination Agreement aligned Norfolk Southern's interests with Class Counsel's opt-in campaign.

# STATEMENT OF THE CASE
## A. Nature of the Case and the Underlying Class Settlement

On February 3, 2023, a Norfolk Southern freight train derailed in East Palestine, Ohio, releasing vinyl chloride and other hazardous materials into the surrounding air, soil, and water. (Motion for Relief, RE

993-1, PageID# 68909-68911.). The derailment gave rise to a nationwide class action captioned *In re East Palestine Train Derailment*, No. 4:23-cv-00242 (N.D. Ohio) (Pearson, J.), consolidating claims of residents and property owners within the affected area against Norfolk Southern Railway Company and Norfolk Southern Corporation ("Norfolk"). (See generally RE 1053, PageID# 73044-46.)

On September 27, 2024, the district court entered its Final Approval Order (RE 557, PageID# 14580) approving a class-action settlement for $600 million gross. (Motion for Final Approval, RE 518-1, PageID# 10905.)

The settlement included two components relevant here:

1. A general class recovery for property damage and related claims, subject to the release running to Norfolk by all class members; and

2. A Voluntary Exposure Supplement (also called the "Personal Injury Payment"), which was an opt-in supplemental program under which class members could accept an additional payment in exchange for signing a separately executed release of personal-injury claims against Norfolk.

(Motion for Final Approval, RE 518-1, PageID# 10911.)

Appellants are 196 class members who opted into the Personal Injury Payment portion of the settlement and signed the personal-injury release. (RE 993-2, PageID# 68938 (144 movants) and RE 994-2, PageID# 69050 (52 movants).) All 196 are Appellants on this appeal. (Notice of Appeal, RE 1054, PageID# 73069.)

### B. The Fairness Hearing and Class Counsel's Representations About Health Risks

Class Counsel's Motion for Final Approval and supporting Memorandum contain no references to Dr. Carson. (RE 518, PageID# 10896; RE 518-1, PageID# 10899.) The pre-approval Carson-video chronology is:

a) July 26, 2024. Stephanie Wolf of Rebuttal PR emailed M. Elizabeth Graham of Class Counsel (and other Class Counsel attorneys, including Seth Katz, Adam Gomez, and Russ Abney), transmitting "the edited version" of the Dr. Carson video. (Reply Brief, RE 1014-1, PageID# 70983.) Russ Abney of Class Counsel responded by directing that the video not be distributed before the town hall. (*Id.*) Movants' counsel first obtained this email chain in June 2025. (RE 1014, PageID# 70954.)

b) August 1, 2024. Class Counsel hosted a Zoom town hall for absent class members at which the Rebuttal PR-produced Carson video was played. Class Counsel introduced Dr. Carson as "not involved in the litigation" and as "a completely independent third party." (Motion for Relief, RE 993-1, PageID#ID# ID # 68916.) Dr. Carson stated on the video that "we can pretty well predict that people are gonna be safe in the long term." (RE 993-1, PageID# 68918.)

c) September 6, 2024. Class Counsel filed the Motion for Final Approval (RE 518, PageID# 10896) and the supporting Memorandum (RE 518-1, PageID# 10899). Neither the Motion nor the Memorandum mentioned Dr. Carson or the town hall video.

d) September 23, 2024. Objector counsel filed the Declaration of Stephen Petty. (RE 534, PageID# 11627.) Petty characterized Dr. Carson's video conclusions as "at best speculation, and at worst simply incorrect." (RE 534, PageID# 11628.)

e) September 25, 2024. The district court held the fairness hearing. (RE 553, PageID# 14423.) Objecting counsel raised the Carson

video, describing it as "the presentation by Dr. Carson, a toxicologist, that apparently, at the request of class counsel, [conveyed] '[t]hat there is no risk of injury to you people in the community.'" (RE 553 at 35:19-34, PageID# 14457.) Judge Pearson then directly asked Class Counsel about the video: "So the video you heard Mr. Abraham speak to the Court about, played by Plaintiffs' counsel — . . . that suggests no worries, no illness will befall any of you, did that happen?" (RE 553 at 55:10-14, PageID# 14477.). Class Counsel responded that Dr. Carson "has not been retained by Plaintiffs' counsel. He is a friend, a colleague of one of the members of the [Plaintiffs' Executive Committee]," (RE 553 at 55:15-20, PageID# 14477), and did not disclose the Rebuttal PR production role.

- September 27, 2024. The district court entered the Final Approval Order. (RE 557, PageID# 14580.)

## C. The District Court's Consideration of the Settlement, Petty's Contrary Expert Report, and the Druckenbrod Diagnosis.

Class Counsel's affirmative fairness proffer consisted of the Motion for Final Approval (RE 518, PageID# 10896), the supporting Memorandum (RE 518-1, PageID# 10899), and accompanying declarations, principally

the Declaration of Richard Schuhmann, Ph.D. on environmental sampling (RE 518-10, PageID# 11186). None referenced Dr. Carson or the August 1 town-hall video. Schuhmann's methodology relied on EPA background values for dioxins and furans and testing (RE 518-10, PageID# 11186). At the fairness hearing, Class Counsel represented: "We didn't rely on EPA data. We went out and we did our own testing. We did split samples. We eliminated background levels. We did everything that we were supposed to do." (RE 553, 6:4-7, PageID# 14487.).

Stephen Petty, Class Counsel's own retained testing expert, filed a Declaration on September 23, 2024. (RE 534, PageID# 11627.). Petty stated he "was hired by plaintiffs' attorneys Simmons Hanly Conroy; and later the other class law firms." (*Id.* ¶ 6.). Petty characterized Dr. Carson's conclusions as "at best speculation, and at worst simply incorrect." (*Id.* ¶ 9.). Petty further opined that the EPA/Arcadis sampling was systematically mis-directed because the wind rose on February 6, 2023 shifted mid-afternoon and the evacuation zone (the sampling footprint) was based on outdated morning wind data. (*Id.* ¶¶ 8, 28-29.). Petty described himself as "precluded from providing this information under confidentiality." (*Id.* ¶ 6.). Class Counsel's Motion for Final

Approval invoked the case Protective Order: "Stephen Petty's work was in part based on protected materials under the Protective Order (ECF No. 127), preventing Class Counsel from disclosing it without violating the order." (RE 518-1, PageID# 10927.). At the fairness hearing, Class Counsel characterized Petty as merely "one voice" against "scores of other experts." (RE 553, 64:15-17, PageID# 14486.). Class Counsel did not identify or produce those other experts and did not move to release Petty from either confidentiality overlay.

On August 21, 2024, thirty-five days before the fairness hearing, Class Counsel signed an Extraordinary Injury Claim for Austin Druckenbrod that included a Cleveland Clinic diagnosis of Reactive Airways Dysfunction Syndrome caused by derailment exposure. (RE 993-3, PageID# 68943.) That diagnosis was not disclosed to the district court or absent class members.

### D. Chronology of Newly Discovered Evidence

Movants' counsel assembled the evidentiary predicate for the Rule 60 Motions after the Final Approval Order was entered on September 27, 2024. The "Newly Discovered Evidence" consists of:

- Peer-reviewed studies published post-approval including the Golumb Gulf-War-illness-symptom study (December 2024) and the Kent State et al. soil-contamination study (February 2025) (RE 1014-3, PageID# 70989);

- FOIA productions obtained by Movants' counsel between May and July 2025, which included FEMA/EPA internal correspondence containing internal references to a "really toxic plume" and an "emerging cancer cluster" (RE 1014-5, PageID# 71037) and the March 6, 2023 EPA sampling-plan letter reflecting Norfolk's chemical-removal request (RE 1014-2, PageID# 70985);

- The July 26, 2024 Rebuttal PR email chain transmitting the "edited version" of the Carson video, obtained by Movants' counsel in June 2025 (RE 1014-1, PageID# 70983);

- The Scott Smith August 2025 confirmatory soil testing (RE 1014-4, PageID# 71002); and

- Post-approval medical developments among Appellants, including the Austin Druckenbrod Reactive Airways

Dysfunction Syndrome diagnosis and the cancer diagnoses and deaths documented in RE 994 and RE 1014.

Each item was obtained or first came into existence after the Final Approval Order and after the appellate record in *In re East Palestine Train Derailment* was closed.

**E. The Motions for Relief and the Filings Below**

1. First Motion for Relief filed September 25, 2025, on behalf of 144 class members. (RE 993, PageID# 68906). Sought relief under Fed. R. Civ. P. 60(b)(3), 60(b)(6) and 60(d)(3), based on newly discovered evidence of misrepresentation, concealment of expert findings, and breach of fiduciary duty by Class Counsel. (RE 993-1, PageID# 68908.)

2. Second Motion for Relief filed September 29, 2025, on behalf of 52 additional class members. (RE 994, PageID# 69016.) Substantively similar arguments. The 31 page Memorandum in Support (RE 994-1, PageID# 69018) sets out the fraud allegations and documentary evidence in detail.

3. Norfolk's Response in Opposition filed October 10, 2025. (RE 1002, PageID# 69093.)

4. Class Counsel's Response in Opposition filed October 10, 2025. (RE 1003, PageID# 69120.)

5. Movants' Reply in Support filed October 24, 2025 (RE 1014, PageID# 70952), with exhibits including the Rebuttal PR email (RE 1014, PageID# 70983).

## F. Contemporaneous Sixth Circuit and Supreme Court Proceedings on the Objectors' Appeal

Separately from these Motions, five class objectors (only one of whom, Tamara Lynn Freeze, is among the current 196 Appellants) appealed the Final Approval Order. The Sixth Circuit consolidated the appeals as Nos. 24-3852, 24-3880, and 25-3342 (RE 1041, PageID# 72865) and dismissed them on November 5, 2025 in In re East Palestine Train Derailment, 158 F.4th 704 (6th Cir. 2025). The mandate issued December 2, 2025. (RE 1041, PageID# 72865.) Certiorari was denied March 2, 2026. (*Sheely v. Feezle*, No. 25-929, 2026 WL 568332 (Mar. 2, 2026); RE 1049, PageID# 73007.).

The Motions for Relief were filed September 25 and 29, 2025 (RE 993, PageID# 68906; RE 994, PageID# 69016), during the pendency of the objectors' Sixth Circuit appeal. Briefing was complete October 24, 2025 (RE 1014, PageID# 70952). The district court did not rule until May 1,

2026 (RE 1053, PageID# 73040), about five months after mandate. The objectors' appeal challenged the Rule 23(e) fairness of the class-wide settlement as approved; the Motions seek relief, as to Appellants only, from the Personal Injury Payment releases based on newly discovered evidence of fraud and misconduct by Class Counsel that the prior panel did not have before it. See Statement of the Case § D.

### G. The District Court's Denial of Relief

On May 1, 2026, the district court denied both Motions in a 29-page Memorandum of Opinion and Order (RE 1053, PageID# 73040) without an evidentiary hearing. Each ground of denial Rule 60(d)(3), Rule 60(b)(3), Rule 60(b)(6), the effect of 158 F.4th 704, the release disclaimers, and the denial of an evidentiary hearing is addressed in Arguments I through VI, respectively.

### H. This Appeal

Appellants timely filed their Notice of Appeal on May 29, 2026 (RE 1054, PageID# 73069), 28 days after entry of the order below.

### SUMMARY OF THE ARGUMENT

A Rule 60 motion attacks a defect in how a judgment was obtained, not its merits. *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). Appellants, 196 opt-in class members whose individually signed Personal Injury

Payment releases were the products of the process below, do not ask this Court to reweigh the settlement. They ask this Court to correct six legal errors in the district court's disposition of Motions aimed at the integrity of that process.

First, on Rule 60(d)(3), the district court declined to reach fraud on the court on the strength of a factual finding that "[t]he additional information on which Movants rely . . . has long been public, not hidden." (RE 1053, PageID# 73067.). That finding is refuted by documentary evidence Class Counsel itself did not disclose, including most importantly the July 26, 2024 Rebuttal PR email chain transmitting the "edited version" of the Carson video from Class Counsel's retained public-relations firm (ECF 1014-1, PageID# 70983), which brings the record squarely within the Sixth Circuit's four-element *Carter/Demjanjuk* test. *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009); *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993).

Second, on Rule 60(b)(3), the district court's *Latshaw* footnote (RE 1053, PageID# 73060 n.13) addressed only the claim against Class Counsel and decided nothing about the Rule 60(b)(3) claim against Norfolk, unambiguously an "opposing party" as defendant, settlement

13

counterparty and release beneficiary. Norfolk's own affirmative misrepresentations and concealments independently satisfy Rule 60(b)(3) under *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 456 (6th Cir. 2008).

Third, on Rule 60(b)(6), the district court held the safety-valve categorically foreclosed by its Rule 60(b)(3) denial. That holding is inconsistent with the Sixth Circuit's mutual-exclusivity framework. *King v. United States*, 143 F.4th 705, 711 (6th Cir. 2025); *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 596 (6th Cir. 2002). Argument III rests on distinct extraordinary-circumstances grounds Rule 60(b)(3) cannot reach: Rule 23(g) fiduciary-adequacy failure and judicial-supervisory abdication. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 717-18 (6th Cir. 2013).

Fourth, the district court read *In re East Palestine Train Derailment*, 158 F.4th 704 (6th Cir. 2025), as a merits ruling. It was a two-step procedural dismissal (Rule 4(a)(5)(A) jurisdiction and *Powers* appeal bond) with a preliminary *Cardizem* factor-three assessment the panel itself characterized as preliminary. 158 F.4th at 712. It did not adjudicate the fraud-on-the-court, opposing-party, Rule 23(g)-adequacy, or judicial-

supervisory grounds now before this Court, and with one exception none of the 196 Appellants was a party to that appeal. *Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008).

Fifth, on the release disclaimers, the district court acknowledged that "a party's fraud can render a release voidable," (RE 1053, PageID# 73067 citing *Kobatake* and *Ingram Corp*.), and then declined to apply that rule on the "long . . . public" ground rebutted in Argument I. Fraud invalidates consent; the disclaimers do not bar rescission.

Sixth, the district court's application of the *Integrated Pipe* third-party-fraud rule to Movants' Rule 60(d)(3) claim is a category error; the rule addresses two-party contract rescission and does not displace Rule 60(d)(3), which reaches Class Counsel's conduct directly as officers of the court. That point is elaborated within Argument I.

In the alternative, Appellants respectfully request remand for an evidentiary hearing on the disputed facts identified in Arguments I through VI.

### **ARGUMENT**

*Standard of Review*

Denial of a Rule 60(b) motion is reviewed for abuse of discretion. *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008); *Jones*

*v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010). Denial of a Rule

60(d)(3) motion is also reviewed for abuse of discretion. *Info-Hold*, 538

F.3d at 454. A district court abuses its discretion when it "commits a clear

error of judgment, such as applying the incorrect legal standard,

misapplying the correct legal standard, or relying upon clearly erroneous

findings of fact." *Info-Hold*, 538 F.3d at 454 (*quoting In re Ferro Corp.

Derivative Litig.*, 511 F.3d 611, 623 (6th Cir. 2008)). Legal questions

embedded in a Rule 60 ruling, including the interpretation of Rule

60(b)(3)'s "opposing party" requirement and the *Carter/Demjanjuk*

elements of fraud on the court, are reviewed de novo. *See Info-Hold*, 538

F.3d at 454.

## I. __The District Court Abused Its Discretion in Denying Rule 60(d)(3) Fraud on the Court Relief__.

### A. __The Legal Standard for Fraud on the Court Under Rule 60(d)(3)__

The district court correctly articulated the governing five-element

test:

> conduct: 1) on the part of an officer of the court; that 2) is
> directed to the judicial machinery itself; 3) is intentionally
> false, willfully blind to the truth, or is in reckless disregard
> for the truth; 4) is a positive averment or a concealment when
> one is under a duty to disclose; and 5) deceives the court.

*Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009) (*citing Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993)); (ECF 1053, PageID# 73055). The burden is clear and convincing evidence. *Carter*, 585 F.3d at 1011.

The doctrine reaches "'only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.'" *Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*, 475 Fed.Appx. 65, 71 (6th Cir. 2012) (quoting *Demjanjuk*, 10 F.3d at 352). The conduct must be "several notches of severity above that required for a Rule 60(b)(3) motion." *Hunter v. Sterling Mortg. & Inv. Co.*, 2022 U.S. App. LEXIS 5797, at *10 (6th Cir. Mar. 4, 2022) (*quoting Giasson Aerospace Sci., Inc. v. RCO Eng'g, Inc.*, 872 F.3d 336, 340 (6th Cir. 2017)).

Two principles from the district court's own citation of authority govern. Attorneys are officers of the court: "Since attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the court." *H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115,

1119 (6th Cir. 1976). And the seminal case is *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), where patent counsel arranged for a professional-society official to submit to a court a technical article ghostwritten by counsel. The Supreme Court held such conduct of holding out professionally produced advocacy content as independent judgment of a neutral expert constituted fraud on the court warranting vacatur.

**B. Each of the Five *Carter / Demjanjuk* Elements Is Satisfied on the Record**

Element by element, the record before the district court satisfied the clear-and-convincing standard.

**1. Element 1: Conduct on the Part of an Officer of the Court**

Class Counsel, admitted to the Northern District of Ohio and appointed under Rule 23(g), are officers of the court, and the district court did not conclude otherwise. Class Counsel's Rule 23(g)(1)(B) duty to "fairly and adequately represent the interests of the class" is a fiduciary obligation. *See* Fed. R. Civ. P. 23(g)(1)(B).

**2. Element 2: Conduct Directed to the Judicial Machinery Itself**

Class Counsel deployed the Rebuttal PR-produced Carson video to absent class members at the August 1, 2024 town hall. When objecting

counsel raised the video at the fairness hearing (RE 553, PageID# 14457, 35:21), the district court directly asked Class Counsel: "So the video you heard Mr. Abraham speak to the Court about, played by Plaintiffs' counsel — . . . that suggests no worries, no illness will befall any of you, did that happen?" (RE 553, PageID# 14477 at 55:10-14.). Class Counsel's answer acknowledging the video but describing Dr. Carson as "a friend, a colleague of one of the members of the Plaintiffs' Executive Committee" without disclosing the Rebuttal PR production was made to the tribunal, on the record on which the tribunal had to make its Rule 23(e) findings. (RE 553, PageID# 14477, 55:15-20.).

Element 2 does not require an affirmative party-proffer of evidence. It requires that the misconduct be "directed to the 'judicial machinery' itself." *Demjanjuk*, 10 F.3d at 348. A misleading answer to the district court's direct question at a Rule 23(e) fairness hearing satisfies that requirement. Class Counsel's Rule 23(g) fiduciary duty and the duty of candor under Ohio Prof. Cond. R. 3.3(a) required disclosure. Ohio Prof. Cond. R. 3.3(a) prohibits a lawyer from "knowingly ... mak[ing] a false statement of fact or law to a tribunal," "fail[ing] to disclose a material fact when disclosure is necessary to avoid assisting an illegal or fraudulent

act by the client," and "offer[ing] evidence that the lawyer knows to be false." Ohio Prof. Cond. R. 3.3(a)(1)–(3); see also N.D. Ohio L.R. 83.7(a) (adopting the Ohio Rules of Professional Conduct as the standard of professional conduct for attorneys practicing in this District).

3. **Element 3: Intentionally False, Willfully Blind, or in Reckless Disregard for the Truth**

The Rebuttal PR email chain resolves intent on the face of the document. On July 26, 2024, Stephanie Wolf of Rebuttal PR transmitted "the edited version" of the Carson video to Class Counsel (Graham, Katz, Gomez, and Abney); Abney directed that the video not be distributed before the August 1 town hall. (RE 1014-1, PageID# 70983.). Class Counsel had commissioned Rebuttal PR to address class members' concerns about the level of contamination and the long-term health consequences, and reviewed, edited, and approved the video before distribution. (RE 56, PageID# 14478, 56:20-25.).

Class Counsel then introduced Dr. Carson at the August 1, 2024, town hall as "not involved in the litigation" and "a completely independent third party." [Town Hall Recording at 12:48-52, RE 994-1, PageID# 69028.). At the fairness hearing, Class Counsel represented that Dr. Carson "has not been retained by Plaintiffs' counsel. He is a friend, a

colleague of one of the members of the [Plaintiffs Executive Committee."

(RE 553, PageID# 14477, 55:15-19.). In responding to Movants' Motions, Class Counsel stated: "Dr. Carson was not compensated in any way by Class Counsel for his opinions or for his time, . . . ." (RE 1003, PageID# 69131.).

Whether or not Dr. Carson received a personal fee, the representation of complete independence was intentionally false or in reckless disregard of the truth when made by attorneys who knew a public-relations firm they had commissioned had produced, edited and delivered the video for their approval. If Carson really was not paid, a witness can be uncompensated yet still be the product of a scripted, PR-driven communications campaign. That is the very scenario *Hazel-Atlas* condemned. *See* 322 U.S. 238.

The district court did not address the Rebuttal PR email chain in its Element 3 analysis. (RE 1053, PageID# 73055.). A ruling that ignores documentary evidence going to the heart of a dispositive element or relies upon "'clearly erroneous findings of facts" is an abuse of discretion. *See Info-Hold, Inc.*, 538 F.3d at 454.

4. <u>**Element 4: Positive Averment or Concealment When Under a Duty to Disclose.**</u>

Both are established. Class Counsel represented Dr. Carson to class members at the town hall as "not involved in the litigation" and "a completely independent third party." (RE 994-1, PageID# 69028, quoting Town Hall Recording When the district court asked whether the video "played by Plaintiffs' counsel . . . that suggests no worries, no illness will befall any of you, . . . "Class Counsel responded that Dr. Carson had not been retained by Plaintiffs' counsel and was just a friend. (RE 553, PageID# 14477.). That answer purported to give the court a complete characterization of the video's origins yet omitted that a public-relations firm commissioned by Class Counsel had produced and edited it and that Class Counsel had reviewed and approved the "edited version" before distribution. (RE 1014-1, PageID# 70983.).

Additionally, Class Counsel, as Rule 23(g) fiduciaries and officers of the court, had an affirmative duty to disclose material facts about the origins of expert content submitted at the fairness hearing. *See* Ohio Prof. Cond. R. 3.3(a)(1)-(3) (candor toward the tribunal); Fed. R. Civ. P. 23(g)(1)(B); *H.K. Porter Co.*, 536 F.2d at 1119. Nothing in the record shows Class Counsel disclosed the Rebuttal PR production to the district court or to class members.

22

Class Counsel also concealed the contrary opinions of their own retained expert. As shown in the Statement of the Case § C, Petty was retained by Class Counsel; invoked confidentiality; Class Counsel invoked Protective Order RE No. 127 as barring disclosure; did not move to modify that order; did not disclose Petty's opinions in the Motion for Final Approval; and at the fairness hearing characterized Petty as merely "one voice" against "scores of other experts." (RE 553, PageID# 14486.) That is concealment while under a fiduciary duty to disclose. *See* Fed. R. Civ. P. 23(g)(1)(B); Ohio Prof. Cond. R. 3.3(a)(2) (duty to disclose material fact when disclosure is "necessary to avoid assisting an illegal or fraudulent act by the client"). At a Rule 23(e) fairness hearing, characterizing a retained expert whose opinions materially contradict the settlement proponents' position as merely "one voice" without disclosing the fiduciary relationship, the confidentiality invocation or the Protective Order strategy that suppressed the adverse opinion is a material omission by a fiduciary.

The fairness-hearing characterization concealed additional facts. Petty was Class Counsel's own retained expert (RE 534, PageID# 11627, ¶ 6). The "scores of other experts" were not identified. Schuhmann, the

only other environmental expert Class Counsel offered (RE 518-10), relied on the very EPA background data ([ECF 518-10, PageID# 11186, ¶¶ 15-17) that Petty's declaration argued was systematically flawed.

Class Counsel also concealed the Druckenbrod Extraordinary Injury Claim. On August 21, 2024, thirty-five days before the fairness hearing, Class Counsel signed an EIC on behalf of Mr. Druckenbrod that included a Cleveland Clinic diagnosis of Reactive Airways Dysfunction Syndrome caused by exposure from the derailment. (RE 993-3, PageID# 68944.) Class Counsel did not disclose that diagnosis when representing that class members would be "safe in the long term."

### 5. **Element 5: Deceived the Court**

The district court has since acknowledged that it credited Class Counsel's representation of Dr. Carson as independent and uncompensated. (RE 1053, PageID# 73043.) That is deception. The tribunal was operating on a record made incomplete by Class Counsel's non-disclosure at the September 25, 2024 colloquy quoted at Element 2, above, and by counsel's continuing failure to identify the Rebuttal PR production. The test for Element 5 is not whether approval would have been the same on a properly disclosed record but whether the challenged conduct "deceives the court." *Carter*, 585 F.3d at 1011. When counsel

24

represents an expert as "completely independent" and the truth is that the presentation was produced by counsel's own PR firm, the tribunal has been deceived regardless of the underlying substance of the opinion.

**C. The Record Independently Satisfy the "Several Notches Above (b)(3)" Standard.**

This Court has held that Rule 60(d)(3) fraud on the court requires misconduct "several notches of severity above that required for a Rule 60(b)(3) motion." *Hunter*, 2022 U.S. App. LEXIS 5797, at *10; *Giasson Aerospace Sci.*, 872 F.3d at 340. The Section B record clears that bar: attorney misrepresentation at a Rule 23(e) fairness hearing, going to the origin of expert content on which the court had to make Rule 23(e) findings, established by documentary evidence Class Counsel itself did not disclose, and directly answered to the tribunal's inquiry. That is the paradigmatic *Demjanjuk* fraud on the court. 10 F.3d at 352. Because the record clears the (d)(3) standard, Argument II's Rule 60(b)(3) case against Norfolk necessarily also succeeds on the record features developed there.

**D. Two Errors in the District Court's Contrary Analysis**

First, the district court applied the "public information" defense to Rule 60(d)(3) elements it does not touch. Element 3 asks whether Class Counsel intended to deceive; Element 4 whether counsel affirmatively

averred or concealed while under a duty to disclose. Neither turns on whether the underlying facts were later reconstructable from public sources. Second, the court did not engage the three documentary predicates on which Elements 3-5 principally rest: the Rebuttal PR email chain, the Druckenbrod EIC or Petty's role as Class Counsel's own retained expert. *See* § B, supra. *See Info-Hold*, 538 F.3d at 454; *Kilpatrick*, 798 F.3d at 378.

Third, the district court's application of *Integrated Pipe & Supply, LLC v. Critical Path Res., Inc.*, No. 4:23-CV-02006, 2024 WL 554151, at *2-3 (S.D. Tex. Feb. 12, 2024), for the proposition that "fraud perpetrated by a third-party will not afford a ground for cancellation or rescission, absent a showing that the other party to the contract participated in the fraud," is a category error. Whatever the strength of that Texas commercial-contract rule as applied to routine two-party contracts, it does not displace the federal fraud-on-the-court framework under Rule 60(d)(3). Rule 60(d)(3) reaches conduct by officers of the court by its terms and has no third-party-fraud carveout. Class Counsel's Rule 23(g) fiduciary role as court-appointed and continuing through the fairness hearing, puts Class Counsel's conduct within Rule 60(d)(3) directly, not

derivatively through a contract-formation lens. Argument I does not depend on any showing of Norfolk participation; the *Integrated Pipe* rubric is inapplicable.

### E. <u>Response to Contrary Arguments</u>

Class Counsel's below-argument that Dr. Carson was "not hired as an expert" and offered "his neutral opinion" (RE 1003, PageID# 69131) confirms rather than refutes the claim: Class Counsel simultaneously commissioned Rebuttal PR to produce and edit the video, reviewed the "edited version" before deployment, arranged for Dr. Carson to speak to the class, and represented him as "not involved in the litigation" and "a completely independent third party." (RE 1014-1, PageID# 70983.). Those facts are irreconcilable with a "neutral opinion" framing. Norfolk's argument that objectors already raised these concerns [ECF 1002, PageID# 69093) conflates the substance of Dr. Carson's opinions (which objectors raised) with the origins of the Carson video (which no one raised, because the Rebuttal PR email was not then known to exist). And even if true, "not compensated" is not the same as "completely independent." A witness whose presentation is scripted, produced, edited and deployed by a PR firm commissioned by counsel is not "completely independent" whether or not the witness collected a personal fee.

**F. <u>Relief Requested Under This Argument</u>**

Appellants respectfully request that this Court reverse the district court's denial of Rule 60(d)(3) relief and remand for entry of an order granting Rule 60(d)(3) relief as to Appellants' Personal Injury Payment releases or, in the alternative, remand for an evidentiary hearing at which the Rebuttal PR email chain and related documentary evidence, including additional Class Counsel–Rebuttal PR communications, communications concerning the Petty confidentiality restriction and communications concerning the Druckenbrod EIC can be developed on a full record.

**II. <u>The District Court Abused Its Discretion in Denying Rule 60(b)(3) Relief Because Norfolk Is Plainly an Opposing Party and Because Movants Established Fraud, Misrepresentation, and Misconduct.</u>**

Rule 60(b)(3) reaches "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). The moving party's burden is clear and convincing evidence. *Info-Hold*, 538 F.3d at 454. The Rule requires a showing "that the adverse party committed a deliberate act that adversely impacted the fairness of the relevant legal proceeding [in] question." *Id.* at 455 (quoting

*Jordan v. Paccar, Inc.*, 1996 U.S. App. LEXIS 25358, at *6 (6th Cir. Sept. 17, 1996)).

**A. <u>Norfolk Is Unambiguously an "Opposing Party" Within Rule 60(b)(3).</u>**

The district court's Rule 60(b)(3) footnote 13 addressed only Movants' claim against Class Counsel. (RE 1053, PageID# 73060, n.13.). That footnote holds, on the authority of *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1102 (9th Cir. 2006), that a Rule 60(b)(3) challenge "may not be brought by Movants against Class Counsel, as they are not an 'opposing party.'" (*Id.)* Whatever the strength of that Ninth Circuit rule as applied to Rule 23(g)-appointed class counsel, the Sixth Circuit has never adopted *Latshaw*, and the *Latshaw* footnote decides nothing about Movants' Rule 60(b)(3) claim against Norfolk.

Norfolk is the defendant. It is the settlement counterparty. It is the beneficiary of every Personal Injury Payment release Movants seek to unwind. It has been an adverse litigant to every Appellant since the class action was filed. It is, by every operative feature of Rule 60(b)(3), an opposing party. *Info-Hold*, 538 F.3d at 455. The district court did not hold otherwise and could not have.

Movants' Rule 60 Motions were framed as a joint allegation of misconduct: "Norfolk Southern and class counsel concealed critical soil and water testing results, made false representations to class members about health risks, and misled this Court during the fairness hearing about the basis for their expert reports and about the representations made to class members." (RE 994-1, PageID# 69018-19.) The Motions seek an order "prohibit[ing] enforcement of Personal Injury opt-ins and releases signed by movants," which are the personal-injury contracts to which Norfolk is the counterparty. (RE 994-1, PageID# 69047.). Once the analysis is properly separated, the *Latshaw* footnote drops out of the Rule 60(b)(3) inquiry as to Norfolk, and the operative question is whether Norfolk engaged in fraud, misrepresentation or misconduct that "adversely impacted the fairness of" the release and settlement approval process. *Info-Hold*, 538 F.3d at 455 (*quoting Jordan*, 1996 WL 528950, at *6). Section B answers that question in the affirmative on a clear-and-convincing record.

B. **On the Record, Norfolk's Own Conduct Satisfies Rule 60(b)(3) by Clear and Convincing Evidence**

  1. **Norfolk Made Affirmative Misrepresentations About Environmental Testing.**

Norfolk represented that "[v]alidated testing conducted by both government regulators — U.S. EPA, Ohio EPA, the Pennsylvania DEP — and Norfolk Southern" supported the settlement outcome. (RE 1002, PageID# 69098.). That framing placed Norfolk's own environmental data conclusions in issue and represented to the fairness court that the regulator record and Norfolk's record were mutually corroborative.

Post-approval evidence, none of which was in the fairness record and none of which the district court analyzed in its May 1, 2026 order, materially undercuts that framing. The EPA March 6, 2023 letter, obtained by Movants through FOIA in July 2025, indicates that five chemicals were removed from EPA testing at Norfolk's request. (RE 1014-2, PageID# 70985.). The Kent State University study (Environmental Science: Processes & Impacts, February 2025) found that 48% of tested soil samples exceeded EPA cancer levels. (RE 1014, PageID# 70964; RE 1014-3, PageID# 70989.) FEMA/EPA FOIA productions (obtained May 2025) include internal characterizations of the plume as "really toxic" and reference an emerging cancer cluster. (RE 1014-5, PageID# 71037, 71039.).

Post-approval evidence does not by itself establish Rule 60(b)(3) fraud in the settlement's making. What it establishes is that the pre-approval record Norfolk helped shape was materially incomplete, and that Norfolk's conduct, including the chemical-removal request, was a concealment where Norfolk had a duty to disclose because Norfolk was itself the source of some of the very data on which the fairness court relied. *Cf. Info-Hold*, 538 F.3d at 456. The record supports the inference of contemporaneous Norfolk knowledge that the environmental picture was materially worse than the record disclosed.

2. **<u>NS Structured the Settlement to Preclude Adverse Expert Evidence</u>**.

The Settlement was executed on April 9, 2024, six days before the extended expert-designation deadline of April 15, 2024. (RE 994-1, PageID# 69026.). Class Counsel's own retained expert Stephen Petty was retained and paid by Class Counsel. (RE 534, PageID# 11627, ¶ 6.). On September 23, 2024, two days before the fairness hearing, Petty disclosed that Dr. Carson's opinions were "at best speculation, and at worst simply incorrect" (RE 534, PageID# 11628, ¶ 9) and that the EPA sampling regime was geographically mis-directed because the evacuation footprint governing sampling had been drawn from outdated morning wind data

while the actual plume trajectory shifted in the afternoon (RE 534, PageID# 11628, ¶¶ 8, 28-29). Petty invoked confidentiality. (RE 534, PageID# 11627, ¶ 6.). Class Counsel's Motion for Final Approval attributed non-disclosure to the Protective Order: "Stephen Petty's work was in part based on protected materials under the Protective Order (ECF No. 127), preventing Class Counsel from disclosing it without violating the order." (RE 518-1, PageID# 10927.).

Whether Protective Order ECF No. 127 actually barred disclosure of Petty's opinions (as opposed to underlying source materials) is a question the district court took no evidence on. What is undisputed is that the Settlement, which is a contract to which Norfolk was one of only two signatory parties, was executed six days before expert-designation deadlines, Class Counsel's own retained expert held opinions adverse to the settlement, those opinions were not disclosed in the Motion for Final Approval and Norfolk was the direct beneficiary of an approval resting on a record that omitted them. That is Rule 60(b)(3) misconduct by an opposing party under *Info-Hold's* deliberate-act standard: the "adverse party committed a deliberate act that adversely impacted the fairness of

the relevant legal proceeding." 538 F.3d at 455 (quoting *Jordan v. Paccar, Inc.*, 1996 WL 528950, at \*6 (6th Cir. Sept. 17, 1996)).

### 3. <u>**The Supplemental Termination Agreement Was Concealed From Class Members.**</u>

Class Counsel signed a Supplemental Termination Agreement (RE 452-2, PageID# 6021) giving Norfolk a unilateral right to terminate the settlement if opt-in rates fell below undisclosed thresholds. That agreement is Rule 60(b)(3) misconduct by the opposing party. Where Norfolk retains an undisclosed contractual right to terminate the very personal-injury payment program a class member is opting into, the class member cannot make a fully informed decision. That is "the knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment." *Info-Hold*, 538 F.3d at 456.

### 4. <u>**The District Court's Distinction of Movants' Cases Was Overbroad.**</u>

The district court dismissed *Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978), *MMAR Group, Inc. v. Dow Jones & Co.*, 187 F.R.D. 282 (S.D. Tex. 1999) and *Hernandez v. Results Staffing, Inc.*, 907 F.3d 354 (5th Cir. 2018) on the ground that each "involved case-dispositive information that was improperly withheld in discovery." (RE 1053,

PageID# 73058.). The distinction is a misreading. *Rozier's* central holding, that Rule 60(b)(3) is available where the movant establishes by clear and convincing evidence that the adverse party engaged in fraud, misrepresentation or misconduct, applies whether the case is at trial-and-verdict or settlement-approval stage. Nothing in *Rozier* limits its holding to discovery abuse. *MMAR* and *Hernandez* likewise support Rule 60(b)(3) relief where an adverse party's misconduct substantially interfered with the movant's ability to make a fully informed decision through concealed tape recordings and misrepresented medical records respectively. The mode of interference varies; the doctrine does not. *Info-Hold's* deliberate act impacting fairness standard, 538 F.3d at 455, reaches concealment in settlement approval as well as concealment in discovery.

5. **Response to Contrary Arguments**
   a) **Norfolk's "No Involvement" Framing.**

Norfolk's response argued that Dr. Carson was "a physician working with Class Counsel, with whom Norfolk Southern had no involvement." (RE 1002, PageID# 69098.) That disclaims Norfolk's involvement in the Carson video only. It does not disclaim Norfolk's involvement in the environmental-data record, the settlement's timing in relation to expert-

designation deadlines, the Protective Order regime or the Supplemental Termination Agreement. Argument II as against Norfolk is premised on the record features in Section B, each of which Norfolk was directly or contractually involved in.

### b) The *Hunter* "Settlement Negotiations" Formulation.

Both Norfolk (RE 1002, PageID# 69105) and the district court (RE 1053, PageID# 73054-55) invoke *Hunter v. Sterling Mortg. & Inv. Co.,* No. 2022 U.S. App. LEXIS 5797, at *1- (6th Cir. Mar. 4, 2022): "allegations that a party fraudulently concealed certain information in settlement negotiations do not rise to the level of fraud required by the rule, absent clear and convincing evidence of either affirmative misrepresentations or a deliberate breach of a duty to disclose." *Id.* That formulation supports rather than refutes Movants' claim. Both *Hunter* predicates are established as to Norfolk: (a) affirmative misrepresentations through "validated testing" framing, standing on regulator/Norfolk parity; and (b) deliberate breach of a duty to disclose through the chemical-removal request to EPA, the Protective Order overlay on Petty and the Supplemental Termination Agreement thresholds. Norfolk was present at the fairness hearing, heard Class Counsel's representations about Dr. Carson, Petty and EPA data, and remained silent while benefiting from

those representations in the form of the class-wide releases. Under Rule 60(d)(3), concealment by a party who must disclose satisfies the fraud-on-the-court test's concealment element. *See Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*, 475 F. App'x 65, 71 (6th Cir. 2012) (identifying "a positive averment or a concealment when one is under a duty to disclose" as an element of fraud on the court).

### c) <u>Class Counsel's "Nothing New" Framing.</u>

Class Counsel argued below that Movants had presented "no new information." (RE 1003, PageID# 69125.) As Argument I demonstrates, that is factually inaccurate. Movants have identified specific documentary evidence obtained after final approval, most importantly the July 26, 2024 Rebuttal PR email chain (RE 1014-1, PageID# 70983), which is documentary evidence Norfolk could have, but did not, supplement or correct.

### 6. <u>Relief Requested.</u>

Appellants respectfully request that this Court reverse the denial of Rule 60(b)(3) relief as to Norfolk and remand for entry of an order granting Rule 60(b)(3) relief as to Appellants' Personal Injury Payment releases or, in the alternative, for an evidentiary hearing on: (a) Norfolk's role in the EPA chemical-removal request; (b) Norfolk's role in the Petty

confidentiality restrictions; (c) the terms and origins of the Supplemental Termination Agreement; and (d) Norfolk's contemporaneous knowledge of testing and health data materially different from those disclosed.

## III. The District Court Abused Its Discretion in Denying Rule 60(b)(6) Relief Because Extraordinary Circumstances Support Relief and the One-Year Bar Does Not Foreclose the Motions

*Standard of Review*

Rule 60(b)(6) permits relief for "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6), a phrase the Supreme Court has construed to reach "extraordinary circumstances" not otherwise addressed by Rules 60(b)(1) through (b)(5). *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

### A. Rule 60(b)(6) Is Available Because This Argument Rests on Extraordinary-Circumstances Grounds That Rule 60(b)(3) Cannot Reach.

This Court's decision in *King v. United States*, 143 F.4th 705 (6th Cir. 2025), reaffirms that Rule 60(b)(6) and the numbered clauses of Rule 60(b)(1)-(5) "are mutually exclusive, with relief available under subsection (b)(6) only in the event that none of the grounds set forth in clauses (b)(1) through (b)(5) are applicable." *Id.* at 711 (*quoting McCurry*, 298 F.3d at 596). Argument III is drawn to satisfy that mutual-exclusivity rule. It does not rest on the same fraud claim advanced under Rule 60(b)(3) in Argument II. It rests on a distinct extraordinary-

circumstances ground: Class Counsel's structural failure of Rule 23(g) adequacy, coupled with the district court's failure of judicial supervision at the fairness hearing. That combination is not "fraud, misrepresentation, or misconduct by an opposing party" within Rule 60(b)(3), it is a Rule 23(g)-specific failure that Rule 60(b)(3) does not, and cannot, reach.

1. **Rule 23(g) Fiduciary Duty Is a Freestanding Category of Extraordinary Circumstances.**

In class-action settlements, "the law relies upon the 'fiduciary obligation[s]' of the class representatives and, especially, class counsel, to protect [absent class members'] interests," and "that means the courts must carefully scrutinize whether those fiduciary obligations have been met." *In re Dry Max Pampers Litig.*, 724 F.3d at 718. The Sixth Circuit reaffirmed that scrutiny obligation in *Shane Group*, holding that the district court "must specifically examine what the unnamed class members would give up in the proposed settlement, and then explain why—given their likelihood of success on the merits—the tradeoff embodied in the settlement is fair to unnamed members of the class." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 309 (6th Cir. 2016). The Sixth Circuit has since reaffirmed the same duty

running to absent class members. *In re Auto. Parts Antitrust Litig., End-Payor Actions*, 33 F.4th 894, 904 (6th Cir. 2022) ("Class counsel indeed have a fiduciary duty to protect the interests of all class members; counsel cannot, for example, place their own interests and the interests of named class members above unnamed class members").

Where class counsel conceals or fails to disclose evidence favorable to the class in the fairness-hearing record, the breach is of class counsel's fiduciary duty under Rule 23(g)—not of any duty owed by an "opposing party." Fed. R. Civ. P. 60(b)(3) reaches only "fraud . . ., misrepresentation, or misconduct by an opposing party." The class member's remedy therefore lies not in Rule 60(b)(3) but in Rule 60(b)(6)'s catch-all for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6); *see In re Dry Max Pampers Litig.*, 724 F.3d at 717-18 (considering fiduciary duties of class counsel to absent class members enforced through the courts' scrutiny obligation).

The Rule 23(g) breach here rests on four documentary anchors: (1) Class Counsel commissioned Rebuttal PR to produce and edit the Carson video used at the August 1, 2024 town hall (RE 994-1, PageID# 69027), then represented Carson as "not retained by Plaintiffs' counsel" (RE 553,

PageID# 14477, 55:19-21); (2) Class Counsel's own retained expert Stephen Petty held opinions materially adverse to the settlement (RE 534, PageID# 11627) that were not disclosed before opt-in and that Class Counsel characterized at the fairness hearing as "one voice" among "scores of other experts" (RE 553, PageID# 14486, 64:15-17); (3) Class Counsel signed the Druckenbrod Extended Individual Compensation election on August 21, 2024 for a class member with a Reactive Airways Dysfunction Syndrome diagnosis and did not disclose the knowledge of illnesses diagnosed as caused by the derailment; and (4) Class Counsel agreed to the Supplemental Termination Agreement (RE 452-2, PageID# 6021, ¶ XI(C)) with undisclosed opt-in thresholds and did not disclose them to class members opting into the Personal Injury Payment program. Each is a Rule 23(g) fiduciary breach; none is a discovery-abuse or "opposing-party" claim; none turns on new evidence of Norfolk misconduct. They are extraordinary circumstances Rule 60(b)(6) is designed to reach.

## 2. Judicial-Supervisory Abdication Is a Freestanding Category of Extraordinary Circumstances

The district court's fairness-hearing record, reviewed on this motion, contains no findings on whether Class Counsel's fiduciary duties under

Rule 23(g) were satisfied. It contains no examination of whether Petty's confidentiality regime was compelled by Protective Order ECF No. 127 or by separate arrangements Class Counsel entered into. It contains no examination of the Rebuttal PR arrangement, which was not before the fairness court at all. And it contains no examination of the Supplemental Termination Agreement thresholds. *Pampers* requires the district court to serve as fiduciary for the class. 724 F.3d at 717-718. The absence of any such examination is a *Pampers* failure that Rule 60(b)(3), which does not reach the court's own supervisory conduct, cannot cure. Rule 60(b)(6) can and must.

### 3. <u>The Ground is Distinct From Argument II's Rule 60(b)(c) Claim.</u>

Argument II establishes Rule 60(b)(3) misconduct by Norfolk. Argument III does not depend on that misconduct because it does not depend on "an opposing party" at all. Rule 60(b)(3) reaches only "fraud . . . , misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Class counsel's Rule 23(g) adequacy failure and the district court's own supervisory abdication are, by definition, not opposing-party conduct. Those grounds therefore fall categorically outside Rule 60(b)(1)-(5) and satisfy, rather than defeat, the *King* and *McCurry* mutual-

exclusivity requirement. *King*, 143 F.4th at 710; *McCurry*, 298 F.3d at 596 (Finding that Rule 60(b)(6) is available "only in the event that none of the grounds set forth in clauses (b)(1) through (b)(5) are applicable").

### B. Extraordinary Circumstances Support Relief

Rule 60(b)(6) requires "exceptional or extraordinary circumstances." The "extraordinary circumstances" test asks whether the case involves fundamental unfairness, fraud on the judicial process or other exceptional considerations that justify relief notwithstanding finality. *Buck v. Davis*, 580 U.S. 100, 123 (2017). Three record features satisfy that standard on the Rule 23(g)/supervisory-abdication track.

#### 1. Public-Relations Firm Engaged to Produce Class-Communications Video

The July 26, 2024 Rebuttal PR email chain (RE 1014-1, PageID# 70983) establishes that Class Counsel commissioned Rebuttal PR to produce and edit the Carson video shown at the August 1, 2024 town hall. The Rebuttal PR involvement was not disclosed in the Motion for Final Approval, at the fairness hearing or in Class Counsel's Rule 60 response. It was disclosed to Movants only through independent investigation. Using a PR firm to shape class-member decision making about opt-in from a Rule 23 settlement is not ordinary Rule 23(g) practice. Under

*Pampers*, the district court had a duty to inquire and did not. 724 F.3d at 717-718.

2. **Class Members Were Not Informed of Their Own Retained Expert's Contrary Opinions**

Petty was retained by Class Counsel. (RE 534, PageID# 11627.) His opinions that EPA sampling was geographically mis-directed and that Carson's conclusions were "at best speculation, and at worst simply incorrect" were not disclosed to class members before opt-in. That is a Rule 23(g) failure of adequacy: the class members whose releases were being solicited were denied access to their own fiduciary's expert's contrary opinions. *Auto Parts*, 33 F.4th at 904 (duty runs to all class members).

3. **Post-Approval Evidence Contradicts the Pre-Approval Health Representations.**

The Rule 23(g) failure is compounded by post-approval evidence that materialized outside any Rule 60(b)(2) "newly discovered evidence" window. The Druckenbrod RADS diagnosis, additional Appellant deaths and cancer diagnoses, the Kent State study (Environmental Science: Processes & Impacts, February 2025), the Golumb study (December 2024), and Scott Smith's August 2025 testing did not exist in accessible

form at opt-in or the fairness hearing. Their existence is not the ground for Rule 60(b)(6) relief; it is corroboration that the Rule 23(g) adequacy failure caused concrete injury to real class members.

## C. Narrowly Tailored Relief.

Movants are 196 opt-in class members whose Personal Injury Payment releases are the specific contracts at issue. The relief sought does not disturb the general Rule 23(e) approval or the class-wide Compensation Program. It affects only the personal-injury component as applied to Appellants. Proportionality of that kind is itself relevant to Rule 60(b)(6)'s equitable inquiry. *Buck*, 580 U.S. at 123.

## D. The Motions Were Filed Within a Reasonable Time

Both Rule 60 Motions were filed within Rule 60(c)(1)'s one-year deadline for Rule 60(b)(3) motions. The Final Approval Order was entered on September 27, 2024 (RE 557, PageID# 14580); ECF Nos. 993 and 994 were filed on September 25 and September 29, 2025 (RE 993, PageID# 68906; RE 994, PageID# 69016). The district court acknowledged this timeline. (RE 1053, PageID# 73053, n.11.) Because September 27, 2025 fell on a Saturday, the cutoff for Rule 60(b)(3) motions extended to Monday, September 29, 2025, under Fed. R. Civ. P.

45

6(a)(1)(C). (*Id.*) The Rule 60(b)(6) motions are governed by the "reasonable time" standard of Rule 60(c)(1), which "'depends on the facts of a given case including the length and circumstances of the delay.'" *Thompson v. Bell*, 580 F.3d 423, 443 (6th Cir. 2009) (*quoting Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)). Twelve months from Final Approval, coupled with continuous FOIA-based investigation and staggered receipt of Newly Discovered Evidence from December 2024 through August 2025, satisfies that standard.

### E. **Response to Contrary Arguments**

The strong interest in class-settlement finality is real, but not absolute. Rule 60(b)(6) expressly recognizes an extraordinary-circumstances exception. The narrow scope Movants seek for an order affecting only their 196 Personal Injury Payment releases, not the class-wide Compensation Program, respects the finality interest if doctrinally possible while providing residual relief for Rule 23(g) breaches the fairness court did not, and could not, reach.

### F. **Relief Requested**

Appellants respectfully request that this Court reverse the district court's holding that the Rule 60(b)(6) Motions were recharacterized Rule

60(b)(3) Motions subject to the one-year bar; reverse the holding that no extraordinary circumstances support relief; and remand for entry of an order granting Rule 60(b)(6) relief as to Appellants' Personal Injury Payment releases, or in the alternative for an evidentiary hearing on the Rule 23(g) adequacy and judicial-supervisory-abdication record.

**IV.** **<u>Neither This Court's Prior Bond-Dismissal Order in In re East Palestine Train Derailment, 158 F.4th 704 (6th Cir. 2025), Nor the District Court's Post-Judgment Reliance on It, Bars Movants' Rule 60 Motions</u>**

*Standard of Review*

Whether a prior Sixth Circuit disposition has preclusive effect under law of the case, issue preclusion, claim preclusion, or the mandate rule is a question of law reviewed de novo. *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994).

**A.** **<u>The Sixth Circuit's 158 F.4th 704 Disposition Made Preliminary Cardizem Merits Assessments Within a Procedural Bond-Dismissal Framework, Not a Merits Ruling on the Grounds Now Before This Court.</u>**

Argument IV requires precision about what the In re East Palestine panel actually did. The opinion opens with the framing:

> A set of objectors to a class-action settlement are over eight months late in paying an $850,000 appeal bond. Instead of paying up, they moved to extend the time to appeal the bond order — one day late. Because they're a day late, we can't hear

47

> their reasons for being $850,000 short. We dismiss their appeal of the motion to extend for lack of jurisdiction, and we dismiss their appeals of the settlement for failure to pay the bond.

*In re E. Palestine Train Derailment*, 158 F.4th 704, 706 (6th Cir. 2025).

That framing is dispositive of the character of the disposition: two procedural dismissals, one for lack of appellate jurisdiction under Fed. R. App. P. 4(a)(5)(A), and one for failure to post the appeal bond. *Powers v. Citizens Union National Bank & Tr. Co.*, 329 F.2d 507, 707-11 (6th Cir. 1964).

Argument IV does not deny that the panel, in applying the *Powers/Cardizem* three-factor equitable balancing (prejudice, justification, and merits of the underlying appeal), reached a preliminary assessment of the objectors' merits within the third factor. It did. 158 F.4th at 711-14. The panel expressly characterized that assessment as preliminary: "our preliminary assessment of 'the merits of the [objectors'] underlying appeal' remains only one factor under consideration." *Id.* at 712 (*quoting In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004)). The panel's preliminary assessment addressed one substantive question: the sufficiency of the environmental-data record at 713. It did not address Rule 23(g) adequacy, the Rebuttal PR fabrication,

the Petty confidentiality regime, the Druckenbrod EIC or the Supplemental Termination Agreement. None of those grounds was before the *In re East Palestine* panel.

1. **The Jurisdictional Dismissal Rested Solely on Fed. R. App. P. 4(a)(5)(A)**

The Sixth Circuit first held that the objectors' motion to extend time to appeal the bond order was filed one day after the Rule 4(a)(5)(A) deadline, and that the deadline is jurisdictional and non-extendable. 158 F.4th at 707-09. That holding did not adjudicate any substantive question about the fairness of the settlement, Class Counsel's representations or concealment of material facts.

2. **The Bond-Failure Dismissal Was a *Powers* Equitable Balancing**

The second holding dismissed appeals of the settlement for failure to pay the $850,000 appeal bond. 158 F.4th at 709-11. It applied the *Powers/Cardizem* three-factor test: "the prejudice to the other parties, the demonstrated justification for the failure to post the bond, and the merits of the underlying appeal." *Id.* at 709. All three factors favored dismissal. *Id.* at 709-14.

3. **The Panel's Merits Assessment Was Preliminary Within *Cardizem's* Factor Three, Not a Full Merits Adjudication.**

The panel spoke to the merits only within the *Cardizem* third factor and only as one input to bond-dismissal equity. The panel cabined its own assessment: "our preliminary assessment of 'the merits of the [objectors'] underlying appeal' remains only one factor under consideration." *In re E. Palestine Train Derailment*, 158 F.4th 704, 713 (6th Cir. 2025) (*quoting Cardizem*, 391 F.3d at 818 (6th Cir. 2004)). The Supreme Court has long distinguished preliminary merits assessments made in interlocutory or procedural postures from final merits adjudications: "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 317 (1985) (citing *Camenisch*) ("any conclusions reached at the preliminary injunction stage are subject to revision . . . ."). Preliminary assessments made in a *Cardizem*-factor-three posture, like those made at the preliminary-injunction stage, are not preclusive of the same substantive questions on later Rule 60 review. Moreover, the panel's preliminary merits assessment addressed only the adequacy of class notice and the reasonableness of the incentive payments and attorneys' fees. 158 F.4th at 712-14. It did not address, because it was not

before the panel, the Rule 60(b)(3) fraud, Rule 60(b)(6) fiduciary-breach, or Rule 60(d)(3) fraud-on-the-court grounds Movants raise here.

4. **The Panel's Merits Assessment Reached the Environmental-Data Question, Not Rule 23(g) or Fraud-on-the-Court**.

The panel's preliminary assessment addressed environmental-data sufficiency, 158 F.4th at 713, and did not reach any of the four Rule 23(g)/fraud-on-the-court grounds that Argument I, Argument II (as to Norfolk), Argument III (as to Rule 23(g) adequacy and judicial supervision), and Argument VI now advance on documentary corroboration that did not exist in the panel record. See § C below.

B. **Movants Were Not Parties to the Prior Appeal and Are Not Bound**

A person cannot be bound by a judgment in an action to which they were not a party. *Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008); *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 328-29 (1971). The 158 F.4th 704 appeal was prosecuted by five class members: Sheely, Troyan, Freeze, Lynch, and Tunno. The 196 Movants are, other than Tamara Freeze, different persons. (RE 1053, PageID# 73040, n.1.)

The 196 Movants did not authorize the Sheely appellants' counsel to prosecute the earlier appeal on their behalf, were not given notice or

opportunity to be heard in that appeal, and did not participate in it. The Sheely appellants' counsel represented only the five named objectors, not the broader class or the 196 Movants. Thus, the Sheely appeal's outcome does not preclude the 196 Movants from raising the distinct Rule 60 grounds asserted here, which were not raised, briefed, or resolved in the Sheely appeal.

More fundamentally, class-wide preclusion doctrine cannot foreclose Movants' Rule 60 claims because those claims challenge the adequacy of the very representation on which preclusion would depend. The Supreme Court held in *Hansberry v. Lee* that a class judgment binds absent class members only where the named representatives adequately protected the class's interests, and that class members are not bound where representation was inadequate. 311 U.S. 32, 42-43 (1940) ("[T]here has been a failure of due process only in those cases where it cannot be said that the procedure adopted, fairly insures the protection of the interests of absent parties who are to be bound by it."). Rule 23(a)(4) codified that principle, and *Amchem Products, Inc. v. Windsor* reaffirmed that the "adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." 521 U.S. 591, 625

(1997). Where, as here, Movants allege that Class Counsel concealed material facts from the class and the Court, the class judgment cannot bootstrap itself into preclusive effect against the very challenge that impeaches its foundation. Any contrary rule would permit Rule 23(g) class counsel to immunize their own misconduct through class-wide preclusion, a result flatly inconsistent with Hansberry and the due process principles it protects.

As to Freeze individually, 158 F.4th 704 is not preclusive of her Rule 60 Motion because, as § A shows, the disposition was a procedural bond dismissal with a preliminary factor-three merits assessment. If preclusion applies to Freeze on any element, the remaining 195 Movants are unaffected.

## C. The Present Rule 60 Evidence Was Not in the 158 F.4th 704 Record

The district court's core factual claim is that the Rule 60 Motions "rely on the same arguments and supporting evidence presented in previous filings in the district court and the Sixth Circuit, which have already been considered and rejected." (RE 1053 at PageID# 73058.) The record does not support that characterization. Every item in the Newly Discovered Evidence chronology (Statement of the Case § D) was obtained by

Movants, or came into existence, after the appellate record in 158 F.4th 704 closed. Documentary evidence that materialized after the appellate record closed cannot be "the same arguments and supporting evidence" the appellate court considered. Rule 60 exists precisely to reach that gap.

### D. The *Jinks / Bell / Aikens* "No Substitute for Appeal" Doctrine Does Not Reach These Facts

The district court invoked the settled principle that "'[t]he ground for setting aside a judgment under Rule 60(b) must be something that could not have been used to obtain a reversal by means of a direct appeal.'" (RE 1053, PageID# 73065 (*quoting Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 386 (6th Cir. 2001) (*quoting Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000)))); *see also GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 373 (6th Cir. 2007); *Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011) (en banc).) That doctrinal principle is settled. It does not, however, reach the facts here for two independent reasons.

#### 1. The Rule 60 Grounds Could Not Have Been Raised on the Direct Appeal .

The *Jinks* rule reaches only "ground[s] for setting aside a judgment . . . that could . . . have been used to obtain a reversal by means of a direct appeal." 250 F.3d at 386. The Rule 60 Motions rest on documentary

evidence and factual predicates that came into Movants' possession or into existence in stages from December 2024 through August 2025, after the September 27, 2024 Final Approval Order and after the notices of appeal in the 158 F.4th 704 appeal were filed. *See* Statement of the Case § D. Grounds resting on evidence that did not exist in accessible form during the direct-appeal window are not "something that could . . . have been used to obtain a reversal by means of a direct appeal." *Jinks*, 250 F.3d at 386 *quoting Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000). To the contrary, they are precisely the kind of after-arising grounds Rule 60(b)(2) and 60(b)(6) exist to remedy.

The Fourth Circuit's decision in *Aikens* is not to the contrary. *Aikens* denied Rule 60(b)(6) relief because the movant made a "voluntary, deliberate, free [and] untrammeled choice" not to appeal the judgment he later sought to reopen. 652 F.3d at 501 (*quoting Ackermann v. United States*, 340 U.S. 193, 200 (1950)). Movants here made no such choice. The grounds Movants raise were not available to be raised on any direct appeal because the evidence supporting them had not yet come into existence or into Movants' possession.

### 2. <u>Movants Were Not the Appellants in the Direct Appeal</u>

The 158 F.4th 704 appeal was prosecuted by five named objectors: Rev. Joseph Sheely, Zsuzsa Troyan, Tamara Freeze, Sharon Lynch, and Carly Tunno. Only one of the 196 Movants (Freeze) was an appellant there. The *Jinks/Aikens* rule addresses whether a party who could have obtained appellate review may substitute a later Rule 60 motion for that unused route; it does not address whether one party's direct appeal forecloses a different, non-appellant class member's later Rule 60 motion on grounds not available during that earlier appeal. *Cf. Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940) (determining that class members not bound by prior class litigation where their interests were not adequately represented)).

### E. <u>Response to Contrary Arguments</u>

Norfolk and Class Counsel argue that Movants' motions are repetitive of the earlier objectors' appeal, that the 158 F.4th 704 disposition is preclusive, and that class-wide distribution delays counsel against relief. Each contention fails. The objectors did not have the Rebuttal PR email chain, the FOIA productions, the peer-reviewed studies, or the post-approval medical developments during the appellate window, and the 158 F.4th 704 disposition was a procedural bond dismissal accompanied by preliminary *Cardizem* factor-three assessments directed to the

settlement-approval record before that panel. 158 F.4th at 712-13. The elements of issue preclusion are not satisfied. The panel's preliminary merits assessments were addressed to class notice adequacy, settlement reasonableness on the environmental record then before the district court, the $15,000 incentive payments, and the $162 million fee award — none of which encompassed the Rule 23(g)-adequacy, judicial-supervisory-abdication, or *Carter/Demjanjuk* fraud-on-the-court grounds now before this Court. And the 196 Movants have narrowly tailored their relief to their own Personal Injury Payment releases, leaving the class-wide Compensation Program undisturbed; balancing individual-release rescission against class-wide finality is the Rule 60 framework itself, not a categorical bar.

## F. Relief Requested Under This Argument

Appellants ask this Court to hold that *In re East Palestine Train Derailment*, 158 F.4th 704 (6th Cir. 2025), was a procedural bond dismissal accompanied by preliminary *Cardizem* factor-three assessments, not a merits adjudication of the Rule 23(g)-adequacy, judicial-supervisory-abdication, or fraud-on-the-court grounds now before this Court; hold that the disposition does not preclude the 196

Movants (195 of whom were not appellants there) from proceeding under Rule 60; hold that the *Jinks / Bell / Aikens* framework does not apply because the documentary evidence anchoring these Motions did not exist in accessible form during the earlier appellate window; and reverse the district court's use of 158 F.4th 704 as a preclusive bar..

## V. <u>The Release Disclaimers Do Not Bar Rescission Because Fraud Vitiates Consent, and Class Counsel's Concealment Reaches the Very "Opportunity to Confer" and "Unknown Consequences" Provisions on Which the District Court Relied</u>

### A. <u>The District Court Acknowledged the Governing Rule and Then Failed to Apply It</u>

The district court's Order acknowledges the governing legal principle:

> It is well settled that a party's fraud can render a release voidable. See, e.g., Kobatake v. E.I. DuPont De Nemours & Co., 162 F.3d 619, 625 (11th Cir. 1998) (per curiam) (applying Georgia law); Ingram Corp. v. J. Ray McDermott & Co., 698 F.2d 1295, 1314-15 (5th Cir. 1983) (recognizing that fraudulent inducement or concealment can vitiate a release).

(RE 1053, PageID# 73067.) There is no dispute that fraud can render a release voidable. The only question is whether the fraud reaches the release. It does.

*Kobatake* is the most factually analogous authority the district court cited. Two hundred seventy-five plaintiffs sued DuPont for crop damage from Benlate 50 DF; DuPont settled; plaintiffs then alleged DuPont had

fraudulently concealed test data showing the fungicide was contaminated. 162 F.3d at 621-22. The Eleventh Circuit reversed dismissal, holding fraudulent concealment can vitiate a release even where the release contains standard disclaimer language. *Id.* at 625. A party who fraudulently conceals material facts during release negotiation cannot invoke boilerplate disclaimers to defeat rescission. *Kobatake*, 162 F.3d at 625. *Ingram Corp.* holds similarly that "fraudulent inducement . . . can vitiate a release." 698 F.2d at 1314-15. A release is a contract, and a contract induced by fraud is voidable regardless of the release's own integration and disclaimer language.

The district court cited both cases and departed from their holdings. Movants' allegations are structurally identical to *Kobatake*, and Class Counsel's fiduciary posture is a stronger foundation for rescission than DuPont's arm's-length posture. The court disposed of *Kobatake* and *Ingram Corp.* by asserting that the underlying "information . . . has long been public, not hidden." (RE 1053, PageID# 73067.) That predicate is wrong.

B. <u>The "Public Information" Rationale Cannot Sustain the Order.</u>

The district court found that "the additional information on which Movants rely . . . has long been public, not hidden." (RE 1053, PageID# 73067.) That finding is clearly erroneous.

Each item comprising the Newly Discovered Evidence, see Statement of the Case § D, was either non-public when the Personal Injury Releases were signed or did not exist in publicly accessible form until after signing. The July 26, 2024 Rebuttal PR email chain (RE 1014, Ex. 3) was internal correspondence between Class Counsel and Rebuttal PR, not part of any public filing. The March 6, 2023 EPA sampling-plan letter and the FEMA/EPA internal emails are agency deliberative records obtained only through FOIA. The Kent State study (February 2025) and Golumb study (December 2024) were published after final approval and after many Movants signed. The Druckenbrod RADS diagnosis was memorialized in the EIC Class Counsel signed on August 21, 2024 but was not disclosed to the district court at the September 25, 2024 fairness hearing or to any absent class member deciding whether to sign a release.

## C. The Release Disclaimers Do Not Bar Rescission

The district court invoked three release provisions to defeat rescission: Release ¶ 6 (release of "unknown consequences"), Release ¶ 19

(acknowledgment of "opportunity to confer with counsel"), and the no-reliance clause. (RE 1053, PageID# 73067-68. None reaches the fraud-based rescission claim.

Release ¶ 6 waives claims for "unknown consequences" of the known injury being released; it does not waive rescission for fraud in the inducement of the release itself. *See Kobatake*, 162 F.3d at 625; Ingram Corp., 698 F.2d at 1314-15. A release that purports to waive claims arising from fraud in its own procurement is void as to that fraud; otherwise a fraudulent-inducer could self-immunize by drafting a broad enough disclaimer. That is the doctrinal reason Kobatake and Ingram Corp. hold as they do.

Release ¶ 19's "opportunity to confer" acknowledgment does not cure the concealment. A class member cannot confer about facts Class Counsel itself concealed. The Rebuttal PR email chain, Petty confidentiality overlay, Druckenbrod EIC, and Supplemental Termination Agreement thresholds were within Class Counsel's exclusive knowledge; independent counsel could not have surfaced them from the fairness-hearing record, class notice materials, or any public source during the opt-in window. Class Counsel occupied a fiduciary role under Fed. R. Civ.

P. 23(g)(1)(B), and the "opportunity to confer" acknowledgment does not shift that fiduciary's disclosure obligation to the beneficiary.

The no-reliance clause is subject to the same principle. The Sixth Circuit, applying Ohio law, has recognized that "the parol evidence rule does not prohibit a party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 456 (6th Cir. 2005) (*quoting Galmish v. Cicchini*, 90 Ohio St. 3d 22, 28 (2000)). A contractual disclaimer of reliance cannot immunize a party from a fraudulent-inducement claim, because the disclaimer would itself be part of the fraudulently induced instrument. If it could, the drafter of a release could conceal any fact during release negotiation and then invoke the concealed-fact-and-no-reliance combination to defeat rescission. That would nullify *Kobatake*, *Ingram Corp.*, and the well-established rule that fraud vitiates consent.

## D. <u>Response to the District Court's other Arguments</u>

The district court's statement that "Rule 60 is not a tool to rescind a voluntary release signed in exchange for compensation," (RE 1053, PageID# 73064), creates a categorical exception the Rules do not recognize; Rules 60(b)(3) and 60(d)(3) are the precise mechanisms for

post-judgment relief from a release procured by fraud. *See* Fed. R. Civ. P. 60(b)(3), 60(d)(3); *Hazel-Atlas*, 322 U.S. at 244–46. *Park W. Galleries, Inc. v. Hochman*, 692 F.3d 539, 545 (6th Cir. 2012), addressed a strategic litigation decision, not fiduciary-breach concealment, and does not reach a choice induced by fraud. The court's further statement that "Movants had every opportunity to educate themselves," (RE 1053, PageID# 73067), is empirically incorrect for the reasons stated in § B.

### E. <u>The Appropriate Remedy</u>

Because the fraud reaches the releases and the disclaimers do not bar rescission, the appropriate remedy is either rescission of the 196 Personal Injury Releases and remand for further proceedings against Norfolk; or, at minimum, remand for an evidentiary hearing on the fraud-in-factum and fraud-in-the-inducement theories with targeted discovery of the Rebuttal PR retention correspondence, Petty confidentiality communications, and Class Counsel's Carson-video representations. Rescission would not disturb the class-wide Compensation Program or direct payments; it would restore Movants to the position of Voluntary Exposure Supplement-eligible class members with the benefit of full information.

## VI. Alternative Relief — Remand for Evidentiary Hearing on Material Disputed Facts

*Standard of Review*

A district court's decision whether to conduct an evidentiary hearing on a Rule 60 motion is reviewed for abuse of discretion. *See Info-Hold, Inc.*, 538 F.3d at 454. A court "abuses its discretion when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *Id.* (*quoting In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 623 (6th Cir. 2008)). Although the Rules do not require a hearing on every Rule 60 motion, denial of a hearing is an abuse of discretion where the movant has proffered specific documentary evidence bearing on dispositive elements of the claim and the district court's order does not engage that evidence. On the record here, where the Rebuttal PR email chain, Druckenbrod EIC and Petty's retention documents were presented in support of Elements 3–5 of the Rule 60(d)(3) test and the Order does not address them, denial without a hearing constitutes such an abuse.

### A. The District Court Denied the Motions Without Any Evidentiary Hearing.

The district court proceeded from motion papers alone to entry of judgment. No evidentiary hearing was held; no live testimony was taken; no cross-examination of any Class Counsel attorney, Norfolk representative, or expert (Carson, Petty, Schuhmann) was permitted; and no documentary discovery on the concealment claims was ordered. The record consisted of the Motions, the responses, and the district court's review of the settlement-approval record, a record that does not include the newly discovery evidence Movants have identified.

## B. <u>Movants Have Made a Colorable Showing on Each Ground</u>

Arguments I–VI establish colorable showings on each Rule 60(b)(3), Rule 60(d)(3), Rule 60(b)(6), Rule 60(c)(1) timeliness, release-disclaimer, and third-party-fraud ground, and the district court's denial without a hearing rests on findings the record does not support. *Info-Hold*, 538 F.3d at 454.

## C. <u>Specific Disputed Facts on Remand</u>

The material disputed facts identified in Arguments I–VI warrant testimony from the Rebuttal PR principals, the identified Class Counsel attorneys, and Norfolk's environmental-testing decisionmakers. The

specific witness list and document categories will be set out in Movants'
Rule 12.1 remand papers.

**D. <u>Scope of the Requested Evidentiary Hearing and Rule 62.1 / 12.1 Considerations</u>**

The requested hearing would address the disputed facts in Arguments I–VI, together with targeted document discovery on newly discovered evidence. The district court did not exercise its Rule 62.1 indicative-ruling option during the pendency of the objectors' Sixth Circuit appeal. *See* Fed. R. Civ. P. 62.1(a) (district court may defer, deny, or state that it would grant a motion or that the motion raises a substantial issue); Fed. R. App. P. 12.1 (procedure for indicative-ruling remand from court of appeals). On remand, the appropriate mechanism is a Rule 12.1 procedure with retained appellate jurisdiction.

**E. <u>Relief Requested in the Alternative</u>**

In the alternative to reversal on the merits, Appellants request that this Court reverse the district court insofar as it denied the Motions without an evidentiary hearing; remand for an evidentiary hearing consistent with the scope in Section D; direct the district court to authorize targeted document discovery on the categories identified in Section D; and retain jurisdiction under Fed. R. App. P. 12.1.

## CONCLUSION

Appellants respectfully request that this Court reverse the order denying relief and remand for the district court to consider the Rule 60(b)(3), (d)(3), and (b)(6) motions under the correct legal standards.

Respectfully submitted,
*/s/ **Jedidiah I. Bressman***
Jedidiah I. Bressman
**BRESSMAN LAW**
2727 Tuller Parkway, Suite 100
Dublin, Ohio 43017
Phone: (614) 538-1116
Fax: (614) 761-8399
Jedidiah@bressmanlaw.com
Counsel for Appellant

**CERTIFICATE OF COMPLIANCE**

A. This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) / 6 Cir. R. 32 (principal) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 3295 words, as counted by the word-processing system used to prepare it, within the 13000-word limit.

B. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Century Schoolbook 14-point font.

Respectfully submitted,

*/s/ Jedidiah I. Bressman*
Jedidiah I. Bressman
**BRESSMAN LAW**
2727 Tuller Parkway, Suite 100
Dublin, Ohio 43017
Phone: (614) 538-1116
Fax: (614) 761-8399
Jedidiah@bressmanlaw.com
Counsel for Appellant

## CERTIFICATE OF SERVICE

I certify that on July 27, 2026 I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/RE system, which will serve notice of the filing on all registered counsel of record (Fed. R. App. P. 25).

Respectfully submitted,

***/s/ Jedidiah I. Bressman***
Jedidiah I. Bressman
**BRESSMAN LAW**
2727 Tuller Parkway, Suite 100
Dublin, Ohio 43017
Phone: (614) 538-1116
Fax: (614) 761-8399
Jedidiah@bressmanlaw.com
Counsel for Appellant

# ADDENDUM

# Appellant's Designation of Relevant District Court Documents

U.S. District Court for the Northern District of Ohio, Eastern Division, No. 4:23-cv-00242-BYP

| Record Entry | Description of Document | Page ID # |
| --- | --- | --- |
| 432 | Order Extending Expert Disclosure Deadline | 5686 |
| 452 | Motion for Preliminary Approval of Class Action Settlement | 5955-5957 |
| 452-2 | Class Action Settlement Agreement, incl. Supplemental Termination Agreement (Ex. A) | 6012-6100 |
| 518-10 | Declaration of Richard Schuhmann, Ph.D. | 11186-11204 |
| 534 | Declaration of Stephen Petty | 11620-11640 |

| 553 | Transcript of Fairness Hearing (Sept. 25, 2024) | 14423-14541 |
|------|-------------------------------------------------|-------------|
| 557 | Order Granting Final Approval of Settlement | 14580-14586 |
| 993 | Motion for Relief from Judgment (Fed. R. Civ. P. 60(b)(3),(b)(6),(d)(3)) | 68906-68907 |
| 993-1 | Memorandum in Support of Motion for Relief | 68908-68942 |
| 993-3 | Personal Injury Release (Druckenbrod) | 68943-68959 |
| 994 | Second Motion for Relief from Judgment | 69016-69017 |
| 994-1 | Memorandum in Support of Second Motion | 69018-69049 |
| 1003 | Class Counsel's Response in Opposition to Motions for Relief | 69120-69140 |
| 1014 | Movants' Reply in Support of Motions for Relief | 70950-70975 |

| 1014-1 | Rebuttal PR Email Chain (July 26, 2024 transmittal of edited Carson video) | 70983 |
|---|---|---|
| 1014-4 | Scott Smith Confirmatory Soil Testing (Aug. 2025) | 71002 |
| 1053 | Memorandum of Opinion and Order Denying Relief | 73040-73068 |
| 1054 | Notice of Appeal | 73069 |