**No. 26-3499**

# UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

IN RE EAST PALESTINE TRAIN DERAILMENT,

BARBARA ADAMS; ERIC ADKINS; IAN BAKER; KAREN BAKER; LARRY BAKER; SAMUEL BARNHOUSE; ELIAS RALEY; CHAD BROWN; CHRIS REED; JESSICA BROWN; DOROTHY REYNOLDS; RICHARD J. BRUNO; JASON REYNOLDS; BRYON BUHECKER; JACK REYNOLDS; CINDY BUSSARD; NICHOLAS REYNOLDS; WALTER CALL; STACEY RINEHART; JOHN CARR; ARABELLA ROBERTS (MINOR); ERIN CAPOTS; ROBERT RYND; JEREMY CARTER; SHIRLEY RYND; LUIS CHENG; EDWARD SICELOFF; ALAN COPE DEAN; PAUL SIMMONS; CHAD DAVIDSON; RHONDA SIMMONS; SAMANTHA DAVIDSON; CHESTER SMITH; NATHAN DENES; MONICA SOSA; ZAYNE DENES;

[*List Of Movants-Appellants Continued On Inside Cover*]

*Movants-Appellants*,

*v.*

NORFOLK SOUTHERN RAILROAD COMPANY; NORFOLK SOUTHERN CORPORATION,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Ohio, No. 4:23-cv-00242
Judge Benita Y. Pearson

## BRIEF FOR DEFENDANTS-APPELLEES NORFOLK SOUTHERN RAILWAY COMPANY AND NORFOLK SOUTHERN CORPORATION


ALBINAS PRIZGINTAS
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
albinas.prizgintas@wilmerhale.com

ALAN SCHOENFELD
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
alan.schoenfeld@wilmerhale.com


August 26, 2026

DEBORAH STANLEY; AIRYONNA DENES; MARK STILES; DARYL DEVINE; RUBY STILES; JULIE DEWALT; STACEY STOCKUNAS; RILEY DICKEY, MINOR; GENARO TORRES; SARA DICKEY; RACHEL TORRES; TYLER DICKEY; REBECCA TORRES; AUSTIN DRUCKENBROD; CYNTHIA TRIMBLE; KATHY JO DYKE; BRAYDON TROSKY; RICHARD DYKE; BROOKLYN TROSKY; LAUREN FEGERT; JASON TROSKY; LANCE FELGER; FRANK UNGARO; NEKO FIGLEY; MICHAEL FLAHERTY, DECEASED; LINDA UNGARO; BRUCE FOGEL; PATRICK UNGARO; MEGAN FOGEL; DARLA VANNI; BRIAN FORWARD; ERIC VANNI; JOSHUA FORWARD; CHRISTOPHER VEITZ; AMBER FOSNAUGHT; LILLIAN VEITZ; AMY JO FOSTER; LINDY VEITZ; ANTHONY GENE FOSTER; LOGAN VEITZ; BRANDI FOSTER; TANNER VEITZ; CECILIA ROSE FOSTER; MEGAN VOGEL; SOPHIA MARIE FOSTER; BRANDI WAGONER; TRAVIS FOSTER; JULIE WAITE; TAMARA LYNN FREEZE; RUSSEL WAITE; MARY FROST; SHELBY WALLACE; JACOB GAUL; DEB WALTON; MANDY GAUL; SCOTT WALTON; SANDRA GILBERT; JAMES THOMAS WARD; SHAWNA GLASS; MAVERICK JAMES WARD; ANA ISABEL GRAUSO; SOPHIA MERYL WARD; SAMUEL GRAUSO; VIDA RESURRECTION WARD; JESSE GREATHOUSE; RICHARD WEAVER; MARCIE GREEN; OWEN WEIGEL; KENDRA GROSCOST; TAYLOR REYNOLDS WEIGEL; CLARA GUESMAN; TINA WILD; ELIJAH HAINES; CHERYL WILLIAMS; VIOLET HAINES; WILLIAMS LOGGINS; ZOEY HAINES; EMMA WISE; ANDREW HARMON; RONI WISE; BOBBY HICKS; RICHARD MULL; CIERA HICKS; PATRICIA MICCO; GAGE HICKS; ETHAN MAHON; MICHAEL HICKS; IRIS MATTERN; TARA HICKS; VENITA MATHENEY; ALLEN HILL; ANGELA MACIAS; MICHAEL HOBRAT; CHELSEA MACOLINO; NOELLE HOBRAT; DENNIS MANLEY; TALESHA HOOD; MICHAEL MARTIN; GREG HOULETTE; CURTIS MAY; WILLIAM SMILEY HUGAR; EDWARD MCNEE; KATHERINE HUTCHISON; FAITH MILLER; SUE JAMERY; KURT MILLER; ANALYNN JASKOLA; MELISSA MILLER; FAITH JASKOLA; ARTHUR MUNYON; NICHOLAS JASKOLA; BRENDA MUNYON; JUSTIN JAVENS; KRISTY MUNYON; KENNETH W. JOHNSON; LINDA MURPHY; AMANDA MAZZETTI KEMMER; MORGAN MURPHY; BRAD KEMMER; RUSSELL MURPHY; CAINE KEMMER; MICHAEL MUSULIN; CHLOE KEMMER; BREANA NALESNIK; ALISSA KETTERER; ESTATE OF JOSEPH DONALD OLSON; LORI KETTERER; SHERRI LENNY L. KIEHL; NATHAN PIRTZ; LANDON KIRBY; LORI POSEY; LANNA KIRBY; DAVID QUIMBY; BERNIE KOSAR, SR.; LAUREN QUIMBY; BETH KOSAR; TERESA QUIMBY; NICHOLAUS KUZEMCHAK; THOMAS LEWIS; SOPHIA KUZEMCHAK; ROBERT LIPOSKY; KAITLYN KUZEMCHAK; STEVEN LOCKARD; LINDSAY KUZEMCHAK; STEVEN LOCKARD, JR.; MIA KUZEMCHAK; VONNETTIA LOCKARD; DANA KYKER; TIFFANY LOGGINS; TERRI LATTANZIO; TOM YOUNG; CHRISTOPHER RALEY; LYNN YOUNG; COLE RALEY,

*Movants-Appellants*,

## CORPORATE DISCLOSURE STATEMENT

Norfolk Southern Corporation, a Georgia-based parent company with headquarters in Atlanta, Georgia, owns all of the common stock and controls a major freight railroad, Norfolk Southern Railway Company. In addition, Norfolk Southern Corporation owns NS Fiber Optics, Inc.; Norfolk Southern Properties, Inc.; General American Insurance Company; and Thoroughbred Technology and Telecommunications, LLC.

There is no publicly owned corporation that is not a party to this appeal that has a financial interest in the outcome.

## TABLE OF CONTENTS


Page

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ........................................................................ v

STATEMENT REGARDING ORAL ARGUMENT ................................................ 1

JURISDICTIONAL STATEMENT .................................................................. 2

STATEMENT OF ISSUES .......................................................................... 3

INTRODUCTION ..................................................................................... 4

STATEMENT OF THE CASE ...................................................................... 9

A. The District Court Determines The Settlement Was Fair, Adequate, And Reasonable ........................................................ 9

1. The parties aggressively litigate the case .................................. 9

2. The parties engage in hard-fought settlement negotiations ........................................................................ 11

3. Class members overwhelmingly support the settlement ........................................................................ 12

4. The few objectors raise materially similar arguments to those raised by Appellants ................................. 14

B. This Court Dismisses Direct Appeals ................................................ 17

C. Norfolk Southern Has Complied With All Settlement Provisions, And Appellants Have Been Paid Through The Personal Injury Program ........................................................ 19

D. The District Court Rejects Appellants' Rule 60 Motions .................. 19

STANDARD OF REVIEW ........................................................................ 23

SUMMARY OF ARGUMENT ................................................................... 24

ARGUMENT ....26

I. THE DISTRICT COURT ACTED WELL WITHIN ITS DISCRETION IN DENYING RULE 60(d)(3) RELIEF....26

A. Appellants Waived Any Argument That Norfolk Southern Committed Fraud On The Court....27

B. The District Court Acted Well Within Its Discretion In Rejecting Appellants' Claim That Class Counsel Committed A Fraud On The Court ....28

II. THE DISTRICT COURT ACTED WELL WITHIN ITS DISCRETION IN DENYING RULE 60(b)(3) RELIEF....33

A. Most Of Appellants' Rule 60(b)(3) Theories Against Norfolk Southern Were Not Adequately Raised Below And Are Waived....34

B. Even Absent Waiver, The District Court Was Well Within Its Discretion To Deny Relief Under Rule 60(b)(3)....37

III. THE DISTRICT COURT ACTED WELL WITHIN ITS DISCRETION TO DENY RELIEF UNDER RULE 60(b)(6) ....46

A. Appellants Are Barred From Pursuing Relief Under Rule 60(b)(6)....46

B. Appellants Identify No Extraordinary Circumstances ....49

IV. THE DISTRICT COURT CORRECTLY HELD THAT APPELLANTS' ATTEMPTS TO INVALIDATE RELEASES SUFFERED FROM INDEPENDENT DEFICIENCIES....50

A. Appellants Concede Their Arguments Boil Down To Requests For Rescission Based On Alleged Fraudulent Inducement ....51

B. The District Court Correctly Determined That The Releases Defeat Any Claim Of Reliance ....53

C. Appellants' Other Arguments Fail ....55

V. THE DISTRICT COURT ACTED WELL WITHIN ITS DISCRETION IN DENYING APPELLANTS' MOTIONS WITHOUT ANY EVIDENTIARY HEARING.....56

CONCLUSION.....58

CERTIFICATE OF COMPLIANCE

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

## CASES


Page(s)

*Agristor Leasing v. A.O. Smith Harvestore Products*, 803 F.2d 1401 (6th Cir. 1986) .....54

*BLOM Bank SAL v. Honickman*, 605 U.S. 204 (2025).....49

*Carter v. Anderson*, 585 F.3d 1007 (6th Cir. 2009). .....27, 28

*Ford Motor Company v. Mustangs Unlimited, Inc.*, 420 F. App'x 522 (6th Cir. 2011) .....56

*GenCorp, Inc. v. Olin Corporation*, 477 F.3d 368 (6th Cir. 2007) .....56

*General Medicine, P.C. v. Azar*, 963 F.3d 516 (6th Cir. 2020).....34, 35

*General Medicine, P.C. v. Horizon/CMS Health Care Corporation*, 475 F. App'x 65 (6th Cir. 2012).....24, 26, 28

*Gonzales v. Galvin*, 151 F.3d 526 (6th Cir. 1998).....57

*Goodyear Tire & Rubber Company v. Chiles Power Supply, Inc.*, 7 F. Supp. 2d 954 (N.D. Ohio 1998) .....55

*Hernandez v. Results Staffing, Inc.*, 907 F.3d 354 (5th Cir. 2018).....45

*Hunter v. Sterling Mortgage & Investment Company*, 2022 WL 633845 (6th Cir. Mar. 4, 2022) .....27, 39

*Huntington National Bank v. Xiaowei He*, 2026 WL 1182406 (Ohio Ct. App. Apr. 30, 2026).....52

*In re Bear Stearns Companies Securities, Derivative, & ERISA Litigation*, 909 F. Supp. 2d 259 (S.D.N.Y. 2012) .....11

*In re Crocs Inc. Securities Litigation*, 306 F.R.D. 672 (D. Colo. 2014) .....11

*In re East Palestine Train Derailment*, 158 F.4th 704
(6th Cir. 2025) ........................................................................*passim*

*Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448
(6th Cir. 2008) ............................................................33, 37, 38, 40

*Ingram Corporation v. J. Ray McDermott & Company*, 698 F.2d 1295
(5th Cir. 1983) ............................................................................54

*Jinks v. AlliedSignal, Inc.*, 250 F.3d 381 (6th Cir. 2001) ...................................48

*Jones v. Illinois Central Railroad Company*, 617 F.3d 843
(6th Cir. 2010) .......................................................................23, 56

*King v. United States*, 143 F.4th 705 (6th Cir. 2025) ......................................46

*Kobatake v. E.I. DuPont De Nemours & Company*, 162 F.3d 619
(11th Cir. 1998) ..........................................................................54

*Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866 (6th Cir. 2007)....................................52

*Mitchell v. Hobbs*, 951 F.2d 417 (1st Cir. 1991) ............................................57

*MMAR Group, Inc. v. Dow Jones & Company*, 187 F.R.D. 282
(S.D. Tex. 1999) ..........................................................................45

*Pagani-Gallego v. United States*, 76 F. App'x 20 (6th Cir. 2003)........................23

*Park West Galleries, Inc. v. Hochman*, 692 F.3d 539 (6th Cir. 2012) .............55, 56

*Rice v. Jefferson Pilot Financial Insurance Company*, 578 F.3d 450
(6th Cir. 2009) .......................................................................34, 37

*Rozier v. Ford Motor Company*, 573 F.2d 1332 (5th Cir. 1978)............................45

*Scott v. First Southern National Bank*, 936 F.3d 509 (6th Cir. 2019)...............27, 56

*Scottsdale Insurance Company v. Flowers*, 513 F.3d 546
(6th Cir. 2008) .......................................................................35, 36

*Sheely v. Feezle*, 146 S. Ct. 1778 (2026) ........................................................19

*Travelers Property Casualty Company of America v. Hillerich & Bradsby Company*, 598 F.3d 257 (6th Cir. 2010) ........................................30

*Tyler v. Anderson*, 749 F.3d 499 (6th Cir. 2014)........................................24, 33, 43

*Voulgaris v. Array Biopharma Inc.*, 2021 WL 6331178 (D. Colo. Dec. 3, 2021) ..........................................................................11

**DOCKETED CASES**

*In re East Palestine Train Derailment*, No. 24-3852 (6th Cir.) ........................17, 18

*In re East Palestine Train Derailment*, No. 24-3880 (6th Cir.) ........................17, 18

*Ohio v. Norfolk Southern Corporation*, No. 4:23-cv-00517 (N.D. Ohio).......................................................................................21, 38, 39

**STATUTES AND RULES**

28 U.S.C.
§ 1291 ..........................................................................................................2
§ 1332 ..........................................................................................................2

Fed. R. Civ. P. 60 ....................................................................................*passim*

**OTHER AUTHORITIES**

Government Accountability Project, *Uncovered EPA Letter Reveals EPA Negligence In Allowing Flawed Norfolk Southern Testing in East Palestine* (July 15, 2025), https://tinyurl.com/4zasjk4f ....................41

*Manual for Complex Litigation* (4th ed. 2025).......................................................44

12 *Moore's Federal Practice* (2026) ......................................................................24

Norfolk Southern Railway Co., *Phase I – Preliminary Residential/ Commercial/* Agricultural *Soil Sampling Plan* (Mar. 6, 2023), https://tinyurl.com/mryy433n ...................................................................41, 42

## STATEMENT REGARDING ORAL ARGUMENT

Norfolk Southern does not believe oral argument is necessary to decide the issues on appeal but requests the opportunity to participate in oral argument should the Court determine oral argument would be beneficial to its consideration of the case.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1332(d)(2). This Court has jurisdiction under 28 U.S.C. § 1291, because the district court's order denying Appellants' Rule 60 motions for post-judgment relief is a final decision.

## STATEMENT OF ISSUES

1. Whether the district court acted within its discretion when it denied Appellants relief under Rule 60(d)(3).

2. Whether the district court acted within its discretion when it denied Appellants relief under Rule 60(b)(3).

3. Whether the district court acted within its discretion when it denied Appellants relief under Rule 60(b)(6).

4. Whether Appellants may invoke Rule 60 to rescind individually executed contractual releases.

5. Whether the district court acted within its discretion when it resolved Appellants' motions without an evidentiary hearing.

## INTRODUCTION

Norfolk Southern's $600 million class action settlement is final. It was reached after extensive, zealous litigation, and only after repeated engagement with one of the nation's leading mediators, who proposed a recommendation that both sides timely accepted. The settlement was overwhelmingly supported by class members and found to be fair, adequate, and reasonable by the district court. On direct appeal, this Court rejected challenges to the settlement's reasonableness. As this Court observed, "[t]he discovery, mediation, and settlement process was complex, expensive, and exhaustive, and the class's counsel, representatives, and absent members all support the agreement." *In re East Palestine Train Derailment*, 158 F.4th 704, 714 (6th Cir. 2025). "At the end of the day, the parties settled because" the settlement "adequately compensated injured individuals given the balance of conflicting evidence." *Id.*

In addition to direct payments available to all settlement class members, the settlement provided an entirely voluntary option for eligible members to receive additional compensation through personal injury payments. Class members within 10 miles of the derailment could individually choose to receive additional monetary payments in exchange for individually agreeing to contractually release personal injury claims. "[T]he personal injury program was completely voluntary, optional,

and would not impact direct payments to class members." Order Denying Motions for Relief from Judgment ("Order Denying Motions"), R. 1053, Page ID # 73066.

Appellants—a tiny fraction of the settlement class—repeatedly waive any objection to the settlement, and expressly do not dispute that the settlement was fair, adequate, and reasonable. They do not challenge the amount of the settlement or that it included the option for personal injury payments. Instead, they seek only to be individually excused from the personal injury releases they individually signed—and for which the majority of Appellants (to date, more than 120 of the 196) have been paid.

Appellants claim they should be permitted to walk away from their contractual releases based on Federal Rules of Civil Procedure 60(d)(3), 60(b)(3), and 60(b)(6). Under Rule 60(d)(3), they claim class counsel somehow committed a "fraud on the court" by not disclosing information that is either irrelevant or materially the same as that disclosed and considered by the district court when approving the settlement. Under Rule 60(b)(3), they claim Norfolk Southern somehow committed misconduct by (1) relying on validated environmental testing by or under the supervision of federal and state regulators, (2) agreeing to a mediator-facilitated settlement before the case management deadline for expert disclosures, (3) "concealing" a settlement provision that is expressly referenced in the settlement, and (4) remaining "silent" at the settlement fairness hearing when class counsel purportedly did not disclose

immaterial or already-disclosed information. And under Rule 60(b)(6), they claim that "extraordinary circumstances," independent of any ground for relief expressly authorized by Rule 60(b), justify excusing them from the contracts they voluntarily entered. The district court acted well within its discretion under Rule 60 when it rejected each of these arguments.

*First*, the district court acted well within its discretion to reject Appellants' assertion that class counsel committed fraud on the court under Rule 60(d)(3). That argument—advanced only against class counsel, and expressly disclaimed as to Norfolk Southern—fails to demonstrate that the district court was deceived by the supposed nondisclosure of information materially similar to claims publicly litigated during the settlement-fairness proceedings. Appellants do not establish any fraud, let alone the sort of extreme corruptions of the judicial process that warrant the exercise of this "truly extraordinary remedy."

*Second*, the district court acted well within its discretion to deny relief under Rule 60(b)(3). Appellants waived the bulk of their theories, which frivolously assert that Norfolk Southern misrepresented or concealed evidence, by either raising them for the first time in their reply brief below or failing to raise them at all. In any event, none of their arguments demonstrate that Norfolk Southern took any action that impaired the fairness of the settlement approval proceedings. Moreover, to the extent their arguments suggest an incomplete record on environmental harm, this

Court has already rejected the "argument … that the district court and class counsel failed to review, credit, and disseminate expert declarations and soil sampling data about the long-term hazards from environmental toxins." *East Palestine Train Derailment*, 158 F.4th at 714. Like the objectors before them, Appellants cannot "explain why adding more conflicting evidence to a billowing record would move the needle during renewed settlement negotiations." *Id.*

*Third*, the district court acted well within its discretion to deny relief under Rule 60(b)(6), correctly holding it does not provide an alternative route to relief. That provision is available only when the motion does not fall within another Rule 60(b) category. But Appellants' own Rule 60(b)(3) arguments foreclose reliance on subsection (b)(6). And their attempt to invoke purportedly "newly discovered evidence" points, if anywhere, to Rule 60(b)(2), which provides for post-judgment relief based on new evidence under specific circumstances that Appellants do not even attempt to establish. In any event, Appellants identify no extraordinary circumstances that would justify Rule 60(b)(6) relief.

*Fourth*, Appellants' attempts to evade their individual contractual releases independently fail under their "fraudulent inducement" theory. Appellants fail to establish the essential elements of fraudulent inducement, including because they identify no misrepresentation by Norfolk Southern and because the releases

themselves expressly disclaim any reliance on any representation by Norfolk Southern.

*Finally*, the district court was well within its discretion to reject Appellants' motions without holding an evidentiary hearing. That is especially so given the district court's deep engagement with this case over years of discovery, motions practice, settlement proceedings, a related multi-week trial, and the extensive factual record—combined with the fact that Appellants' arguments repackage claims the district court already carefully considered at the fairness hearing.

In sum, *after* the district court and this Court determined the reasonableness of the class settlement, *after* Norfolk Southern paid the full $600 million settlement amount, and *after* Appellants executed contracts for which the majority of them have been paid personal injury payments collectively amounting to over $1 million, Appellants seek a meritless do-over on those contractual releases alone. They seek that do-over based on frivolous assertions of misconduct and information that is materially the same as information that has long been publicly available and litigated before this Court and the district court. Neither Rule 60 nor basic principles of contract law provide a basis for rescission of these voluntary contractual releases.

## STATEMENT OF THE CASE

### A. The District Court Determines The Settlement Was Fair, Adequate, And Reasonable

Appellants challenge only their own contractual releases. They waive any challenge to the "settlement as approved." Br. 12; Br. 45 ("The relief sought does not disturb the general Rule 23(e) approval or the class-wide Compensation Program."). Indeed, they do not even challenge the settlement's inclusion of the option for eligible class members to contractually release personal injury claims for additional compensation—only their own contracts.

Even though Appellants do not challenge anything about the class settlement except for their own, individual personal injury releases, they do so under the guise of Rule 60 motions pertaining to the district court's order approving the class settlement. *See* Mot. for Relief from Judgment, R. 993-1, Page ID # 68908; Mot. for Relief from Judgment, R. 994-1, Page ID # 69018. That final approval order concluded the settlement was fair, adequate, and reasonable after extensive pre-settlement litigation, followed by a vigorous adversarial process over the settlement itself.

#### 1. The parties aggressively litigate the case

The district court recognized the "robust litigation" that preceded its final approval of the settlement. Final Approval Order, R. 557, Page ID # 14582. Over 30 individual and putative class actions were filed. The court consolidated those

cases and appointed class counsel, Consolidation Order, R. 28, Page ID # 559-571, who eventually filed a 105-page master complaint, R. 138, Page ID # 1771-1876.

Norfolk Southern moved to dismiss, including on preemption grounds. As class counsel acknowledged, the "risk posed by a negative ruling on preemption" was so "substantial" that they hired "one of the foremost appellate attorneys in the United States[] to consult" on their response to those arguments. Plaintiffs' Settlement Br., R. 518-1, Page ID # 10907. Much of the case proceeded past the pleadings, but the district court did not foreclose the possibility of a future preemption decision favorable to Norfolk Southern. Order on Motion to Dismiss, R. 428, Page ID # 5556.

Litigation proceeded through "extensive discovery." Final Approval Order, R. 557, Page ID # 14582. That discovery included the production and review of over a million pages of documentary evidence, dozens of depositions, expert development, and extensive environmental testing. Plaintiffs' Settlement Br., R. 518-1, Page ID # 10908-10909; *see also East Palestine Train Derailment*, 158 F.4th at 714.

Meanwhile, Norfolk Southern continued extensive efforts to assist East Palestine and surrounding areas while cooperating with federal and state regulators to address any environmental impacts. Norfolk Southern provided direct compensation for evacuation and relocation costs and provided wage loss payments

to those displaced from work. It also committed tens of millions of dollars to address allegedly impacted infrastructure in East Palestine. These remediation efforts would have posed a substantial risk to the scope of the plaintiffs' recovery, which would have been extensively litigated even if the plaintiffs could overcome significant obstacles on the merits of their claims.

### 2. The parties engage in hard-fought settlement negotiations

As the district court recognized, the settlement that followed was "vigorously negotiated, conducted at arm's length, entered in good faith, and … free of fraud or collusion." Final Approval Order, R. 557, Page ID # 14583. In October 2023, the parties engaged in a two-day mediation overseen by retired United States District Judge Layn R. Phillips, a highly experienced and respected mediator.[1] The mediation was unsuccessful. Negotiations between the parties continued in parallel to aggressive, round-the-clock litigation. Plaintiffs' Settlement Br., R. 518-1, Page ID # 10910. Months later, the parties returned to another full-day mediation session in February 2024. *Id.* Again, the parties did not come to agreement.

[1] Courts have repeatedly relied on Judge Phillips's involvement as a factor weighing in favor of approving settlements. *See, e.g.*, *Voulgaris v. Array Biopharma Inc.*, 2021 WL 6331178, at *6 (D. Colo. Dec. 3, 2021), *aff'd*, 60 F.4th 1259 (10th Cir. 2023); *In re Crocs Inc. Sec. Litig.*, 306 F.R.D. 672, 690 (D. Colo. 2014); *In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012).

Negotiation continued, and in March 2024, Judge Phillips presented a mediator's recommendation. Plaintiffs' Settlement Br., R. 518-1, Page ID # 10911. The parties timely accepted Judge Phillips's recommendation in April 2024. Notice of Agreement in Principle, R. 445, Page ID # 5822. As Judge Phillips subsequently attested, "the Settlement represents an excellent outcome obtained after aggressive litigation and arms' length negotiation," and "it was in the best interests of the Parties that they avoid the burdens and risks associated with taking a case of this size and complexity to trial and following appeals." Phillips Decl., R. 518-5, Page ID # 11089. As Judge Phillips observed, the "Settlement will provide substantial and expeditious relief for community members affected by the train derailment." *Id.*

**3. Class members overwhelmingly support the settlement**

The parties executed the settlement on April 26, 2024. The settlement created a non-reversionary fund of $600 million, to be allocated among the settlement class, defined (with certain exceptions) as "all Persons and Businesses residing, owning or otherwise having a legal interest in property, working, or owning or operating a business within a 20-mile radius of the Derailment Site, from February 3, 2023 to the Settlement Date." Settlement Agreement, R. 452-2, Page ID # 6013. "Class Members overwhelmingly supported the settlement," with about 80% of households within two miles of the derailment and nearly 30% of households within 20 miles of the derailment submitting a claim. Final Approval Order, R. 557, Page ID # 14583.

Only 47 businesses and, "[o]f the 463,271 household Class Members, only 370, or about .083%," opted out. *Id.*

As is common in class settlements, this settlement included a "Supplemental Termination Agreement" that offered Norfolk Southern the right to terminate the settlement if class members' "participation rates trigger the numerical thresholds specified in the Supplemental Termination Agreement." Settlement Agreement, R. 452-2, Page ID # 6021. The settlement itself disclosed the existence of this termination agreement—as did class counsel's preliminary and final approval papers, Plaintiffs' Mot. for Preliminary Approval of Settlement, R. 452-1, Page ID # 5988; Plaintiffs' Settlement Br., R. 518-1, Page ID # 10934—while noting that its terms would be kept confidential (as is common) unless and until the district court directed otherwise. Settlement Agreement, R. 452-2, Page ID # 6021. Norfolk Southern never exercised its termination rights.

In addition to direct payments to households and compensation for business losses, the settlement provided the option—at eligible settlement class members' individual election—for voluntary personal injury payments, providing those within 10 miles of the derailment the option for an additional monetary payment in exchange for an individually executed personal injury release. Settlement Agreement, R. 452-2, Page ID # 6024-6026. Eligible class members could also submit a "Claim[] for Extraordinary Injury," or "Extraordinary Injury Claim"

("EIC")—an optional request for additional compensation, supported by individualized documentation and evaluated in the settlement administrator's discretion. *Id.* Page ID # 6025.

#### 4. The few objectors raise materially similar arguments to those raised by Appellants

The plaintiffs supporting the settlement and the few objectors opposing it submitted extensive briefing before a thorough hearing to facilitate the district court's consideration of whether to approve the settlement. The objectors raised many of the same arguments Appellants assert here.

In the pre-hearing briefing, objectors relied heavily on Scott Smith and Stephen Petty, purported experts in environmental testing and exposure, as well as George Thompson, a purported toxicology expert. *See, e.g.*, Objectors' Reply to Req. for Enlargement of Time to Opt-out, R. 508, Page ID # 9097-9102; Petty Decl., R. 540, Page ID # 12404-12410; Petty Decl. Exs., R. 540-1, Page ID # 12411-12537. These purported experts' views of environmental contamination and health risks were aired in public filings between July and September 2024. *See* Obj. to Settlement Agreement & Mot. to Enlarge Time, R. 485, Page ID # 7306-7307; Obj. to Settlement Agreement & Mot. to Enlarge Time, R. 486, Page ID # 7973-7974; Resp. to Mot. for Final Approval of Settlement, R. 529, Page ID # 11591. Relying on these views, the objectors asserted "that multiple chemicals and other products were burned, sending a constellation of toxins into the community by way of air,

water and soil. The real harms that will befall this community have yet to reveal themselves." Resp. to Mot. for Final Approval of Settlement, R. 529, Page ID # 11591.

Objectors' briefing also challenged statements by a physician working with class counsel, Dr. Arch "Chip" Carson (with whom Norfolk Southern had no involvement), claiming Carson's statements at a "virtual town hall meeting" incorrectly suggested there was "no reason for concern" and that there was "no reason to believe that the communities' exposure to this unprecedented release of toxins will come to bear any harm upon them." Resp. to Mot. for Final Approval of Settlement, R. 529, Page ID # 11593. Thompson opined that "Carson's statements to class members … were incomplete and unreliable, and contained inaccurate if not, dangerously misleading information." Thompson Aff., R. 537, Page ID # 12315. Thompson also claimed that "[a]t least two East Palestine residents have already been diagnosed with cancer," and that "[t]he rapid development of these cancers can readily be attributed to the carcinogens released by the fires along with the cancer promoting chemicals." *Id.* Page ID # 12317. These claims were also raised to the district court at least a month prior to the final approval hearing—Thompson made the same assertions in August 2024. Objectors' Reply to Req. for Enlargement of Time to Opt-Out, R. 508, Page ID # 9100. And Thompson made similar claims even earlier, including in "a January 29, 2024 Op-Ed" included in support of objectors'

filings on July 1, 2024. Ex. 27 in Support of Obj. to Settlement Agreement & Mot. to Enlarge Time, R. 485-1, Page ID # 7326, 7602-7603.

These arguments in pre-hearing briefs were reiterated again during the public fairness hearing on September 25, 2024, by counsel for objectors:

> We now know that information has been discovered on all of these topics by many of these factions, but not all of the information provides consistent conclusions. And there is not a consensus regarding the long-term environmental and health risks to members of this community and this class.
>
> ***
>
> What did class members, proposed class members have available to them from class counsel that would provide them sufficient information to inform them on their decision-making? For example, what are my exposure risks? What are my risks to the long-term health effects? For some, why do I have current health issues that I didn't have before?
>
> ***
>
> [T]here is a consternation and a real concern about the environmental impact that this vent and burn—what occurred. And there now appears that information was in the hands of class counsel, … that they were aware of some of this information, or at least it was questionable.
>
> ***
>
> But this is real injury to real people … You can't make these decisions. We don't know enough. But we do know the numbers are not correct. That when Mr. Carson was telling people in the community that the numbers that were collected were within acceptable limits, we now know that that's not the case. So if people made decisions on filing in the personal injury case or agreeing to the settlement based upon information that wasn't complete, then they didn't have informed information and it would be unfair to them to settle this case.

Fairness Hearing Tr., R. 553, Page ID # 14439-14459.

The district court carefully evaluated and overruled these objections, and approved the settlement as "fair, reasonable, and adequate and in the best interests of Settlement Class Members." Final Approval Order, R. 557, Page ID # 14582. Among the objections the court rejected were those asserting that "Class Counsel did not discover, collect, or consider sufficient evidence before reaching the Settlement" and that "Class Counsel withheld or suppressed evidence." *Id.* Page ID # 14583-14584.

### B. This Court Dismisses Direct Appeals

The objectors appealed the district court's final approval order. Notice of Appeal, R. 558, Page ID # 14587; Notice of Appeal, R. 570, Page ID # 14768. The objectors' arguments on appeal closely tracked the arguments in the district court. As in the district court—and as Appellants do here—the objectors challenged the adequacy of the record, the sufficiency of information available to class members, and whether the district court adequately accounted for claimed environmental and health risks. Brief for Appellant 20-42 (No. 24-3852), Dkt. 26; Brief for Appellants 22-43 (No. 24-3880), Dkt. 33. Class counsel and Norfolk Southern defended the approval, explaining that the district court had fully considered the settlement's terms, the parties' extensive submissions, and the governing law before granting approval at the fairness hearing, where class counsel, Norfolk Southern, and objectors were heard. Brief for Plaintiffs-Appellees 1-3 (No. 24-3852), Dkt. 39;

Brief for Plaintiffs-Appellees 1-3 (No. 24-3880), Dkt. 44; Brief for Defendants-Appellees 1-3 (No. 24-3852), Dkt. 38; Brief for Defendants-Appellees 1-3 (No. 24-3880), Dkt. 43.

This Court dismissed those direct appeals after the objectors failed, for more than eight months, to post the appeal bond required by the district court (or to timely appeal the district court's bond order). *East Palestine Train Derailment*, 158 F.4th at 709. The Court considered "'the merits of the underlying appeal,'" and rejected challenges to the reasonableness of the settlement. *Id.* at 712, 713-714. The Court rejected objectors' "argument … that the district court and class counsel failed to review, credit, and disseminate expert declarations and soil sampling data about the long-term hazards from environmental toxins." *Id.* at 714. For one thing, the "class members' expert reviewed the environmental data and reached an informed conclusion about the levels of toxicity in the soil." *Id.* For another, the objectors could not "explain why adding more conflicting evidence to a billowing record would move the needle during renewed settlement negotiations." *Id.* Plus, "[t]he discovery, mediation, and settlement process was complex, expensive, and exhaustive, and the class's counsel, representatives, and absent members all support the agreement." *Id.* "At the end of the day, the parties settled because" the provisions of the settlement "adequately compensated injured individuals given the balance of conflicting evidence." *Id.*

Objectors' certiorari petition was denied. *Sheely v. Feezle*, 146 S. Ct. 1778 (2026) (Mem).

### C. Norfolk Southern Has Complied With All Settlement Provisions, And Appellants Have Been Paid Through The Personal Injury Program

Norfolk Southern has strictly complied with all terms of the settlement, including the timely payment of the full $600 million settlement fund.

At the time of Rule 60 briefing in the district court, 13 of the Appellants here had cashed their personal injury payment checks or been paid via electronic funds transfers, which they do not mention. *See, e.g.*, Order Denying Motions, R. 1053, Page ID # 73052 & nn.9-10. As it now stands, the majority of Appellants have been paid personal injury payments, according to matching names in settlement administrator records. Collectively, based on settlement administrator records, Appellants' personal injury payments amount to more than $1 million, with numerous payments between $10,000 and $20,000, and one for $31,000. Appellants do not mention this either.

### D. The District Court Rejects Appellants' Rule 60 Motions

While the objectors' direct appeals were pending, Appellants filed the two Rule 60 motions at issue, claiming they had all elected to participate in the settlement's personal injury payment program. The motions sought relief limited to the personal-injury releases signed by the movants, "seek[ing] to be released from

the voluntary contract they signed in exchange for such payment." Order Denying Motions, R. 1053, Page ID # 73040-73041. As the district court also observed, 13 Appellants (at that time) had already received their personal injury payments. *Id.* Page ID # 73052.

The district court denied the motions. Its decision set forth in detail the factual record relevant to the motions, including as to Carson, Petty, and the adequacy of environmental testing. The district court recounted that Carson—whom class counsel arranged to speak but did not compensate—told class members at the August 2024 town hall that "we can pretty well predict that people are gonna be safe in the long term," and that any cancer risk from the derailment was "not zero either, but it's very small, it's much much smaller than 1%, and it's so small that it's very difficult to calculate." Order Denying Motions, R. 1053, Page ID # 73043-73045. The court also recounted that, at the fairness hearing, it had asked class counsel about whether Carson's presentation had "suggest[ed] no worries, no illness will befall any of you," and class counsel responded that Carson "didn't say there was zero risk," but rather that "the likely risk is unknown and … likely very low." *Id.* Page ID # 73049.

The court also recounted that concerns about Petty, including the disclosure of his opinions, were addressed at the fairness hearing. Order Denying Motions, R. 1053, Page ID # 73048-73049; Fairness Hearing Tr., R. 553, Page ID # 14457.

Despite objectors' claims about Petty being "handcuffed," Petty in fact submitted a lengthy declaration, accompanied by exhibits, laying out his views of purported environmental harm and exposure, *supra* p.14, and voluntarily decided not to appear at the final approval hearing (he was on vacation). Fairness Hearing Tr., R. 553, Page ID # 14457-14458, 14464-14465; Order Denying Motions, R. 1053, Page ID # 73048. Moreover, the court recognized that class counsel carefully considered Petty's views, informed the court that those views were "not new," and explained that "we have scores of other experts." Order Denying Motions, R. 1053, Page ID # 73048-73049. The court noted further that class counsel had explained at the fairness hearing that their own soil sampling program, including as described in the declaration of Dr. Richard Schuhmann, addressed the same subject matter. *Id.*; *see also id.* Page ID # 73056. And the district court catalogued the extensive, validated environmental testing by federal and state regulators and Norfolk Southern showing only modest environmental impact that Norfolk Southern promptly remediated. *Id.* Page ID # 73045-73046 (citing Dollhopf Decl., *Ohio v. Norfolk S. Corp.*, No. 4:23-cv-00517 (N.D. Ohio), Dkt. 162-2).

None of these issues were new. As the district court found, the Rule 60 motions were based on materially the same information aired in public filings well before the fairness hearing, and again at the fairness hearing itself in September

2024. Order Denying Motions, R. 1053, Page ID # 73056 ("The information Movants rely on is not new to Class Counsel, the Settlement Class or the Court.").

The court denied relief under each Rule 60 theory. On Rule 60(d)(3), the court explained that fraud on the court is reserved for "especially egregious conduct and 'such flagrant abuses as bribing a judge, employing counsel to exert improper influence on the court, and jury tampering.'" Order Denying Motions, R. 1053, Page ID # 73062-73063. The court observed that Appellants had not articulated how a difference in opinion between Petty and Carson amounted to fraud. *Id.* Page ID # 73059. Nor had Appellants "cite[d] to any case in support of their argument that failing to provide [Petty's] expert work product amounts to fraud or misconduct justifying relief from settlement." *Id.* The court concluded that Appellants "have not and cannot demonstrate by clear and convincing evidence that Class Counsel engaged in conduct sufficient to satisfy the stringent fraud standard of Fed. R. Civ. P. 60(d)(3)." *Id.* Page ID # 73063.

On Rule 60(b)(3), the court found that Appellants had not shown fraud, misrepresentation, or misconduct by an opposing party, much less by clear and convincing evidence. Order Denying Motions, R. 1053, Page ID # 73056-73060. Indeed, Appellants had "not asserted *any* wrongdoing on the part of Norfolk Southern." *Id.* Page ID # 73064. And the court again emphasized that Appellants "d[id] not raise any new issues in the … motions." *Id.* Page ID # 73056.

The court further held that Rule 60(b)(6) provided Appellants no fallback. It explained that subsection (b)(6) provides relief "only in exceptional or extraordinary circumstances" not addressed by Rule 60(b)'s first five subparagraphs and is not a "backup." Order Denying Motions, R. 1053, Page ID # 73054, 73061.

Finally, the district court recognized the independent deficiencies in Appellants' attempts to undo their personal injury releases via Rule 60 motions. The court explained that the personal injury payment program was voluntary, and that each movant individually chose whether to sign a separate release in exchange for additional compensation. Order Denying Motions, R. 1053, Page ID # 73066. Again, the court recognized that Appellants alleged no wrongdoing by Norfolk Southern, and further relied on the Appellants' contractual acknowledgements that they understood they "may have suffered, or may in the future develop" unforeseen health effects or harms, and were afforded the opportunity to confer with an attorney of their choice concerning the terms of the release. *Id.* Page ID # 73067.

**STANDARD OF REVIEW**

A district court's denial of a Rule 60 motion is reviewed for abuse of discretion. *Jones v. Illinois Cent. R.R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010). The same standard applies to the decision whether to conduct an evidentiary hearing. *Pagani-Gallego v. United States*, 76 F. App'x 20, 22 (6th Cir. 2003). "Post-judgment relief 'is circumscribed by public policy favoring finality of judgments and

termination of litigation.'" *General Med., P.C. v. Horizon/CMS Health Care Corp.*, 475 F. App'x 65, 70-71 (6th Cir. 2012). Accordingly, "Rule 60(b) proceedings are subject to only limited and deferential appellate review." *Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014). Rule 60(d)(3) similarly "must be construed narrowly," so as not to conflict with Rule 60(b)(3) and to "protect the finality of judgments generally." 12 *Moore's Federal Practice* § 60.21(4)(c) (2026).

**SUMMARY OF ARGUMENT**

The district court acted well within its discretion when it denied Appellants' motions under Rule 60 seeking rescission of their individually executed personal injury releases. Appellants do not dispute that the settlement was fair, reasonable, and adequate. Instead, they exclusively demand special treatment, asking under the guise of Rule 60 to be individually excused from their voluntary contractual releases.

I. Appellants' Rule 60(d)(3) "fraud on the court" theory is meritless. Appellants concede they do not pursue this theory against Norfolk Southern, and thus waive any argument (there is none) that Norfolk Southern committed any such fraud. Their allegations of misconduct against class counsel are each based on supposedly concealed information that Appellants do not (and cannot) show deceived the court. And Appellants fall well short of establishing any fraud, let alone the sort of egregious corruptions of the judicial process warranting Rule 60(d)(3)'s "truly extraordinary remedy."

II. Appellants' Rule 60(b)(3) arguments—frivolously alleging misconduct by Norfolk Southern—also fail. Appellants waived the bulk of their theories and each supposedly new piece of evidence underlying this argument, because they either never raised them in the district court or raised them for the first time only in their reply. Even absent waiver, none of Appellants' theories come close to establishing, much less by clear and convincing evidence, that Norfolk Southern took any action that adversely affected the fairness of the proceeding. Their arguments depend on information that is materially the same as evidence already presented to the district court during the settlement fairness proceedings, and in some circumstances untethered to any action by Norfolk Southern at all, much less an action constituting misconduct.

III. Appellants are barred as a matter of law from pursuing relief under Rule 60(b)(6), which is available only where none of Rule 60(b)'s first five subparagraphs are applicable. Appellants effectively concede this approach is barred by raising Rule 60(b)(3). Their attempt to articulate an independent Rule 60(b)(6) theory depends entirely on supposedly newly discovered evidence—a premise that can provide relief under Rule 60, if at all, only under Rule 60(b)(2), which Appellants do not raise. In any event, Appellants fail to articulate any sort of "extraordinary circumstances" that would justify Rule 60(b)(6) relief, instead merely rehashing substantively identical arguments to those that fail under Rules 60(d)(3) and (b)(3).

IV. Appellants' attempts to invalidate their individual personal injury releases fail under their theory of "fraudulent inducement," which they do not and cannot establish. They identify no misrepresentation by Norfolk Southern, and any alleged misconduct by class counsel is irrelevant to the required fraudulent inducement showing. Moreover, the releases themselves expressly disclaim that Appellants relied on any representations by Norfolk Southern.

V. The district court—which has overseen this case from consolidation to settlement and beyond—acted well within its discretion in declining to hold an evidentiary hearing to consider Appellants' meritless arguments and claims.

## ARGUMENT

### I. THE DISTRICT COURT ACTED WELL WITHIN ITS DISCRETION IN DENYING RULE 60(d)(3) RELIEF

Rule 60(d)(3) authorizes the district court to "set aside a judgment for fraud on the court." This is a "'truly extraordinary'" remedy. *Horizon/CMS Health Care Corp.*, 475 F. App'x at 71. It reaches only "the most egregious conduct involving a corruption of the judicial process itself," including "such flagrant abuses as bribing a judge, employing counsel to exert improper influence on the court, and jury tampering." *Id.* To establish fraud on the court, Appellants were required to prove, by clear and convincing evidence, conduct:

> 1) on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; 4) is a positive averment or a

> concealment when one is under a duty to disclose; and 5) deceives the court.

*Carter v. Anderson*, 585 F.3d 1007, 1011-1012 (6th Cir. 2009). Appellants do not even attempt to satisfy that standard against Norfolk Southern and come nowhere close to satisfying it against class counsel.

### A. Appellants Waived Any Argument That Norfolk Southern Committed Fraud On The Court

Appellants advance no fraud-on-the-court claim against Norfolk Southern. Advanced solely against class counsel, their entire argument (Br. 16-28) rests on three things: class counsel's statements in the fairness hearing about Carson's town hall video presentation (Br. 18-22, 24-27), class counsel's alleged concealment of the opinions of their retained expert Stephen Petty (Br. 23-24), and class counsel's alleged concealment of an EIC submitted on behalf of one class member (Austin Druckenbrod) pursuant to the settlement agreement's terms (Br. 24). None of these comprise misconduct—or any conduct—*by Norfolk Southern*. *See* Br. 27 (conceding their "[a]rgument … does not depend on any showing of Norfolk participation").

Appellants thus waive any argument (there is none) that Norfolk Southern committed fraud on the court. *See Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019). Even absent waiver, this argument fails on the merits. Fraud on the court under Rule 60(d)(3) requires misconduct "'several notches of severity above that required for a Rule 60(b)(3) motion.'" *Hunter v. Sterling Mortg. & Inv. Co.*,

2022 WL 633845, at *4 (6th Cir. Mar. 4, 2022). Because Appellants cannot satisfy the less demanding Rule 60(b)(3) standard, *infra* Part II, they necessarily cannot satisfy the more exacting fraud-on-the-court standard.

### B. The District Court Acted Well Within Its Discretion In Rejecting Appellants' Claim That Class Counsel Committed A Fraud On The Court

Norfolk Southern understands class counsel will address Appellants' allegations of supposed misconduct against them. It suffices here to say that the district court acted well within its discretion in denying relief premised on an alleged fraud on the court. Appellants do not identify anything approaching the egregious conduct (like bribing the district court judge) required to support that relief. *See Horizon/CMS Health Care*, 475 F. App'x at 71. Moreover, Appellants fail to establish that any of the conduct they challenge "deceive[d] the court." *Carter*, 585 F.3d at 1011-1012.

Instead, the information underlying Appellants' fraud-on-the-court theory falls into two categories, and neither shows deception. Most of it—the environmental testing data, the competing expert views on health risks, and class counsel's characterization of Carson's statements—was publicly aired in advance of the fairness hearing and at the hearing itself. *See* Order Denying Motions, R. 1053, Page ID # 73056 (Appellants "rely on materially the same information that was publicly aired well before the fairness hearing, argued in briefs, and then re-aired at

the fairness hearing."); *see also* Norfolk Southern Opposition to Rule 60 Motions, R. 1002, Page ID # 69107-69109 (chart detailing similar statements in settlement fairness hearing and Appellants' opening motions). The remainder—the handful of materials that postdate or went unmentioned at the fairness proceedings—at most simply add to the billowing record on any long-term health risks that the district court and this Court already weighed.

*First*, Carson's town hall video does not show the district court was deceived. Appellants suggest the district court was misled to believe Carson was "independent and uncompensated." Br. 24. But no one, including Appellants, disputes that Carson *was* "uncompensated." Br. 21, 27. The court cannot have been deceived about something everyone agrees is true.

Appellants' position (Br. 24-25) that the district court was deceived into believing Carson was "completely independent" is belied by the record. The court understood—because class counsel disclosed—that "Class Counsel arranged for Dr. Carson to speak to the class members," Order Denying Motions, R. 1053, Page ID # 73043, and the court was informed by class counsel that Carson was "a friend, a colleague of one of the members of the [Plaintiffs' Executive Committee]," Fairness Hearing Tr., R. 553, Page ID # 14477; Appellant Br. 6, 19, 20-22.

Appellants further assert that class counsel purportedly relied on a PR firm to edit some raw footage of the Carson video and then reviewed it before showing it at

the town hall. Br. 18, 22-24. Appellants fault (Br. 21) the district court for not addressing a related email thread, but they only directed the district court to it for the first time in their reply. *See* Reply in Support of Motions for Relief from Judgment, R. 1014, Page ID # 70954; Wolf Email, R. 1014-1, Page ID # 70983. "Arguments raised only in reply, and not in the original pleadings, are not properly raised before the district court, and so are also not properly preserved for appeal." *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 275 (6th Cir. 2010). In any event, nothing about class counsel's use of a PR firm (an unexceptional point) says anything about whether Carson was either uncompensated or independent. And Appellants offer no citation, let alone evidence, to support their inflammatory accusation (Br. 27) that the firm "scripted" Carson's statement.

*Second*, Appellants fail to show (Br. 23-24) that the district court was deceived by class counsel's nondisclosure of any Petty expert report. Far from evincing deception, these arguments are duplicative of those fully ventilated during litigation over the settlement's approval. For starters, Petty *submitted a declaration* in support of objections to the settlement. Petty Decl., R. 540, Page ID # 12404-12410. Though Petty claimed he was "precluded from providing [certain] information under confidentiality" absent a court order, *id.* Page ID # 12404, he described his theories *at length*—in a 7-page, 34-paragraph declaration, accompanied by over 100 pages of exhibits. Petty Decl. Exs., R. 540-1, Page ID # 12411-12537. He freely opined—

in a public court filing—that "there is significant environmental contamination of the site"; cited testing purporting to show "elevated levels of dioxins, semi[-]volatile organic compounds"; questioned the EPA-approved sampling method; and claimed Carson's assurances were "premature and unsupported." Petty Decl., R. 540, Page ID # 12405-12406.

The district court was thus well aware of Petty's views, and rejected the notion that they evidenced any fraud. It found instead that Appellants "d[id] not articulate how a difference in opinion" among Petty and other experts "amounts to fraud"—particularly given numerous "independent scientific studies" that confirm "health risks are likely low" and there were "relatively low exposure levels." Order Denying Motions, R. 1053, Page ID # 73044, 73059. Appellants' objections based on Petty boil down to the same objections this Court rejected in the direct appeal: "At the end of the day, the parties settled precisely because they felt that $600 million adequately compensated injured individuals given the balance of conflicting evidence. The objectors can't explain why adding more conflicting evidence to a billowing record would move the needle during renewed settlement negotiations." *East Palestine Train Derailment*, 158 F.4th at 714.

*Third*, Appellants fault class counsel for not disclosing one class member's EIC for additional compensation in advance of the fairness hearing "when representing that class members would be 'safe in the long term.'" Br. 24. This

argument is wrong at least twice over. First, Appellants themselves acknowledge that this "safe in the long term" statement was made by Carson—not class counsel—on August 1, 2024, more than three weeks before the EIC was submitted. Br. 5, 8. The EIC thus has no bearing on the accuracy of that Carson statement when it was made. Second, objectors in the fairness proceedings filed a declaration in August 2024 from Thompson that asserted materially similar facts, claiming that two men in East Palestine had developed "unique cancers" after the derailment. Objectors' Reply to Req. for Enlargement of Time to Opt-Out, R. 508, Page ID # 9101. The district court was therefore well aware of claims that residents of East Palestine were allegedly becoming sick in advance of the fairness hearing. At best, the EIC is another piece of conflicting information about long-term health risks—not evidence of fraud on the court. *See East Palestine Train Derailment*, 158 F.4th at 714.

Appellants argue (Br. 47-58) that this Court's decision in the direct appeal does not preclude their Rule 60 motions—contending that the Court's merits discussion was merely a "preliminary" assessment (Br. 47-51), that all but one of them (Tamara Lynn Freeze) were not parties to that appeal (Br. 51-53), and that purportedly "newly discovered evidence" was not part of the record (Br. 53-54). But this Court's assessment of the merits was a necessary part of its decision to dismiss the direct appeals. *See East Palestine Train Derailment*, 158 F.4th at 712-714. Appellants cannot explain why this Court should turn a blind eye to its own prior

examination of the merits of the very judgment from which they (nominally under Rule 60) seek relief. The decision addressed materially the same environmental-testing and health-risk record on which Appellants' fraud theory depends. *See id.* at 714. That a different subset of class members presses those same complaints provides no basis to reach a different conclusion. As aptly summarized by the district court, the Rule 60 motions "rely on the same arguments and supporting evidence presented in previous filings in the district court and Sixth Circuit, which have already been considered and rejected." Order Denying Motions, R. 1053, Page ID # 73058.

## II. THE DISTRICT COURT ACTED WELL WITHIN ITS DISCRETION IN DENYING RULE 60(b)(3) RELIEF

Under Rule 60(b)(3), a court "may relieve a party … from a final judgment" for "fraud …, misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). "Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof." *Tyler*, 749 F.3d at 509. The movant must show by clear and convincing evidence that "'the adverse party committed a deliberate act that adversely impacted the fairness of the relevant legal proceeding [in] question.'" *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454-455 (6th Cir. 2008).

Appellants' regrettable allegations of misconduct against Norfolk Southern are frivolous. And it is telling that Appellants pivoted to attacking Norfolk Southern

on appeal after the district court found that their claims failed, in part, because they advanced no claims of fraud against Norfolk Southern. They now raise four theories of supposed misconduct, arguing that: (1) Norfolk Southern relied on information from government regulators—including those that had taken adverse action against Norfolk Southern—about the scope of environmental impacts and health risks; (2) the parties reached a settlement proposed by a nationally renowned mediator before expert reports were set to be disclosed under the case schedule; (3) the settlement contains a termination agreement; and (4) Norfolk Southern was "silent" when it "heard Class Counsel's representations about Dr. Carson, Petty and EPA data." Br. 30-37. Several of those theories appear for the first time on appeal and therefore are waived. Even absent waiver, all are meritless.

### A. Most Of Appellants' Rule 60(b)(3) Theories Against Norfolk Southern Were Not Adequately Raised Below And Are Waived

"Any argument that is not raised before the district court is waived on appeal to this Court." *General Med., P.C. v. Azar*, 963 F.3d 516, 525 n.3 (6th Cir. 2020). This rule "eases appellate review by having the district court first consider the issue." *Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 454 (6th Cir. 2009). A party thus cannot manufacture preservation by raising an argument for the first time in a reply brief below, since "reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue

for the court's consideration." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552-553 (6th Cir. 2008). Appellants have waived several of their Rule 60(b)(3) theories.

Appellants' theory that Norfolk Southern made "affirmative misrepresentations" about environmental testing data, Br. 30-31, 36, was never raised below. *See* Mot. for Relief from Judgment, R. 993, Page ID # 68906 ("This motion is based on newly discovered evidence revealing that class counsel made material misrepresentations … ."); Mot. for Relief from Judgment, R. 994, Page ID # 69016 (similar); Order Denying Motions, R. 1053, Page ID # 73064 ("Movants have not asserted any wrongdoing on the part of Norfolk Southern."). The statement about "validated testing" that Appellants now inexplicably deem an affirmative misrepresentation was made by Norfolk Southern—citing a U.S. EPA declaration in support—in *opposition* to the Rule 60 motions. *See* Br. 31 (citing Norfolk Southern Opposition to Rule 60 Motions, R. 1002, Page ID # 69098). And even in response to that argument, Appellants' reply raised no suggestion that Norfolk Southern made any misrepresentation. *See* Reply in Support of Motions for Relief from Judgment, R. 1014, Page ID # 70952-70980. A theory that appears nowhere below is not preserved for appeal. *See Azar*, 963 F.3d at 525 n.3.

The three exhibits on which Appellants rely for the "affirmative misrepresentation" theory (Br. 31-32) fare no better on waiver. These include (1) a letter from Ralph Dollhopf, the U.S. EPA's On-Scene Coordinator, about revisions

to an EPA-approved Soil Sampling plan—which Appellants misleadingly call "Norfolk's chemical-removal request," Br. 9; (2) a study from Kent State University regarding soil testing; and (3) an email thread in which FEMA and EPA personnel discuss potential impacts following the derailment. Br. 31-32. Each was cited below for the first time in Appellants' reply, and none to support an argument that Norfolk Southern committed misconduct. The Dollhopf letter was referenced only in passing, to attack class counsel's alleged reliance on EPA data. Reply in Support of Motions for Relief from Judgment, R. 1014, Page ID # 70961. The FEMA/EPA emails were cited exclusively to argue that the motions were timely, and never as proof of anyone's alleged misconduct, let alone Norfolk Southern's. *Id.* Page ID # 70977. And the academic study was cited in support of that same timeliness argument, and to argue that Carson's statements were inaccurate—never to argue that Norfolk Southern committed misconduct. *Id.* Page ID # 70964-70965, 70976-70977. Accordingly, Appellants' arguments based on these exhibits—especially those not even raised when Appellants belatedly introduced these exhibits on reply—are waived. *See Scottsdale*, 513 F.3d at 553.

Appellants also never argued below that the Supplemental Termination Agreement was evidence of misconduct. Appellants now (falsely) contend—for the first time—that Norfolk Southern "[c]oncealed" the Supplemental Termination Agreement. Br. 34. But their motions below mentioned that agreement only as

background to the settlement's structure—never as evidence of misconduct by Norfolk Southern (or anyone). Mot. for Relief from Judgment, R. 993-1, Page ID # 68915; Mot. for Relief from Judgment, R. 994-1, Page ID # 69026. And the agreement went unmentioned in their reply. Reply in Support of Motions for Relief from Judgment, R. 1014, Page ID # 70952-70980. Having never argued to the district court that the agreement was "concealed" by Norfolk Southern, Appellants cannot now maintain that the district court abused its discretion by not granting relief on that ground. *See Rice*, 578 F.3d at 454.

### B. Even Absent Waiver, The District Court Was Well Within Its Discretion To Deny Relief Under Rule 60(b)(3)

Each of Appellants' 60(b)(3) theories is frivolous, falling well short of establishing by clear and convincing evidence that Norfolk Southern "'committed a deliberate act that adversely impacted the fairness of the relevant legal proceeding.'" *Info-Hold*, 538 F.3d at 454-455. Appellants have identified no material information since the fairness hearing or any duty that Norfolk Southern violated—and there is none.[2]

*First*, Norfolk Southern's statements about environmental testing by independent government regulators cannot support relief as a matter of logic or fact.

[2] Appellants' contention (Br. 29-30) that Norfolk Southern is an "opposing party" under Rule 60(b)(3) is beside the point. The dispositive question is whether Norfolk Southern engaged in fraud, misrepresentation, or misconduct that affected the fairness of the settlement proceedings. It did not.

As discussed above, *supra* p.35, that language appeared in Norfolk Southern's Rule 60 opposition brief—not in any statement to class members or to the district court before the district court approved the settlement. *See* Norfolk Southern Opposition to Rule 60 Motions, R. 1002, Page ID # 69098. A statement made over a year after the settlement was approved cannot have "adversely impacted the fairness" of the proceedings leading to that approval. *Info-Hold*, 538 F.3d at 455.

In any event, the statement was well supported. Norfolk Southern's opposition invoked the sworn EPA declaration confirming that validated environmental testing showed only modest environmental impact from the derailment, which Norfolk Southern promptly remediated. Norfolk Southern Opposition to Rule 60 Motions, R. 1002, Page ID # 69110-69111 (citing Dollhopf Decl., *Ohio v. Norfolk S. Corp.*, No. 4:23-cv-00517 (N.D. Ohio), Dkt. 162-2). EPA's scientists reviewed soil sampling data at 121 locations around the derailment site, as well as 25 locations outside of that area, and concluded "there was no discernable soil contamination caused by the derailment at the 121 locations listed." Dollhopf Decl., *Ohio v. Norfolk S. Corp.*, No. 4:23-cv-00517 (N.D. Ohio), Dkt. 162-2, Page ID # 2490-2491. These "findings were consistent with similar findings made by Ohio and Pennsylvania after they tested crops in the area for derailment related contamination." *Id.* Page ID # 2491-2492. Based on EPA's review of "tens of thousands of environmental sample collections and analytical data reports," it

determined that Norfolk Southern's clean-up efforts were robust and that no ongoing contamination attributable to the derailment has been detected. *Id.* Page ID # 2483-2484, 2491-2495, 2498. A statement that was both accurate and well-supported cannot, *contra* Br. 36-37 (quoting *Hunter*, 2022 WL 633845, at *4), amount to an "affirmative misrepresentation"—much less one that impacted the fairness of the settlement's approval.

Appellants' three (waived) exhibits do nothing to suggest that "the pre-approval record Norfolk helped shape was materially incomplete." Br. 32. None contain any new, material evidence. None involve a statement, let alone a misleading one, by Norfolk Southern. And none, contrary to Appellants' premise, suggest "the environmental picture was materially worse than the record disclosed," *id.* To the contrary, the objectors at the fairness hearing argued extensively—though unsuccessfully—that environmental effects were worse than Norfolk Southern and federal and state regulators said. Petty's declaration—as noted, *publicly* filed *before* the fairness hearing in support of objections to the settlement—argued to the district court that "there is significant environmental contamination of the site," Petty Decl., R. 540, Page ID # 12405.

Take the Kent State Study, R. 1014-3, Page ID # 70989-71000. Appellants never argue—and offer no evidence—that Norfolk Southern concealed it (or took any action with respect to that study). The failure to tether this study to any

"'deliberate act'" by Norfolk Southern (or anyone else) itself renders it insufficient to support Rule 60(b)(3) relief. *Info-Hold*, 538 F.3d at 454-455. Moreover, Appellants at most imply that the study reached different conclusions than the U.S. EPA, the Ohio EPA, and numerous other, independent studies identified by the district court, Order Denying Motions, R. 1053, Page ID #73044; *supra* p.31. The study is thus, at most, one more piece of "conflicting evidence [in] a billowing record" that would not have "move[d] the needle during renewed settlement negotiations." *East Palestine Train Derailment*, 158 F.4th at 714.

The one-paragraph email from a FEMA employee, McPherson Email, R. 1014-5, Page ID # 71037, is similarly untethered to any alleged misconduct, concealment, or *any* "deliberate act" by Norfolk Southern. *Info-Hold*, 538 F.3d at 454-455. The uncited, unsupported statement that there was a "cancer cluster" and that the vent-and-burn plume was "really toxic," even if presented at the settlement hearing, would have been piled onto mountains of detailed evidence, including evidence that confirmed environmental impacts were limited and swiftly remediated by Norfolk Southern. Order Denying Motions, R. 1053, Page ID # 73045-73046; *supra* p.40. It does not materially alter the "balance of conflicting evidence" that supported the reasonableness of the settlement. *East Palestine Train Derailment*, 158 F.4th at 714.

As for the Dollhopf letter—what Appellants misleadingly call "Norfolk's chemical-removal request"—Appellants are incorrect that it "indicates five chemicals were removed from EPA testing at Norfolk's request." Br. 31. This letter indicates nothing more than a non-substantive clerical edit in a near-final draft soil sampling plan. Appellants' argument depends on reading the letter entirely stripped from context—context that Norfolk Southern could have been provided had Appellants not waited until their reply below to raise this exhibit.

Specifically, the letter states that Dollhopf—who works for EPA, not Norfolk Southern—approved a modification to a soil sampling plan to correct an inconsistency in which the "screening level list" contains several chemicals that "are not in Table 1." Dollhopf Letter, R. 1014-2, Page ID # 70986. Appellants never explain what "Table 1" or the "screening level list" are. But that context is apparent from the draft workplan to which the letter refers, available in the same set of FOIA-requested documents.[3] What Appellants fail to explain is that "Table 1" contains "the complete list of COPCs [constituents of potential concern] from the incident,"

---

[3] *See* Norfolk Southern Railway Co., *Phase I – Preliminary Residential/Commercial/Agricultural Soil Sampling Plan* (Mar. 6, 2023) ("*Norfolk Phase I Soil Sampling Plan*"), https://tinyurl.com/mryy433n. This soil sampling plan is available at Government Accountability Project ("whistleblower.org," on which Petty has a "whistleblower profile[]"), *Uncovered EPA Letter Reveals EPA Negligence In Allowing Flawed Norfolk Southern Testing in East Palestine* (July 15, 2025), https://tinyurl.com/4zasjk4f.

*i.e.*, the complete list of chemicals EPA directed Norfolk Southern to test soils for. *Norfolk Phase I Soil Sampling Plan* 7. The "screening level list" appears in Appendix E and is simply a reference page of screening thresholds for various chemicals. *Id.* at Appendix E. Removing chemicals from the "screening level list"—which is all the Dollhopf letter indicates happened—just makes a reference page consistent with the *unchanged* list of chemicals *EPA had already directed Norfolk Southern to test soils for*. What Appellants try to paint as a nefarious "chemical-removal request" is thus nothing more than an EPA-approved clerical edit with no effect on what chemicals would be the subject of testing.

*Second*, settling before expert reports were exchanged was not misconduct by Norfolk Southern. Appellants fault Norfolk Southern (Br. 32-34) for settling before Petty's and other experts' reports were disclosed. The timing of the settlement reflects the ordinary dynamics of a hard-fought, arm's-length negotiation. As explained above, the parties reached agreement only after more than five months of adversarial negotiations and multiple mediation sessions overseen by Judge Phillips—who ultimately presented a recommendation that the parties timely accepted. *Supra* p.12. That the parties resolved the case at that stage—rather than litigating against each other to a conclusion—is a feature of settlement.

The district court also heard and overruled this same objection at the fairness hearing, where objectors' counsel asked the court "to hold an evidentiary hearing

and have Mr. Petty come to the court and explain in more detail his declaration … and what his concerns are." Fairness Hearing Tr., R. 553, Page ID # 14464; *see* Order Denying Motions, R. 1053, Page ID # 73056-73057. And it bears emphasis that Petty *did* present his views about environmental harm and exposure through his own publicly filed declaration (notwithstanding objectors' claims of him being "handcuffed")—and then himself voluntarily decided *not* to appear at the final approval hearing. *Supra* p.21. The district court acted well within its discretion by denying Appellants "a second chance to convince the court to rule in [their] favor by presenting new explanations, legal theories, or proof." *Tyler*, 749 F.3d at 509.

*Third*, contrary to Appellants' false assertions (Br. 34), the Supplemental Termination Agreement was not concealed from class members. The settlement agreement—a public filing since April 2024—disclosed the existence of both that provision and Norfolk Southern's unilateral right to terminate if participation rates fell below certain thresholds. Settlement Agreement, R. 452-2, Page ID # 6021. So too did class counsel's motions for preliminary and final approval. *See* Motion for Preliminary Approval of Settlement, R. 452-1, Page ID # 5988; Plaintiffs' Settlement Br., R. 518-1, Page ID # 10934. That the specific numerical thresholds were confidential—a common practice in class settlements—reflects a court-sanctioned settlement mechanism, not fraud. As a leading treatise recognizes: "Opt-out agreements, in which a defendant conditions its agreement on a limit on the

number or value of opt outs, may warrant confidential treatment. Knowledge of the specific number of opt outs that will vitiate a settlement might encourage third parties to solicit class members to opt out." *Manual for Complex Litigation* § 21.631 (4th ed. 2025). In any event, Norfolk Southern never exercised the termination right, so no class member was ever affected by it.

*Fourth*, Norfolk Southern's alleged "silence" at the fairness hearing breached no duty. Appellants fault Norfolk (Br. 36-37) for "remain[ing] silent" during class counsel's representations at the fairness hearing about Carson, Petty, and EPA data. But other than a conclusory attempt to distinguish this case from *Hunter*, Appellants identify no basis on which Norfolk Southern was required to interrupt or dispute class counsel's representations. Petty was *class counsel's* expert—not Norfolk Southern's. Nor do Appellants dispute (Br. 35) that Norfolk Southern had no involvement with Carson. Appellants fault Norfolk Southern (Br. 37) for not taking some supposed action to "supplement or correct" the record in light of class counsel's email chain with a PR firm regarding Carson, R. 1014-1, Page ID # 70983. But, as discussed above, Appellants do not show this email was misleading or inconsistent with representations made by class counsel, *supra* p.30, nor do they identify any duty imposed on Norfolk Southern to "supplement or correct" the record with post-judgment claims assembled by Appellants' counsel. Indeed, later in their

brief they concede that none of this information amounted to "new evidence of Norfolk misconduct." Br. 41.

Appellants' inability to identify materially new information or any alleged duty that Norfolk Southern breached is dispositive and easily sets this case apart from the examples they cite (Br. 34-35) where courts have granted Rule 60(b)(3) relief. *Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978) granted relief where the defendant withheld a document subject to a discovery request that "might have been the catalyst for an entirely different approach to the case." *Id.* at 1339-1341, 1345. *MMAR Grp., Inc. v. Dow Jones & Co.*, 187 F.R.D. 282 (S.D. Tex. 1999) granted relief where the plaintiff withheld audio tapes subject to discovery requests that "would have been extremely helpful to Defendants, and highly relevant, in defending against [plaintiff's] allegation." *Id.* at 286-287. And *Hernandez v. Results Staffing, Inc.*, 907 F.3d 354 (5th Cir. 2018) granted relief where the plaintiff refused to produce medical records that should have been disclosed and made material misrepresentations about the information in those records that prevented the defendant "from fully and fairly litigating its case." *Id.* at 364-365. Those cases are about discovery misconduct—and of the case-altering type. The district court acted well within its discretion in determining that none of those cases apply here, where Appellants have not shown (and cannot show) that Norfolk Southern misrepresented or concealed any information.

## III. THE DISTRICT COURT ACTED WELL WITHIN ITS DISCRETION TO DENY RELIEF UNDER RULE 60(b)(6)

Appellants are barred as a matter of law from pursuing their requested relief under Rule 60(b)(6). Even if they were not, they fail to demonstrate extraordinary circumstances that would justify relief from the personal injury releases they voluntarily executed in exchange for additional compensation.

### A. Appellants Are Barred From Pursuing Relief Under Rule 60(b)(6)

Appellants' Rule 60(b)(6) argument fails as a matter of law. As Appellants concede (Br. 38), they may not seek Rule 60(b)(6) relief unless "none of the grounds set forth in clauses (b)(1) through (b)(5) are applicable." *King v. United States*, 143 F.4th 705, 711 (6th Cir. 2025). "Were it otherwise, … decisions involving the first five clauses … would lose much of their force, as a party who failed to meet the prerequisites for relief under one of these provisions could simply appeal to the 'catchall' of subsection (b)(6)." *Id.* There is "no such rule of recourse." *Id.*[4]

Appellants pursue relief under Rule 60(b)(3), necessarily contending that it is applicable. That ends the inquiry into the viability of their Rule 60(b)(6) arguments. Subsection (b)(6) is not available to Appellants as a backup to their deficient Rule 60(b)(3) arguments. *King*, 143 F.4th at 711. Appellants nevertheless attempt (Br.

[4] Appellants concede that their Rule 60(b)(6) arguments do not allege any misconduct by Norfolk Southern. *See* Br. 42 (argument "does not depend" on Norfolk Southern).

38-39) to disguise functionally identical arguments as supposedly "distinct, extraordinary circumstances ground[s]."

*First*, they point to what they call "Class Counsel's structural failure of Rule 23(g) adequacy." Br. 39. This, Appellants claim, is distinct from Rule 60(b)(3), because class counsel is not an "opposing party" whose misconduct is the subject of Rule 60(b)(3). Br. 40. That position fails twice over. For one thing, it is duplicative of Appellants' Rule 60(d)(3) argument and fails for the same reasons. *Supra* Part I. For another, Appellants' admission (Br. 40) that this argument depends on "four documentary anchors" that they claim were unavailable at the time of the settlement proceedings is effectively a concession that they seek to evade the strictures of Rule 60(b)'s provision for relief based on "newly discovered evidence," Fed. R. Civ. P. 60(b)(2), which is mutually exclusive with Rule 60(b)(6), *supra* pp.46-47. Indeed, Appellants *concede* that their arguments under Rule 60(b)(6) are based on supposedly newly discovered "documentary evidence and factual predicates" that are "precisely the kind of after-arising grounds Rule 60(b)(2) … exist[s] to remedy." Br. 54-55.

*Second*, Appellants argue in one cursory paragraph that their Rule 60(b)(6) theory is premised on "judicial-supervisory abdication." Br. 41-42. But that is nothing more than a barely veiled claim of error under Rule 23—the basis for the district court's approval of the settlement, properly challenged, if at all, on a direct

appeal from that order. Appellants concede it is a "settled principle that '[t]he ground for setting aside a judgment under Rule 60(b) must be something that could not have been used to obtain a reversal by means of a direct appeal.'" Br. 54; Order Denying Motions, R. 1053, Page ID # 73065. Appellants cite no authority supporting their attempted use of Rule 60(b)(6) to end-run a direct appeal from a district court's approval of a settlement based on a supposed "judicial-supervisory abdication"—in other words, "the district court erred"—exception. Nor could they, as such an exception would effectively nullify the rule that Rule 60(b) does not provide a second chance at a direct appeal.

Appellants argue that this rule does not apply to them because they (except for Freeze) were not the appellants in the direct appeal and so are free to "substitute a later Rule 60 motion for that unused route" of a direct appeal. Br. 56. That uncited argument is foreclosed by precedent; Rule 60(b) does not exist to save litigants that "fail[] to raise issues … that they now wish the court to consider after-the-fact." *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 386 (6th Cir. 2001). And Appellants find no solace in arguing that their Rule 60(b)(6) argument "rest[s] on documentary evidence and factual predicates that came into Movants' possession or into existence … after" the approval order and notices of appeal. Br. 54-55. That, again, concedes that the appropriate avenue to test their claims is a (now long-waived) Rule 60(b)(2)

argument based on "newly discovered evidence," subject to that rule's precedent and prerequisites—not a freeform Rule 60(b)(6) end run.

### B. Appellants Identify No Extraordinary Circumstances

Even assuming Appellants were not barred from seeking relief under Rule 60(b)(6), they identify no "'extraordinary circumstances'" justifying relief from judgment. *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 212-213 (2025); Fed. R. Civ. P. 60(b)(6). Instead, their arguments rehash the same arguments as those underlying their deficient Rule 60(d)(3) and Rule 60(b)(3) arguments: the PR firm's involvement in the Carson video, the supposed nondisclosure of Petty's opinions, and additional supposedly conflicting evidence of health and environmental impacts. As set forth above, none of these suggest misconduct, nor did their absence impact the fairness of the settlement proceedings. *Supra* Parts I, II.

## IV. THE DISTRICT COURT CORRECTLY HELD THAT APPELLANTS' ATTEMPTS TO INVALIDATE RELEASES SUFFERED FROM INDEPENDENT DEFICIENCIES

Appellants' challenges to the personal injury releases fail independently of their Rule 60 shortcomings. The personal injury releases are individual contracts that Appellants elected to execute. Class members "had the individual autonomy to decide whether to participate in the [']Voluntary Exposure Settlement' or 'Personal Injury Payment' part of the settlement—they were not required to release their personal injury claims, and it was up to each individual Movant to decide whether

to affirmatively take part." Order Denying Motions, R. 1053, Page ID # 73066. Appellants' challenges to these contracts thus fail for at least three reasons.

*First*, because Appellants seek relief only from the individually executed releases—not from the settlement itself—their request is properly understood as an effort to rescind private contracts, which they repeatedly acknowledge they cannot do without satisfying the test for fraudulent inducement under Ohio law. *See, e.g.*, Br. 2 (stating that the issue before the Court is "[w]hether Appellants' Personal Injury Payment releases are subject to rescission for fraudulent inducement").

*Second*, the district court correctly interpreted the releases' provisions in which each Appellant expressly acknowledged (1) that unknown future injuries could arise, (2) that each releasor had the opportunity to consult counsel, and (3) that no releasor relied on representations by Norfolk Southern when agreeing to release their claims. Appellants cannot show they relied on supposed misrepresentations by Norfolk Southern when signing their releases when the releases say the opposite.

*Third*, Appellants' attacks on the releases suffer from further independent deficiencies. They incorrectly suggest the district court erred by observing that Rule 60 is an inappropriate procedural method to rescind a voluntary release—even though the district court's observation is rooted in this Court's precedent. And if Appellants' dispute boils down to a complaint over the amount of their personal

injury payments, the proper procedural mechanism for raising such a dispute is established by the settlement agreement itself (which Appellants do not challenge).

### A. Appellants Concede Their Arguments Boil Down To Requests For Rescission Based On Alleged Fraudulent Inducement

Appellants' arguments, at bottom, underscore a fundamental failure with their Rule 60 motions recognized by the district court: They are not in substance seeking "relief from a judgment or order," Fed. R. Civ. P. 60 (capitalization omitted), but instead rescission of their individually signed contracts with Norfolk Southern. Order Denying Motions, R. 1053, Page ID # 73041. Appellants cannot use Rule 60 to obtain relief barred under basic principles of contract law.

Appellants concede they do not challenge the district court's final approval of the settlement—only the individual contracts they signed. They "do not ask this Court to reweigh the settlement," and seek relief "as to Appellants only, from the Personal Injury Payment releases." Br. 12-13. They describe their own releases as "the specific contracts at issue" and are explicit that their challenge "does not disturb the general Rule 23(e) approval or the class-wide Compensation Program," affecting "only the personal-injury component as applied to Appellants." Br. 45. And they request only "rescission of the 196 Personal Injury Releases"—not disturbance of the district court's judgment that the settlement was fair, adequate, and reasonable. Br. 63.

Appellants' concession that they challenge only the private contracts they executed with Norfolk Southern means their Rule 60 motions disguise claims sounding in contract governed by the releases' own terms. Under Ohio law, a party seeking to avoid a release on grounds of fraudulent inducement—the only basis other than Rule 60 that Appellants identify to challenge the releases—must prove: (1) a misrepresentation or, in the face of a duty to disclose, concealment of a material fact; (2) knowledge of the representation's falsity or utter disregard for its truth; (3) "intent to induce reliance on the representation"; (4) that it was justifiable to rely on the representation under the circumstances; and (5) injury proximately caused by the reliance. *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 874 (6th Cir. 2007).[5]

Appellants fail to satisfy any of these required elements. Appellants have not identified any misrepresentation or concealment of any fact by Norfolk Southern. And any alleged fraud by class counsel (Appellants identify none) is irrelevant because fraudulent inducement, to be actionable, must "involve[] the actual parties to the agreement." *Huntington Nat'l Bank v. Xiaowei He*, 2026 WL 1182406, at *6 (Ohio Ct. App. Apr. 30, 2026). Appellants cite no case law to the contrary.

---

[5] The settlement agreement is "governed by and interpreted according to the laws of the State of Ohio without regard to principles of conflict of laws." Settlement Agreement, R. 452-2, Page ID # 6034 (Section XVIII.K). "Any dispute regarding the interpretation or validity of, or otherwise arising out of, this Agreement, or relating to the Action or the Released Claims, … shall be decided pursuant to the laws of the State of Ohio." *Id.* (Section XVIII.L).

Appellants also fail to show either that Norfolk Southern's alleged actions evinced an intent to induce reliance, that Appellants in fact relied on any of those supposed misstatements or nondisclosures, or that any such reliance would have been justified. Beyond the fact that all relevant issues were fully and publicly litigated, *supra* pp.22, 28-29, the releases themselves disprove any claimed reliance.

### B. The District Court Correctly Determined That The Releases Defeat Any Claim Of Reliance

As the district court correctly observed, the personal injury releases expressly "contemplate[] and reject[]" "post-hoc assertions" of misrepresented or concealed health risks. Order Denying Motions, R. 1053, Page ID # 73067. Each Appellant (Releasor) that signed the personal injury release agreed they were "afforded the opportunity to and if Releasor so decided did confer with [counsel] … concerning the terms and conditions of this Release." Settlement Agreement, R. 452-2, Page ID # 6073. Appellants also:

> acknowledge[d] and agree[d] that unknown consequences or progression of presently known injuries, diseases or illnesses may arise, develop, or be discovered in the future … and that future medical treatment … may be necessary. Releasor understands that he/she/they may have suffered, or may in the future develop, injuries, diseases, illnesses, damages, and/or harms that are presently unknown to Releasor as a result or consequence of the Incident ….

*Id.* Page ID # 6069; Druckenbrod Personal Injury Release, R. 993-3, Page ID # 68946. Appellants also agreed they executed their releases "without being pressured or influenced by, and without relying upon, any statement or

representation made by any person acting on behalf of [Norfolk Southern]." Settlement Agreement, R. 452-2, Page ID # 6064; Druckenbrod Personal Injury Release, R. 993-3, Page ID # 68950. Appellants "had every opportunity to educate themselves before voluntarily and individually signing a release," Order Denying Motions, R. 1053, Page ID # 73067, and expressly disclaimed any reliance on Norfolk Southern in deciding to do so.

Appellants' cases provide them no help. *Kobatake* and *Ingram* noted that disclaimers of *liability*—not reliance—may be voidable where plaintiffs are fraudulently induced to execute the release. *Kobatake v. E.I. DuPont De Nemours & Co.*, 162 F.3d 619, 625 (11th Cir. 1998) (per curiam); *Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1314-1315 (5th Cir. 1983). Neither case considered how disclaimers of *reliance* inform whether the counterparty "misrepresented material facts or concealed facts which would materially qualify those already stated" in the course of the negotiation of the settlement. *Ingram*, 698 F.2d at 1314. This distinction between disclaimers of liability and disclaimers of reliance matters; "[t]he former is a direct attempt to avoid legal consequences; the latter is an attempt to establish a fact." *Agristor Leasing v. A.O. Smith Harvestore Prods.*, 803 F.2d 1401, 1410 (6th Cir. 1986) (Boggs, J., concurring).

Appellants attack a strawman by arguing that disclaimers of reliance would categorically "immunize a party from a fraudulent inducement claim." Br. 62.

Tellingly, they invoke the parol evidence rule as a basis for proving fraudulent inducement, *id.*, but introduce no extrinsic evidence that even remotely suggests they were fraudulently induced to admit, as a matter of fact, that they had not relied on any representations by Norfolk Southern. Instead, their position appears to be that, upon alleging fraudulent inducement, their contractual disclaimer of reliance can be disregarded. That is wrong. Such a rule would "allow a person to enter into a commercial bargain, sign a contract containing an explicit term describing what that party did and did not rely upon in entering into the agreement, and then be relieved of any responsibility for that term when it later suited him." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 7 F. Supp. 2d 954, 963 (N.D. Ohio 1998).

**C. Appellants' Other Arguments Fail**

Appellants' remaining efforts to salvage their challenge to the releases fare no better. *First*, Appellants incorrectly take issue (Br. 62-63) with the district court's comment that "Rule 60 is not a tool to rescind a voluntary release signed in exchange for compensation." Order Denying Motions, R. 1053, Page ID # 73064. That observation is an unremarkable restatement of the text of Rule 60 and this Court's precedent. Rule 60(b)(3) and Rule 60(d)(3) permit relief from final judgments where there is fraud on a party to the settlement or the court. "Rule 60 does not provide relief from the consequence of a deliberate choice, even if subsequent events reveal the choice to have been unwise." *Park W. Galleries, Inc. v. Hochman*, 692 F.3d 539,

545 (6th Cir. 2012); *see also GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 373 (6th Cir. 2007) (similar).[6]

*Second*, as the district court recognized, "to the extent [Appellants] argue that their Personal Injury Payments were 'inadequate,'" the settlement itself—which Appellants do not challenge—provides a remedy: Appellants would need to challenge their award amounts per the court-approved plan of distribution. Order Denying Motions, R. 1053, Page ID # 73067-73068; Notice of Filing of Supplement to the Plan of Distribution, R. 525, Page ID # 11564. Appellants do not challenge this determination and have therefore waived any such argument. *See Scott*, 936 F.3d at 522.

## V. THE DISTRICT COURT ACTED WELL WITHIN ITS DISCRETION IN DENYING APPELLANTS' MOTIONS WITHOUT ANY EVIDENTIARY HEARING

Contrary to Appellants' position (Br. 64-66), the district court acted well within its discretion to not conduct an evidentiary hearing. The test is whether, in the district court's discretion, an evidentiary hearing would serve a useful purpose, in light of the court's familiarity with the factual record and the posture of the case. *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 420 F. App'x 522, 527 (6th Cir. 2011)

[6] Appellants' quibble (Br. 63) that *Park West Galleries* is not itself a Rule 60 decision is immaterial. In that case, this Court considered whether its Rule 60 jurisprudence, as articulated in *Jones v. Illinois Central Railroad Company*, 617 F.3d 843 (6th Cir. 2010), applies to motions for a new trial made pursuant to Rule 59. *Park W. Galleries*, 692 F.3d at 543. *Jones* stands for the same proposition for which the district court cited *Park West Galleries*, *see id.* (citing *Jones*, 617 F.3d at 851).

(no abuse of discretion where "both parties had extensively briefed the relevant matters during two years of court proceedings and supplemented their arguments with 'numerous declarations and other documentary evidence'"). "Evidentiary hearings are not necessary where the parties' briefs clearly set forth the relevant facts and arguments of a case such that a hearing would not add anything to the briefs, and where the court has sufficient evidence before it to make detailed factual findings." *Gonzales v. Galvin*, 151 F.3d 526, 535 (6th Cir. 1998). "To *require* an evidentiary hearing on a [R]ule 60(b) motion notwithstanding the fact that the record before the district court demonstrated no facially sufficient justification for the [motion] would invite indiscriminate disregard of the finality of judgments in civil cases through recourse to dilatory practice." *Mitchell v. Hobbs*, 951 F.2d 417, 421 (1st Cir. 1991) (denying Rule 60(b)(6) motion).

The district court already had deep familiarity with the factual record. Order Denying Motions, R. 1053, Page ID # 73048; *supra* pp.19-23. That the district court did not hold a hearing to consider information that was either irrelevant or materially similar to the information it had already repeatedly considered is no abuse of discretion. None of that information relates to any alleged misconduct by Norfolk Southern nor even hints at any basis to question the court's approval of the settlement. Especially given the court's extensive knowledge of the factual record

and the meager and meritless purported evidence Appellants invoke, the court was well within its discretion not to hold an evidentiary hearing.

## CONCLUSION

The judgment should be affirmed.

Respectfully submitted,

*<u>/s/ Alan Schoenfeld</u>*

ALAN SCHOENFELD
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
alan.schoenfeld@wilmerhale.com

ALBINAS PRIZGINTAS
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
albinas.prizgintas@wilmerhale.com

August 26, 2026

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

1. Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f) and Circuit Rule 32(b)(1), the brief contains 12,925 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

*<u>/s/ Alan Schoenfeld</u>*
ALAN SCHOENFELD

August 26, 2026

# ADDENDUM

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

| Record Entry | Date Filed | Page ID Range | Description |
|---|---|---|---|
| 28 | 04/05/2023 | 549-571 | Consolidation Order |
| 138 | 08/14/2023 | 1771-1876 | First Amended Master Consolidated Complaint |
| 428 | 03/13/2024 | 5541-5578 | Order on Motion to Dismiss |
| 445 | 04/09/2024 | 5822-5825 | Notice of Agreement in Principle |
| 452-1 | 04/26/2024 | 5958-6000 | Plaintiffs' Memorandum in Support of Motion for Preliminary Approval of Settlement |
| 452-2 | 04/26/2024 | 6002-6074 | Settlement Agreement |
| 485 | 07/01/2024 | 7304-7318 | Objection to Class Settlement Agreement and Motion to Enlarge Time to Opt Out of Property Portion of Class Settlement Agreement |
| 485-1 | 07/01/2024 | 7326, 7602-7603 | Objection to Class Settlement Agreement and Motion to Enlarge Time to Opt Out of Property Portion of Class Settlement Agreement—Exhibit 27 (Dr. Thompson Op-ed) |
| 486 | 07/01/2024 | 7971-7990 | Objection to Class Settlement Agreement and Motion to Enlarge Time to Opt Out of Property Portion of Class Settlement Agreement |
| 508 | 08/18/2024 | 9076-9102 | Objectors' Reply to Class Plaintiffs' Response in Opposition to Objectors' Request for Enlargement of Time to Opt-Out |

| Record Entry | Date Filed | Page ID Range | Description |
|---|---|---|---|
| 518-1 | 09/06/2024 | 10899-10941 | Plaintiffs' Brief for Final Settlement Approval |
| 518-5 | 09/06/2024 | 11085-11089 | Declaration of Judge Layn R. Phillips in Support of Motion for Final Approval of Class Action Settlement (dated Aug. 28, 2024) |
| 525 | 09/17/2024 | 11562-11567 | Notice of Filing of Supplement to the Plan of Distribution |
| 529 | 09/18/2024 | 11590-11606 | Response to Motion for Final Approval of Settlement |
| 537 | 09/23/2024 | 12314-12319 | Affidavit of Dr. George Thompson |
| 540 | 09/23/2024 | 12404-12410 | Declaration of Stephen Petty |
| 540-1 | 09/23/2024 | 12311-12537 | Declaration of Stephen Petty—Exhibits |
| 553 | 09/25/2024 | 14423-14541 | Fairness Hearing Transcript |
| 557 | 09/27/2024 | 14580-14586 | Judgment on Final Approval of Settlement |
| 558 | 09/27/2024 | 14587 | Notice of Appeal |
| 570 | 10/08/2024 | 14768 | Notice of Appeal |
| 993 | 09/25/2025 | 68906-68907 | Motion for Relief from Judgment |
| 993-1 | 09/25/2025 | 68908-68937 | Memorandum in Support of Motion for Relief from Judgment |
| 993-3 | 09/25/2025 | 68944-68959 | Motion for Relief from Judgment—Exhibit (Personal Injury Release and EIC of Austin Druckenbrod) |
| 994 | 09/29/2025 | 69016-69017 | Motion for Relief from Judgment |

| Record Entry | Date Filed | Page ID Range | Description |
|---|---|---|---|
| 994-1 | 09/29/2025 | 69018-69048 | Memorandum in Support of Motion for Relief from Judgment |
| 1002 | 10/10/2025 | 69093-69119 | Norfolk Southern Opposition to Motions for Relief from Judgment |
| 1014 | 10/24/2025 | 70952-70981 | Reply in Support of Motions for Relief from Judgment |
| 1014-1 | 10/24/2025 | 70983 | Reply in Support of Motions for Relief from Judgment—Exhibit (Wolf Email) |
| 1014-2 | 10/24/2025 | 70985-70987 | Reply in Support of Motions for Relief from Judgment—Exhibit (Dollhopf Letter) |
| 1014-3 | 10/24/2025 | 70989-71000 | Reply in Support of Motions for Relief from Judgment—Exhibit (Kent State Study) |
| 1014-5 | 10/24/2025 | 71037-71041 | Reply in Support of Motions for Relief from Judgment—Exhibit (McPherson Email) |
| 1053 | 05/01/2026 | 73040-73068 | Order Denying Motions for Relief from Judgment |

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of August, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Alan Schoenfeld*
ALAN SCHOENFELD

August 26, 2026