**No. 26-3499**

---

# UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

---

IN RE EAST PALESTINE TRAIN DERAILMENT,

---

BARBARA ADAMS; ERIC ADKINS; IAN BAKER; KAREN BAKER; LARRY BAKER; SAMUEL BARNHOUSE; ELIAS RALEY; CHAD BROWN; CHRIS REED; JESSICA BROWN; DOROTHY REYNOLDS; RICHARD J. BRUNO; JASON REYNOLDS; BRYON BUHECKER; JACK REYNOLDS; CINDY BUSSARD; NICHOLAS REYNOLDS; WALTER CALL; STACEY RINEHART; JOHN CARR; ARABELLA ROBERTS, (MINOR); ERIN CAPOTS; ROBERT RYND; JEREMY CARTER; SHIRLEY RYND; LUIS CHENG; EDWARD SICELOFF; ALAN COPE DEAN; PAUL SIMMONS; CHAD DAVIDSON; RHONDA SIMMONS; SAMANTHA DAVIDSON; CHESTER SMITH; NATHAN DENES; MONICA SOSA; ZAYNE DENES; DEBORAH STANLEY; AIRYONNA DENES; MARK STILES; DARYL DEVINE; RUBY STILES; JULIE DEWALT; STACEY STOCKUNAS; RILEY DICKEY, MINOR; GENARO TORRES; SARA DICKEY; RACHEL TORRES; TYLER DICKEY; REBECCA TORRES; AUSTIN DRUCKENBROD; CYNTHIA TRIMBLE; KATHY JO DYKE; BRAYDON TROSKY; RICHARD DYKE; BROOKLYN TROSKY; LAUREN FEGERT; JASON TROSKY; LANCE FELGER; FRANK UNGARO; NEKO FIGLEY; MICHAEL FLAHERTY, DECEASED; LINDA UNGARO; BRUCE FOGEL; PATRICK UNGARO; MEGAN FOGEL; DARLA VANNI; BRIAN FORWARD; ERIC VANNI; JOSHUA FORWARD; CHRISTOPHER VEITZ; AMBER FOSNAUGHT; LILLIAN VEITZ; AMY JO FOSTER; LINDY VEITZ; ANTHONY GENE FOSTER; LOGAN VEITZ; BRANDI FOSTER; TANNER VEITZ; CECILIA ROSE FOSTER; MEGAN VOGEL; SOPHIA MARIE FOSTER; BRANDI WAGONER; TRAVIS FOSTER; JULIE WAITE; TAMARA LYNN FREEZE; RUSSEL WAITE; MARY FROST; SHELBY WALLACE; JACOB GAUL; DEB WALTON; MANDY GAUL; SCOTT WALTON; SANDRA GILBERT; JAMES THOMAS WARD; SHAWNA GLASS; MAVERICK JAMES WARD; ANA ISABEL GRAUSO; SOPHIA MERYL WARD; SAMUEL GRAUSO; VIDA RESURRECTION WARD; JESSE GREATHOUSE; RICHARD WEAVER; MARCIE GREEN; OWEN WEIGEL; KENDRA GROSCOST; TAYLOR REYNOLDS WEIGEL; CLARA GUESMAN; TINA WILD; ELIJAH HAINES; CHERYL WILLIAMS; VIOLET HAINES; WILLIAMS LOGGINS; ZOEY HAINES; EMMA WISE; ANDREW HARMON; RONI WISE;BOBBY HICKS; RICHARD MULL; CIERA HICKS; PATRICIA MICCO; GAGE HICKS; ETHAN MAHON; MICHAEL HICKS; IRIS MATTERN; TARA HICKS; VENITA MATHENEY; ALLEN HILL; ANGELA MACIAS; MICHAEL HOBRAT; CHELSEA MACOLINO; NOELLE HOBRAT; DENNIS MANLEY;

TALESHA HOOD; MICHAEL MARTIN; GREG HOULETTE; CURTIS MAY; WILLIAM SMILEY HUGAR; EDWARD MCNEE; KATHERINE HUTCHISON; FAITH MILLER; SUE JAMERY; KURT MILLER; ANALYNN JASKOLA; MELISSA MILLER; FAITH JASKOLA; ARTHUR MUNYON; NICHOLAS JASKOLA; BRENDA MUNYON; JUSTIN JAVENS; KRISTY MUNYON; KENNETH W. JOHNSON; LINDA MURPHY; AMANDA MAZZETTI KEMMER; MORGAN MURPHY; BRAD KEMMER; RUSSELL MURPHY; CAINE KEMMER; MICHAEL MUSULIN; CHLOE KEMMER; BREANA NALESNIK; ALISSA KETTERER; ESTATE OF JOSEPH DONALD OLSON; LORI KETTERER; SHERRI LENNY L. KIEHL; NATHAN PIRTZ; LANDON KIRBY; LORI POSEY; LANNA KIRBY; DAVID QUIMBY; BERNIE KOSAR, SR.; LAUREN QUIMBY; BETH KOSAR; TERESA QUIMBY; NICHOLAUS KUZEMCHAK; THOMAS LEWIS; SOPHIA KUZEMCHAK; ROBERT LIPOSKY; KAITLYN KUZEMCHAK; STEVEN LOCKARD; LINDSAY KUZEMCHAK; STEVEN LOCKARD, JR.; MIA KUZEMCHAK; VONNETTIA LOCKARD; DANA KYKER; TIFFANY LOGGINS; TERRI LATTANZIO; TOM YOUNG; CHRISTOPHER RALEY; LYNN YOUNG; COLE RALEY,

*Movants-Appellants*,

PLAINTIFFS' CLASS COUNSEL, ON BEHALF OF THE SETTLEMENT CLASS

*Plaintiffs – Appellees*

*v.*

NORFOLK SOUTHERN RAILROAD COMPANY; NORFOLK SOUTHERN CORPORATION,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Northern District of Ohio, No. 4:23-cv-00242
Judge Benita Y. Pearson

---

**CORRECTED BRIEF OF APPELLEE PLAINTIFFS' CLASS COUNSEL, ON BEHALF OF THE SETTLEMENT CLASS**

M. Elizabeth Graham
Adam J. Gomez
GRANT & EISENHOFER P.A.
123 S. Justison Street, 6th Floor
Wilmington, DE 19801
303-622-7000
egraham@gelaw.com
agomez@gelaw.com

Seth A. Katz
BURG SIMPSON ELDREDGE HERSH
& JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80112
303-792-5595
skatz@burgsimpson.com

September 3, 2026

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Sixth Circuit Rule 26.1, Interested Parties-Appellees state that no Interested Party-Appellee is a subsidiary or affiliate of a publicly owned corporation, and no nonparty corporation has a financial interest in the outcome.

# TABLE OF CONTENTS

**Page**


A. The Class Action ....................................................................5

B. Settlement Negotiations ..........................................................6

C. Terms of the Settlement ..........................................................7

D. Notice to the Class Members ...................................................7

E. Approval of the Settlement ....................................................12

F. First Unsuccessful Appeal.......................................................17

G. The Rule 60 Motions...............................................................19

H. The District Court's Denial of the Rule 60 Motions.......................21

I. Instant Appeal..........................................................................22

A. Standard of Review ................................................................24

B. The District Court Did Not Abuse Its Discretion in Denying Relief Under Rule 60(b) Because Appellants' Use of Rule 60 is Improper..25

C. The District Court Did Not Abuse Its Discretion in Denying Relief Under Rule 60(b)(3) Because Class Counsel Did Not Engage in Fraud, Misrepresentation, or Misconduct. ...................................................28

i. Class Counsel did not fraudulently conceal expert conclusions from Class members. .......................30

ii. Class Counsel did not misrepresent the health impacts of the derailment to Class members or the Court. ..................................................31

iii. Class Counsel did not conceal information regarding a Class member's injuries. ...................35

D. The District Court Did Not Abuse Its Discretion in Denying Relief Under Rule 60(b)(6). ...........................................................36

E. The District Court Did Not Abuse Its Discretion in Denying Relief Under Rule 60(d)(3). ....................................................................37

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aikens v. Ingram*,
652 F.3d 496 (4th Cir. 2011) ....................36

*Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*,
249 F.3d 519 (6th Cir. 2001) ....................25

*Demjanjuk v. Petrovsky*,
10 F.3d 338 (6th Cir. 1993) ....................38

*In re Durkalec*,
21 B.R. 618 (E.D. Pa. 1982) ....................36

*In re East Palestine Train Derailment*,
158 F.4th 704 (6th Cir. 2025) ....................2, 18, 19, 25, 27, 28

*In re: East Palestine Train Derailment*,
No. 24-3852 (6th Cir.) ....................18

*In re: East Palestine Train Derailment*,
No. 24-3880 (6th Cir.) ....................18

*In re East Palestine Train Derailment*,
No. 4:23-cv-00242 (N.D. Ohio) (Pearson, J.) ....................5

*Ervin v. Wilkinson*,
701 F.2d 59 (7th Cir. 1983) ....................28

*In re Ferro Corp. Derivative Litig.*,
511 F.3d 611 (6th Cir. 2008) ....................24

*Fleming v. New York University*,
865 F.2d 478 (2d Cir.1989) ....................26

*Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*,
475 F. App’x 65 (6th Cir. 2012) ....................24, 25

*Giasson Aerospace Sci., Inc. v. RCO Eng’g, Inc.*,
872 F.3d 336 (6th Cir. 2017) ....................38

*H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*,
536 F.2d 1115 (6th Cir. 1976) ............................................................37, 38, 39

*Info-Hold, Inc. v. Sound Merch., Inc.*,
538 F.3d 448 (6th Cir. 2008) .....................................................................28, 30

*Jennings v. Hicklin*,
587 F.2d 946 (8th Cir.1978) ..............................................................................28

*Kerwit Med. Prods., Inc. v. N. & H. Instruments, Inc.*,
616 F.2d 833 (5th Cir. 1980) .............................................................................30

*Kustom Signals, Inc. v. Applied Concepts, Inc.*,
247 F.Supp.2d 1233 (D.Kan.2003), *affirmed* 111 Fed.App'x. 611,
2004 WL 2370634 .............................................................................................26

*Maloof v. Level Propane, Inc.*,
429 Fed. Appx. 462 (6th Cir. 2011)...................................................................24

*Park W. Galleries, Inc. v. Hochman*,
692 F.3d 539 (6th Cir. 2012) .......................................................................27, 38

*Scott v. First S. Nat'l Bank*,
936 F.3d 509 (6th Cir. 2019) .............................................................................29

*Sheely v. Feezle*,
No. 25-929, 2026 WL 568332 (Mar. 2, 2026) ...............................................2, 19

*Short v. Bradshaw*,
No. 1:07 CV 2989, 2009 WL 248378 (N.D. Ohio Feb. 3, 2009).......................26

*Swam v. United States*,
327 F.2d 431 (7th Cir. 1964) .............................................................................26

*McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*,
298 F.3d 586 (6th Cir. 2002) .......................................................................36, 37

*United States v. Beggerly*,
524 U.S. 38 (1998)..............................................................................................25

**Statutes**

28 U.S.C. 1291 .......................................................................................................3

28 U.S.C. 1332 (Class Action Fairness Act) ..........................................................3

**Other Authorities**

Rule 23(e)..........................................................................................................40

Rule 23(g)..........................................................................................................23

Rule 60(b)..........................................................................................................*passim*

Rule 60(b)(3)......................................................................................................*passim*

Rule 60(b)(6).......................................................................................4, 23, 36, 37

Rule 60(d)..........................................................................................................38

Rule 60(d)(3)......................................................................................................*passim*

## STATEMENT REGARDING ORAL ARGUMENT

Class Counsel does not believe oral argument is required to decide the issues on appeal but wishes to participate in oral argument should the Court find it beneficial or necessary in accordance with 6 Cir. R. 34(a) and 6 Cir. R. 28(b)(1)(B).

## STATEMENT OF RELATED CASES

*In re East Palestine Train Derailment*, 158 F.4th 704 (6th Cir. 2025), cert. denied sub nom. *Sheely v. Feezle*, No. 25-929, 2026 WL 568332 (Mar. 2, 2026) (objectors' appeal from the same underlying judgment). No other related case is known to counsel.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. 1332 (Class Action Fairness Act) and retained jurisdiction over post-judgment motions under Federal Rule of Civil Procedure 60. This Court has jurisdiction under 28 U.S.C. 1291 over the order under review, which denied Appellants' Motions for Relief from Judgment under Fed. R. Civ. P. 60(b)(3), 60(b)(6), and 60(d)(3), and is a final, appealable post-judgment order. The district court denied both Motions on May 1, 2026. Appellants filed their Notice of Appeal on May 29, 2026.

## STATEMENT OF THE ISSUES

1) Whether the district court abused its discretion in denying relief under Rule 60(b) where Appellants' use of Rule 60 is improper.

2) Whether the district court abused its discretion in denying relief under Rule 60(b)(3) where Class Counsel did not engage in fraud, misrepresentation, or misconduct.

3) Whether the district court abused its discretion in denying relief under Rule 60(b)(6) where Class Counsel did not engage in fraud, misrepresentation, or misconduct, and there is no basis for extraordinary relief.

4) Whether the district court abused its discretion in denying relief under Rule 60(d)(3) where Class Counsel did not engage in fraud, misrepresentation, or misconduct "several notches of severity" above that required for a Rule 60(b)(3) motion.

## STATEMENT OF THE CASE

### A. The Class Action

On February 3, 2023, a Norfolk Southern freight train derailed in East Palestine, Ohio, releasing vinyl chloride and other hazardous materials into the surrounding air, soil, and water. First Am. Master Consolidated Class Action Compl., R. 138, Page ID # 1772. The derailment gave rise to the underlying class action captioned *In re East Palestine Train Derailment*, No. 4:23-cv-00242 (N.D. Ohio) (Pearson, J.), consolidating claims of residents and property owners within the affected area against defendants Norfolk Southern Railway Company and Norfolk Southern Corporation (collectively referred to as "Norfolk Southern"). *See id.* The district court appointed Class Counsel to represent the Class, reasoning that they are "qualified and responsible" in light of their "extensive experience in the areas of class actions, complex litigation, toxic torts, railroad litigation, regulatory, and environmental litigation." Order, R. 28, Page ID # 559-565.

During the pendency of this action, Class Counsel engaged in extensive discovery, during which they reviewed more than a million documents, including information about environmental contamination and cleanup. Declaration of M. Elizabeth Graham ("Graham Decl."), R. 518-2, Page ID # 10949; Declaration of Seth A. Katz ("Katz Decl."), R. 518-3, Page ID # 11060. Class Counsel also collected extensive environmental data and facilitated a comprehensive

environmental sampling and testing program, in addition to air modeling, to determine the geographic range hazardous material from the derailment traveled. Katz Decl., R. 518-3, Page ID # 11060. The environmental testing conducted by Class Counsel included approximately 160 sampling sites in and around East Palestine, covering sites as far as 45 miles from the Derailment Site. *Id.* The sampling program collected data that Plaintiffs' experts relied on in determining exposure. Transcript of Fairness Hearing, R. 553, Page ID # 14487. Class Counsel also consulted and retained numerous experts to advise them about information learned from discovery and the environmental sampling program, on topics including chemistry, toxicology, epidemiology, medical monitoring, pulmonology, and oncology. Graham Decl., R. 518-2, Page ID # 10954.

### B. Settlement Negotiations

Class Counsel and Norfolk Southern engaged in hard-fought settlement negotiations, including mediations before retired United States District Judge Layn R. Phillips ("Judge Phillips"). *Id.* at Page ID # 10956. In furtherance of these efforts, Class Counsel prepared and submitted mediation statements and confidential briefing supported by expert consultations and legal analysis (*id.* at Page ID # 10954-10955), which Judge Phillips recognized required "substantial work." Declaration of Judge Phillips ("Phillips Decl."), R. 518-5, Page ID # 11087-11088. Judge Phillips, informed by confidential facts derived in-part from the work of Plaintiffs'

experts', presented a mediator's recommendation to Norfolk Southern and Plaintiffs on March 6, 2024. Graham Decl., R. 518-2, Page ID # 10957. After months of negotiation, both parties accepted the mediator's recommendation and announced an agreement in principle based on that recommendation on April 9, 2024. *Id.* The agreement was reduced to writing and executed on April 26, 2024. Class Action Settlement Agreement, R. 452-2, Page ID # 6002-6074.

### C. Terms of the Settlement

The Settlement creates a non-reversionary fund of $600 million, to be allocated among the Settlement Class Members. *Id.* The Settlement distribution includes three categories of payment: direct payments to individuals on a per-household basis ("Direct Payments"); payments to businesses for business loss claims ("Business Loss Payments"); and optional payments to Settlement Class members within ten miles of the derailment who voluntarily agree to release any personal injury claims they might have in connection with the derailment by executing a release of personal injury claims ("Voluntary Exposure Supplement" or "Personal Injury Payment"). *Id.* at Page ID # 6023.

### D. Notice to the Class Members

The well-publicized Settlement received extensive local and national coverage in the media. Order, R. 510, Page ID # 9129-9132. Settlement Class

Members had multiple channels through which to investigate their options in this Settlement. *Id.*

During the notice period, Class Counsel communicated with Class members about the Settlement and their options. Order, R. 1053, Page ID # 73043. Class Counsel was available in-person six days a week at the Claims Center or reachable by phone or email. Graham Decl., R. 518-2, Page ID # 10958. Additionally, Class Counsel arranged several virtual conferences, or "town hall" meetings with Class members to provide as much information as possible to Class members to aid them in this decision. Order, R. 1053, Page ID # 73043.

One specific town hall was held on August 1, 2024 (the "August 1 Town Hall") and led by community member and Village Manager Chad Edwards ("Mr. Edwards"). *Id.* The August 1 Town Hall was recorded, and the recording was provided to class members. *Id.* Several Class Counsel attorneys attended, including Elizabeth Graham ("Attorney Graham"), Seth Katz ("Attorney Katz"), Adam Gomez ("Attorney Gomez"), and Michelle Kranz ("Attorney Kranz"), who was, at the time, the president of the Ohio State Bar Association. *Id.* at Page ID # 73045. The August 1 Town Hall proceeded as follows.

First, Class Representatives David Anderson and Rick Feezle spoke about the symptoms and acute health impacts they had suffered, including burning skin and eyes, loss of taste and smell, sore throat, chest pain, and a hoarse voice. Class

Counsel's Response in Opposition to Movants' September 25, 2025, and September 29, 2025 Motions for Relief from Judgment Pursuant to Federal Rules of Civil Procedure 60(b)(3), 60(b)(6) and 60(d)(3), R. 1003, Page ID # 69130.

Next, a pre-recorded presentation by Dr. Chip Carson ("Dr. Carson"), a physician and Ph.D. environmental toxicologist, was shown. *Id.* at Page ID # 69131. As explained by Mr. Edwards, Dr. Carson was "not involved in the litigation [and is] a completely independent third party." *Id.* at Page ID # 69130-69131. Class Counsel arranged for Dr. Carson to speak to the Class members because of his expertise in the field and offer his neutral opinion. *Id.* Dr. Carson was not hired as an expert for the case, nor was he compensated for his opinions or for his time. *Id.*

During the presentation, Dr. Carson explained that he is a medical doctor and a Ph.D. environmental toxicologist who grew up in Cincinnati, went to Ohio State University, and spent most of his career dealing with chemical exposure in occupational and industrial medicine. *Id.* In response to the question "[w]hat are the health impacts associated with the chemicals released by the derailment?" he explained, in part:

> Based on my best judgment there will not be any long-term health impact of chemical exposure from the derailment to community members of East Palestine. As far as people just living in East Palestine [or working there or in nearby communities] we don't expect there to be any long-term health effects associated with chemical exposure resulting from the derailment.

*Id.* He further explained that potential health effects depend on the toxins and exposure, but:

> [t]he chemical contaminations that have been clearly associated with health effects in communities have been hundreds of times greater than the measured levels [in East Palestine]. From the derailment, the number of chemicals that have been produced and that may remain in very low levels in the East Palestine area are dwarfed by the amount of other [harmful] substances there[1]."

*Id.* He elaborated that the chemicals released were carcinogenic at certain levels, "in particular, vinyl chloride," but that the levels community members were exposed to were relatively small. *Id.* In response to the question, "[w]hat are the chances of someone developing an illness like cancer in the future because of this chemical exposure?" Dr. Carson clarified:

> Well because there were some small levels of chemicals that were involved, not zero, *the risk due to those chemical exposures* ***is not zero either****, but it's very small,* it's much much smaller than 1%, and it's so small, it's very difficult to calculate."

*Id.* at Page ID # 69132 (emphasis added). In response to the question "[h]ow would you respond to claims that it's too early to know the long-term health effects of the derailment?" Dr. Carson explained:

> It's too early for some things, but it's not too early to predict the overall health effects [that] will occur from this . . . we pretty well know what exposures resulted from this train derailment and we can pretty well predict that people will be safe in the long term.

---

[1] Referred to as the "background level" of contamination, as discussed *infra*.

*Id.*

Following Dr. Carson's presentation, Class Counsel spoke. *Id.* First, Attorney Graham and Attorney Katz explained the factual and legal history of the case. *Id.* Attorney Katz explained that Class members were "absolutely entitled" to use the money from this settlement however they want, including tests their doctor might tell them to take every year, and if Class members decide to voluntarily participate, they could use, save, or invest that money to cover costs of medical treatment if they do get sick. *Id.*

Next, Attorney Gomez explained the different categories of payments, including a detailed explanation of the Personal Injury Payment, emphasizing that it was voluntary. *Id.* He explained that:

> you do not need to have suffered a physical injury in order to participate, instead of what would be required in a lawsuit . . . *we've assumed that everyone within 10 miles has been exposed to a certain level of chemical contaminants and as a result is eligible for a personal injury payment. If you have experienced symptoms and if you have sought medical treatment and received a formal diagnosis, those are factors that will be considered in calculating your payment, but it's not required for you to have actually experienced a physical injury, gone to the doctor, received any treatment, or received a diagnosis. There is also the opportunity for individuals who voluntarily participate in the personal injury program to note extraordinary circumstances [which can be] a very adverse reaction to the chemical exposure, they can be an illness or symptoms that are different than those that have been experienced by most people…those circumstances can be explained . . . and will receive consideration for additional payment.*

*Id.* at Page ID # 69132-69133 (emphasis added).

Finally, Attorney Kranz spoke, also emphasizing that the personal injury claims were voluntary, "if you opt not to participate in the personal injury settlement that [Attorney Gomez] just outlined, you are entitled to do that, your rights are reserved they are your own and you can continue with this case in any matter that you'd like." *Id.*

### E. Approval of the Settlement

Objectors subsequently challenged the Settlement, as summarized below:

| Date | Document | Party/Attorney | Summary of Relevant Objection |
|---|---|---|---|
| 7/1/24 | Objection to Class Action Settlement Agreement and Motion to Enlarge Time to Opt Out of Property Portion of Class Settlement, R. 486 | Jami Wallace/David Graham | Health risks to Class were not yet known, and data from Stephen Petty was "suppressed" by Class Counsel |
| 7/1/24 | Objection to Class Action Settlement Agreement Motion to Enlarge Time to Opt Out of Property Portion of Class Settlement, R. 485 | Joseph Sheely/ David Graham | Health risks to Class were not yet known, and data from Stephen Petty was "suppressed" by Class Counsel |
| 7/1/24 | Objections to Settlement, R. 487-2 | 35 Class members/Daniel Abraham | Class members were forced to make a decision without enough information and before enough time had passed for injuries to occur |
| 8/18/24 | Reply to Response to Motion to Enlarge Time to Opt Out of Property Portion of | Jami Wallace/David Graham | Petty's data has not been provided by Class Counsel |

| | | | |
|---|---|---|---|
| | Class Settlement Agreement, R. 508 | | |
| 9/18/24 | Response to Motion for Final Approvement [sic] of Settlement and Objectors' Brief in Support of Objections, R. 529 | 35 Class members/ Daniel Abraham | Class Counsel withheld expert and discovery information from Class members, Class Counsel has "led Class Members to believe that there is a minimal risk that the exposure will result in future personal injuries by having an expert speak at the town hall assuring the attendees that the exposure is not going to cause future injuries," Dr. Carson was wrong and Class Counsel used him to encourage Class members to sign personal injury releases |
| 9/23/24 | Third Party Affidavit/Declaration of Stephen Petty, R. 534 | Joseph Sheely/ David Graham | Too early to declare there are no health impacts, Dr. Carson was wrong, health risks to Class are unknown, Class Counsel has not allowed release of data |
| 9/23/24 | Third Party Affidavit/Declaration of Scott Smith, R. 536 | Joseph Sheely/ David Graham | Health risks to Class are uncertain, Dr. Carson was wrong |
| 9/23/24 | Third Party Affidavit/Declaration of George Thompson, R. 537 | Joseph Sheely/ David Graham | Health risks to Class are uncertain, Dr. Carson was wrong |
| 9/23/2024 | Third Party Affidavit/Declaration of Stephen Petty, R. 540 | Joseph Sheely/ David Graham | Too early to declare there are no health impacts, Dr. Carson was wrong, health risks to |

| | | | |
|---|---|---|---|
| | | | Class are unknown, Class Counsel has not allowed release of data |

In denying the above objectors' request for more time to opt-out, the district court considered and rejected the arguments that: (1) the health risks to the community were too unknown for settlement; and (2) that Class Counsel had to release data generated by Stephen Petty for Class members to make informed decisions about the Settlement. Order, R. 510, Page ID # 9129-9132 ("Settlement Class Members have had multiple channels through which to investigate their options in this Settlement and make informed timely decisions about whether to opt out of the Settlement Class.").

Class Counsel filed a Notice of Filing of Written Objections to Class Action Settlement Agreement on September 6, 2024. Notice of Filing of Written Objections to Class Action Settlement Agreement, R. 516. The Notice was filed pursuant to Section VII(D) of the Class Action Settlement Agreement. Class Action Settlement Agreement, R. 452-2, Page ID # 6017.

On September 6, 2024, Class Counsel filed a Motion for Final Approval of Settlement. Motion for Final Approval of Settlement, R. 518, Page ID # 10896. In support thereof, Class Counsel attached a Declaration from Richard J. Schuhmann, Ph.D., an environmental engineer and consulting expert for Class Counsel from the outset of litigation who reviewed data from the sampling program to determine the

areas of soil impact. Declaration from Richard J. Schuhmann, Ph.D. ("Schuhmann Decl."), R. 518-10, Page ID # 11186-11204.

A fairness hearing was held on September 25, 2024 (the "Fairness Hearing"), during which objectors repeated the same issues. They argued:

> But this is real injury to real people. And the risk that we run here, if you even look at Stephen Petty's declaration, he says it's too soon. You can't make these decisions. We don't know enough.
>
> But we do know the numbers are not correct. That when Mr. Carson was telling people in the community that the numbers that were collected were within acceptable limits, we now know that that's not the case.
>
> So, if people made decisions on filing in the personal injury case or agreeing to the settlement based upon information that wasn't complete, then they didn't have informed information and it would be unfair to them to settle this case.

Transcript of Fairness Hearing, R. 553 at Page ID # 14459. Objectors further asked that "Stephen Petty be permitted to lift the handcuffs, the confidentiality that is around him" to present his evidence. *Id.* at Page ID # 14464; Declaration of Stephen Petty, R. 534, Page ID # 11627. In responding to this request, however, the court noted that Mr. Petty had not come to the hearing to voice his concerns, was not handcuffed, and rejected such a request. Transcript of Fairness Hearing, R. 553 at Page ID # 14464-14465.

At the hearing, Class Counsel addressed the objectors' concerns and explained that Mr. Petty's position was neither new nor availing:

> . . . what is contained in those declarations, and we've read them all, is not new to class counsel. And indeed, it is not new to this Court. They were submitted -- with the exclusion of Mr. Petty's declaration, they were submitted to Your Honor in support of a motion to enlarge time, which this Court denied.
>
> We are well aware of what Mr. Petty says. He is one voice. And we understand his methodology and his testing that was done. We have scores of other experts. And, again, detailed in the declaration of Richard Schuhmann. We have done our homework.
>
> So, this is not some smoking gun that we didn't uncover. This is not something that wasn't out in the public domain. This isn't something that we're trying to hide. It's simply additional testing.

*Id.* at Page ID # 14486.

As to the concerns about Dr. Carson, Attorney Graham acknowledged that the future risks from exposure to toxic chemicals are somewhat unknown, explaining:

> We didn't offer [Dr. Carson's video] as evidence. We knew this. We've spoken to other doctors as well. What we did know is that the risk is uncertain, and that the types of diseases that are connected to the types of toxins that were on the railcars result, if ever, in symptoms decades down the road, because the latency period is such that you have to wait to see what's going to happen.

*Id.* at Page ID # 14479. She further explained "we all agree that there is no way to be certain what the health risk is to the community. We are not settling a personal injury class here [but we are] presuming that there is an exposure . . . [and] that the concern is real . . . [b]ut we all agree it's going to be decades from now before these symptoms manifest" and it would be "nonsensical" to wait for Class members to become sick before settling the case. *Id.* at Page ID # 14477. Attorney Graham added

that: "[Dr. Carson] didn't say there was zero risk. What he said is the likely risk. And again, he is an occupational and industry medicine doctor. What he said was that the likely risk is unknown and that it is likely very low, in his opinion." *Id.* at Page ID # 14478. Additionally, Attorney Graham stated that Class Counsel negotiated a sampling protocol early on with Norfolk Southern and adhered to it, explaining "[w]e didn't rely on EPA data. We went out and we did our own testing. We did split samples. *We eliminated background levels*. We did everything that we were supposed to do." *Id.* at Page ID # 14487 (emphasis added).

At the conclusion of the Fairness Hearing, the court specifically found that the Settlement was entered into with good faith, "free of fraud or collusion." *Id.* at Page ID # 14536. The court further found the Settlement was "fair, adequate, and reasonable" and 'overrule[d] all objections made to the settlement." *Id.* at Page ID # 14537. Accordingly, on September 27, 2024, the district court considered and "overrule[d] all objections to the fairness, adequacy, or reasonableness of the Settlement" and granted Plaintiffs' Motion for Final Approval of Settlement (the "Final Approval Order"). Final Approval Order, R. 557, Page ID # 14580-14586.

**F. First Unsuccessful Appeal**

On September 27, 2024, Attorney David M. Graham ("Attorney David Graham") filed a Notice of Appeal from the Final Approval Order on behalf of Objecting Settlement Class Member Joseph Sheely ("Sheely"). Notice of Appeal, R.

558, Page ID # 14587; *In re: East Palestine Train Derailment*, No. 24-3852 (6th Cir.). Eleven days later and after Sheely made public statements that he did not authorize the filing of that Notice of Appeal, Attorney David Graham filed another Notice of Appeal of the Final Approval Order, this time on behalf of Objecting Settlement Class Members Zsuzsa Troyan, Tamara Freeze, Sharon Lynch, and Carly Tunno. Notice of Appeal, R. 570, Page ID # 14768; *see In re: East Palestine Train Derailment*, No. 24-3880 (6th Cir.).

Just like here, on appeal, the objectors alleged that Class Counsel withheld documentary evidence and concealed data that contradicted the finding that health hazards are limited to mislead Class members. *See* App. Br. at 20-42, (No. 24-3852), Dkt. 26; App. Br. at 22-43, (No. 24-3880), Dkt. 33. Class Counsel and Norfolk Southern opposed the appeals, arguing that the district court had fully considered the Settlement's terms, the parties' extensive submissions, and the governing law before granting approval at the fairness hearing, where Class Counsel, Norfolk Southern, and objectors were heard. Brief for Plaintiffs-Appellees at 1-3, (No. 24-3852), Dkt. 39; Brief for Plaintiffs-Appellees at 1-3, (No. 24-3880), Dkt. 44; Brief for Defendants-Appellees at 1-3, (No. 24-3852), Dkt. 38; Brief for Defendants-Appellees at 1-3, (No. 24-3880), Dkt. 43.

However, the appeals were dismissed due to the objectors' failure to post the appeal bond for over eight months. 158 F.4th at 709. Despite the reason for the

dismissal, this Court considered "the merits of the underlying appeal," and rejected challenges to the reasonableness of the Settlement. *Id.* at 712, 713-714. In so holding, this Court reasoned that the Class members' experts "reviewed the environmental data and reached an informed conclusion about the levels of toxicity in the soil" and "[t]he discovery, mediation, and settlement process was complex, expensive, and exhaustive, and the class's counsel, representatives, and absent members all support the agreement." *Id.* "At the end of the day, the parties settled because" the provisions of the Settlement "adequately compensated injured individuals given the balance of conflicting evidence." *Id.*

Objectors' petition for writ of certiorari was subsequently denied. *Sheely v. Feezle*, No. 25-929, 2026 WL 568332 (March 2, 2026) (Mem) (ECF No. 1049).

### G. The Rule 60 Motions

Relatedly, Attorney Jedidiah I. Bressman ("Attorney Bressman") filed two substantively similar Motions for Relief from Judgment Pursuant to Rule 60(b)(3), (b)(6), and (d)(3), one on September 25, 2025, on behalf of 144 Class members (R. 993, Page ID # 68906) and one on September 29, 2025, on behalf of 52 Class members (R. 994, Page ID # 69016) (collectively referred to as the "Motions"), seeking relief from part of the Final Approval Order. In the Motions, movants argued that: (1) EPA testing understated the contamination; (2) Dr. Carson provided information that inaccurately described the health risks as limited; (3) expert reports

in the litigation were not disclosed because of the Settlement; and (4) Class members did not have enough information to make informed decisions about the Settlement. *See id.* Based thereon, movants asked the district court to reopen the judgment, invalidate their personal injury releases, and prohibit enforcement of those releases. *See id.*

In response, Norfolk Southern and Class Counsel argued that the Motions improperly repeated objections that had been overruled by the Court, and that the appeal pending before the Sixth Circuit divested the Court of jurisdiction to grant the Motions under Rule 60(b). *See generally* Class Counsel's Response in Opposition to Movants' September 25, 2025 and September 29, 2025 Motions for Relief from Judgment Pursuant to Federal Rules of Civil Procedure 60(b)(3), 60(b)(6) and 60(d)(3), R. 1003, Page ID # 69130; Norfolk Southern's Combined Opposition to Certain Class Members' Motions for Relief from Judgment Pursuant to Federal Rules of Civil Procedure 60(b)(3), 60(b)(6) and 60(d)(3), R. 1002, Page ID # 69093. They further argued that even if Rule 60 were properly raised, the allegations factually underpinning the Motions were specious and had been rejected previously because the record demonstrated that: Class Counsel has neither concealed information, nor made a single misleading statement, nor committed fraud; expert reports were rightly not finalized because a settlement was reached before they were required to be exchanged; consultations with Plaintiffs' experts

informed hard-fought negotiations; and Class Counsel consistently and accurately explained both the voluntary personal injury payment portion of the Settlement and that the risks of exposure in the future are somewhat unknown and slow to develop. *Id.*

### H. The District Court's Denial of the Rule 60 Motions

On May 1, 2026, the district court denied the Motions in a 29-page Memorandum of Opinion and Order (the "Order"). Order, R. 1053, Page ID 73040-73068. In the Order, Judge Benita Y. Pearson held that the Movants failed to prove fraud, misrepresentation, misconduct, extraordinary circumstances or fraud on the court and thus, were not entitled to relief under Rule 60. *See generally id.* Judge Pearson declined to invalidate the personal injury releases that movants had signed, noting that some had already accepted payment. *Id.*

Specifically, in the Order, Judge Pearson emphasized that Rule 60 is not a substitute for an appeal, and movants could not use Rule 60 to relitigate arguments that have already been decided. *Id.* at Page ID # 73065. Judge Pearson reasoned that movants did not show fraud by clear and convincing evidence because there was no intentional misrepresentation, no concealment of material facts, no evidence that Class Counsel knowingly misled anyone, and thus, movants were not entitled to relief under Rule 60(b)(3). *Id.* at Page ID # 73060. Judge Pearson specifically held that the existence of contrary scientific opinions did not amount to fraud and settling

before expert reports were exchanged is not misconduct. *Id.* at Page ID # 73060-73062. For these reasons, Judge Pearson similarly found that movants did not meet the more stringent standard to establish fraud on the court under Rule 60(d)(3). *Id.* at Page ID # 73062-73063. In the Order, Judge Pearson highlights that this Court has already concluded that Class Counsel thoroughly investigated environmental contamination, that the Settlement reflected informed judgment despite conflicting expert opinions, that only a small fraction of the Class objected, and that delaying settlement payments harmed tens of thousands of Class members. *Id.* at Page ID # 73063-73066. Moreover, Judge Pearson reasoned that the personal injury releases remained enforceable, noting that the releases were voluntary, the movants did not challenge the language of the releases, and that many had already accepted and negotiated settlement payments pursuant thereto. *Id.*

**I. Instant Appeal**

Appellants commenced the instant appeal with the filing of their Notice of Appeal of the Order on May 29, 2026. Notice of Appeal, R. 1054, Page ID # 73069.

Appellants filed their opening brief (the "Brief") on July 29, 2026. In their Brief, Appellants argue that the district court committed six reversible errors in denying their Rule 60 motions: (1) the court erred in rejecting their Rule 60(d)(3) fraud on the court claim in light of allegedly newly discovered evidence, consisting of peer-reviewed studies, FOIA productions, an email chain, soil testing and medical

developments, allegedly evidencing that Class Counsel concealed material information; (2) the court erred in rejecting Rule 60(b)(3) relief, claiming that Norfolk Southern's alleged fraud, misrepresentations, and misconduct prevented class members from making an informed decision before signing the personal injury releases; (3) extraordinary circumstances exist, such as Class Counsel's purported breach of fiduciary duties under Rule 23(g) and the district court's failure to properly supervise the fairness process, entitling Movants to relief under Rule 60(b)(6); (4) the district court improperly relied upon the decision in the prior appeal as preclusive; (5) the personal injury release disclaimers do not bar recission because they claim that the purported fraud vitiates consent; and (6) that the district court misapplied the third-party-fraud rule in *Integrated Pipe*. Appellants argue that, in the alternative, the district court abused its discretion by denying the Motions without an evidentiary hearing.

## SUMMARY OF THE ARGUMENT

Appellants—who represent a very small percentage of the Class members—moved for relief under Federal Rule of Civil Procedure 60 ("Rule 60") in the underlying class action, seeking to invalidate releases that they signed voluntarily in exchange for compensation in accordance with the Class Action Settlement Agreement. In support of their appeal, Appellants recycle the same failed arguments that have been fully considered and rejected by both the district court and this Court

during a related appeal—namely that Class Counsel: (1) concealed or misrepresented environmental testing results; (2) made false representations to class members about health risks; and (3) fraudulently misled the district court during the Fairness Hearing. The district court denied Appellants' motions, reasoning that Appellants failed to demonstrate evidence of fraud, misconduct, or extraordinary circumstances warranting relief. Appellants' effort to relitigate their old arguments with claims of "newly discovered" evidence were not proper Rule 60 motions. Indeed, as the district court correctly reasoned, "Rule 60 is not a tool to rescind a voluntary release signed in exchange for compensation." Put simply, the underlying Motions and instant appeal are just a second bite at the apple that Rule 60 does not permit.

## ARGUMENT

### A. Standard of Review

An appellate court reviews a district court's denial of a Rule 60 motion for abuse of discretion. *Maloof v. Level Propane, Inc.*, 429 Fed. Appx. 462, 467 (6th Cir. 2011); *Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*, 475 F. App'x 65, 70 (6th Cir. 2012). Applying the abuse-of-discretion standard, reversal is only warranted if the district court "commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 623 (6th Cir. 2008). Additionally, when considering appeals of post-judgment

motions, courts are mindful that post-judgment relief "is circumscribed by public policy favoring finality of judgments and termination of litigation." *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001); *see also* Moore's Federal Practice § 60.21[4][c] (emphasizing narrow reach of fraud on the court under Rule 60(d)(3) and cautioning that broad application would render meaningless the remedies and time limitations prescribed by Rule 60(b)). As the Supreme Court has held, relief from judgment for fraud on the court is "available only to prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47 (1998). Thus, the party seeking relief under Rule 60(d)(3) must establish fraud "by clear and convincing evidence." *Gen. Med., P.C.*, 475 F. App'x at 71.

### B. The District Court Did Not Abuse Its Discretion in Denying Relief Under Rule 60(b) Because Appellants' Use of Rule 60 is Improper

The district court rightly acknowledged that Appellants' Motions "are nothing more than an improper repetition of the exact objections" previously considered and rejected by both the district court and the Sixth Circuit:

> The within Motions rely on the same arguments and supporting evidence presented in previous filings in the district court and the Sixth Circuit, which have already been considered and rejected. According to the Court of Appeals, "[a]mong other problems, [the objectors] hadn't shown that they were likely to succeed on the merits" of their claims. *In Re East Palestine Train Derailment*, 158 F.4th at 709 (brackets added). Moreover, the Court of Appeals found "the objectors are unlikely to succeed on the merits of their challenge to . . . the reasonableness of the settlement. *Id.* at 713.

Order, R. 1053, Page ID # 73058.

A motion for relief from judgment under Rule 60(b) cannot be used as a second opportunity for a party to make its strongest case, to relitigate merits arguments, or to dress up arguments that previously failed. *Fleming v. New York University,* 865 F.2d 478, 484 (2d Cir.1989); *Short v. Bradshaw*, No. 1:07 CV 2989, 2009 WL 248378, at *1 (N.D. Ohio Feb. 3, 2009); *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 247 F.Supp.2d 1233 (D.Kan.2003), *affirmed* 111 Fed.App'x. 611, 2004 WL 2370634. Rule 60(b) "was not intended to be an alternative method to obtain review by appeal or as a means of enlarging by indirection the time for appeal." *Swam v. United States*, 327 F.2d 431, 433 (7th Cir. 1964).

This is precisely the situation here because the Sixth Circuit has already rejected the arguments now pending before it:

> The likelihood-of-success factor cuts against the objectors. Settlement was "particularly sensible" because continued litigation would have significantly delayed residents' resettlement payments without any certainty of yielding a larger award. And the objectors don't raise issues likely to alter that settlement calculus. The gist of their argument is that the district court and class counsel failed to review, credit, and disseminate expert declarations and soil-sampling data about the long-term hazards from environmental toxins. But the class members' expert reviewed the environmental data and reached an informed conclusion about the levels of toxicity in the soil. *See* R. 553, Pg. ID 14486-87 (explaining negotiated soil-sampling protocols); R. 518-10, Pg. ID 11186-91. The existence of contradictory evidence from the objectors' private report does little to undermine the conclusions of the parties' expert. At the end of the day, the parties settled precisely because they felt that $600 million adequately compensated injured individuals given

> the balance of conflicting evidence. The objectors can't explain why adding more conflicting evidence to a billowing record would move the needle during renewed settlement negotiations.

Order, R. 1053, Page ID # 73058 (quoting *In Re East Palestine Train Derailment*, 158 F.4th at 713-14). This Court further recognized that only a very small percentage of eligible households and businesses opted out of the Settlement, and Class members would be prejudiced by a delay in distributing settlement funds. *Id.* at Page ID # 73059 (quoting *In Re East Palestine Train Derailment*, 158 F.4th at 712-14). Accordingly, the Motions and instant appeal are nothing more than a second bite at the apple that is not a proper use of Rule 60(b).

Additionally, the district court correctly reasoned that "Rule 60 is not a tool to rescind a voluntary release signed in exchange for compensation." *Id.* at Page ID # 73064. The Final Approval Order approved the Settlement, which provided an option for Class members to voluntarily sign personal injury releases in exchange for compensation *Id.* at Page ID # 73066. The Final Approval Order did not compel any Class member to sign the personal injury release they entered into with Norfolk Southern. *Id.* at Page ID # 73067. Rule 60 cannot relieve Appellants of those contractual obligations, as "Rule 60 does not provide relief from the consequences of a deliberate choice, even if subsequent events reveal the choice to have been unwise." *Park W. Galleries, Inc. v. Hochman*, 692 F.3d 539, 545 (6th Cir. 2012).

### C. The District Court Did Not Abuse Its Discretion in Denying Relief Under Rule 60(b)(3) Because Class Counsel Did Not Engage in Fraud, Misrepresentation, or Misconduct.

"To prevail under a Rule 60(b)(3) claim for fraud movant must show the fraud complained of [by the opposing party] by clear and convincing evidence. Accordingly, the party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008); *Jennings v. Hicklin,* 587 F.2d 946, 948 (8th Cir.1978); *Ervin v. Wilkinson*, 701 F.2d 59, 61 (7th Cir. 1983). The Sixth Circuit has defined fraud under Rule 60(b)(3) as "the knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment [which includes] deliberate omissions when a response is required by law or when the non-moving party has volunteered information that would be misleading without the omitted material." *Info-Hold,* 538 F.3d at 456.

Here, Appellants argue that the district court erred in rejecting their Rule 60(b)(3) fraud on the court claim, recycling previously failed arguments that Class Counsel: (1) concealed or misrepresented environmental testing results; (2) made false representations to class members about health risks; and (3) fraudulently misled the district court during the Fairness Hearing about testing data used and health risks discussed with Class members during Dr. Carson's town hall presentation. App. Br.

18-25. Having failed once already, Appellants assert that their arguments are based on "newly discovered evidence," consisting of:

- Peer-reviewed studies published after Settlement approval including the Golumb Gulf-War-illness-symptom study (December 2024) and the Kent State et al. soil-contamination study (February 2025) (RE 1014-3, PageID# 70989);

- FOIA productions obtained by Movants' counsel between May and July 2025, which included FEMA/EPA internal correspondence containing references to a "really toxic plume" and an "emerging cancer cluster" (RE 1014-5, PageID#71037) and the March 6, 2023, EPA sampling-plan letter reflecting Norfolk's chemical-removal request (RE 1014-2, PageID# 70985);

- The July 26, 2024, Rebuttal PR email chain transmitting the "edited version" of the Carson video, obtained by Movants' counsel in June 2025 (RE 1014-1, PageID# 70983);
- Scott Smith's August 2025 soil testing (RE 1014-4, PageID# 71002); and

- Post-approval, anecdotal medical developments among Appellants, including the Austin Druckenbrod Reactive Airways Dysfunction Syndrome diagnosis, as well as the cancer diagnoses and deaths documents in RE 994 and RE 1014.

App. Br. 9-10. Virtually all of this "newly discovered" evidence was created or occurred months, if not years, after the Settlement was negotiated and approved by the district court. Therefore, as an initial matter, Appellants waived any argument based on each supposedly new piece of evidence because they either never raised them in the district court or raised them for the first time only in their reply. *See Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019).

#### i. Class Counsel did not fraudulently conceal expert conclusions from Class members.

Appellants argue that Class Counsel "concealed the contrary opinions of their own retained expert" in defiance of a fiduciary duty to disclose it. App. Br. 23. However, Appellants do not cite to any case in support of their contention that failing to provide confidential and protected draft expert work product amounts to fraud or misconduct justifying relief from a settlement. Indeed, fraud requires a misrepresentation or concealment of a material fact "done to induce another to act to his or her detriment." *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 456 (6th Cir. 2008); *see Kerwit Med. Prods., Inc. v. N. & H. Instruments, Inc.*, 616 F.2d 833, 837 (5th Cir. 1980) (finding no error in denial of Rule 60 motion and citing "the well-settled rule that the mere nondisclosure to an adverse party and to the court of facts pertinent to a controversy before the court does not add up to 'fraud upon the court' for purposes of vacating a judgment.").

In point of fact, Class Counsel did not "hold back" expert opinions to "induce" Class members to act to their detriment—as addressed in response to objections, Class Counsel did not publish Plaintiffs' expert reports because a settlement was reached before expert reports were due to be exchanged under the schedule entered by the Court, and therefore expert reports were never finalized. Order, R. 1053, Page ID # 73042. Moreover, contrary to Appellants' assertions, Class Counsel does not have a duty to disclose publicly that someone disagrees with a negotiated settlement,

and Appellants have no evidence whatsoever, let alone clear and convincing evidence, to show that Class Counsel fraudulently concealed expert conclusions by failing to provide draft expert reports or allow publication of experts' draft work product.

**ii. Class Counsel did not misrepresent the health impacts of the derailment to Class members or the Court.**

Contrary to Appellants' position, Class Counsel has repeatedly recognized the possibility of health risks because of the derailment; the very existence of these voluntary personal injury payments makes clear that Class Counsel (and Norfolk Southern) recognized that potential. Despite the relatively low risk of cancer development and other exposure-related long-term health effects, as acknowledged by Dr. Carson, Class Counsel negotiated for these payments to provide Class members an opportunity for achievable compensation for those potential claims. For tens of thousands of participating Class members, this has provided an opportunity for compensation they would not otherwise have received without taking on the additional expense, risk, and delay of a personal injury lawsuit in the unlikely event that a derailment-related injury materialized in the future.

Notably, Dr. Carson, Class Counsel, and Stephen Petty have all said the same thing—the health risks are not fully known. This is exactly what Class members were told on all fronts, and that is why Class Counsel has repeatedly emphasized that the personal injury releases were fully voluntary, optional, and would not impact

direct payments to Class members. Class Counsel and Dr. Carson did say that in their opinion – based on the weight of vetted and reliable evidence – the health risks are likely low given the Class' relatively low exposure levels, which continues to be supported by independent scientific studies done to date. Class Counsel did not act fraudulently, nor did they commit any form of misconduct, by allowing Dr. Carson to present his opinions to Class members and requiring Stephen Petty to abide by the terms of the district court's protective order and the Settlement Agreement. Appellants do not (and cannot) articulate how a difference in opinion held by Scott Smith and Stephen Petty amounts to fraud.[2]

---

[2] Appellants also falsely suggest that the conclusions in Dr. Schuhmann's declaration are based on flawed EPA data, not the testing of Plaintiffs' own experts, and that Dr. Schuhmann ignored Plaintiffs' testing data. App. Br. 24. This claim is plainly refuted by Dr. Schumann's sworn declaration, which sets forth the data he reviewed and relied upon in reaching his conclusions. Schuhmann Decl., R. 518-10, Page ID # 11186-11204. As documented extensively in the record below, Class Counsel spent a significant amount of resources and time conducting the soil sampling program, attorneys from Class Counsel law firms were present for every sample collected and Dr. Schumann reviewed data from the sampling program in East Palestine. *Id. at Page ID* # 11186-11196. He compared the data collected from the soil sampling program against *background* levels of dioxins/furans from the EPA in the East Palestine area. *Id.* In other words, the results of the dioxins/furans collected by Class Counsel's program were compared against EPA background data as part of generally accepted scientific methods. Appellants mischaracterize this critical fact in Dr. Schuhmann's declaration to imply that Class Counsel or Dr. Schuhmann ignored Plaintiffs' own sampling program data. Class Counsel was forthright when explaining to the Court "we had a sampling protocol . . . and we adhered to it. *We didn't rely on EPA data.* We went out and did our own testing. We did split samples. *We eliminated background levels*. We did everything that we were supposed to do." Transcript of Fairness Hearing, R. 553, Page ID # 14487 (emphasis added).

Grasping at straws to accuse Class Counsel of engaging in fraud, Appellants point to an email dated July 26, 2024, from Stephanie Wolf of Rebuttal PR, sending an "edited version" of the pre-recorded video of Dr. Carson to Class Counsel, who directed that the video should not be distributed before the August 1 Town Hall. App. Br. 20. Based on this email chain, Appellants audaciously accuse Class Counsel of presenting false information to the Court during the Fairness Hearing. *Id.* at 20-22. Appellant describes the alleged misrepresentation as follows:

> Class Counsel deployed the Rebuttal PR-produced Carson video to absent class members at the August 1, 2024, town hall. When objecting counsel raised the video at the fairness hearing . . . the district court directly asked Class Counsel: "So the video you heard Mr. Abraham speak to the Court about, played by Plaintiffs' counsel — . . . that suggests no worries, no illness will befall any of you, did that happen?" (RE 553, PageID# 14477 at 55:10-14.). Class Counsel's answer acknowledging the video but describing Dr. Carson as "a friend, a colleague of one of the members of the Plaintiffs' Executive Committee" without disclosing the Rebuttal PR production was made to the tribunal, on the record on which the tribunal had to make its Rule 23(e) findings.

*Id.* at 18-19.

Appellants seek to distract this Court with semantic and baseless accusations of misrepresentations by Class Counsel, ignoring that Attorney Graham explained at the Fairness Hearing that: "[Dr. Carson] didn't say there was zero risk. What he

---

Appellants present no evidence of misrepresentation, misconduct, or fraud on this basis.

said is the likely risk. And again, he is an occupational and industry medicine doctor. What he said was that the likely risk is unknown and that it is likely very low, in his opinion." Transcript of Fairness Hearing, R. 553, Page ID # 14478. Further, Attorney Graham acknowledged that the future risks from exposure to toxic chemicals are somewhat unknown, explaining:

> We didn't offer [Dr. Carson's video] as evidence. We knew this. We've spoken to other doctors as well. What we did know is that the risk is uncertain, and that the types of diseases that are connected to the types of toxins that were on the railcars result, if ever, in symptoms decades down the road, because the latency period is such that you have to wait to see what's going to happen.

*Id.* at Page ID # 14479. She added that "we all agree that there is no way to be certain what the health risk is to the community. We are not settling a personal injury class here [but we are] presuming that there is an exposure . . . [and] that the concern is real . . . [b]ut we all agree it's going to be decades from now before these symptoms manifest" and it would be "nonsensical" to wait for Class members to become sick before settling the case. *Id.* at Page ID # 14477. Additionally, Attorney Graham stated that Class Counsel negotiated a sampling protocol early on with Norfolk Southern and adhered to it, explaining "[w]e didn't rely on EPA data. We went out and we did our own testing. We did split samples. We eliminated background levels. We did everything that we were supposed to do." *Id.* at Page ID # 14487. Moreover, as repeatedly explained, (a) Dr. Carson was not paid by Class Counsel and (b) Dr. Carson gave his opinions in *his* "best judgment," acknowledging the risk of future

health effects was "not zero," and explaining the risk was unknown as it was too low to calculate. Class Counsel's Response in Opposition to Movants' September 25, 2025 and September 29, 2025 Motions for Relief from Judgment,R. 1002, at Page ID # 69130-69131. Accordingly, Attorney Graham's statements to the Court during the Fairness Hearing accurately informed Class members and fail to support Appellants' unfounded allegations of attorney misconduct.

**iii. Class Counsel did not conceal information regarding a Class member's injuries.**

Appellants also deceptively argue that Class Counsel concealed information about some Class members' alleged injuries. App. Br. 24. To fashion this vague argument, Appellants assume Class Counsel knew about one specific Class member's diagnosis; however, the Druckenbrod Extraordinary Injury Claim to which they point clearly shows that the Class member had individual counsel and was not represented by Class Counsel. *Id.* Appellants offer no evidence to support that Class Counsel was aware of the alleged illness. Moreover, even if Class Counsel was aware of the injury (which they were not), Attorney Gomez had explicitly informed Class members that some Class members may have already experienced symptoms or already had formal diagnoses, and those would be considered in calculating the total amount of the personal injury payment for those individuals. What is more, Class Counsel even explained to the Class and the district court that the Settlement included an Extraordinary Injury Fund because some Class members

were likely to have injuries of a category and/or degree that were more significant than those the Fund was generally designed to compensate. Accordingly, Appellants' argument falls well below "clear and convincing evidence" that the district court erred in finding that Class Counsel did not engage in fraud, misconduct or misrepresentation.

### D. The District Court Did Not Abuse Its Discretion in Denying Relief Under Rule 60(b)(6).

Rule 60(b)(6) applies "only in exceptional and extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule . . .[s]uch situations are rare, 'because almost every conceivable ground for relief is covered under the other subsections of Rule 60(b)." *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 596 (6th Cir. 2002) (internal citations omitted). The principal purpose of Rule 60(b)(6) "is to deal with unforeseen contingencies." *In re Durkalec*, 21 B.R. 618 (E.D. Pa. 1982).

The district court correctly reasoned that there is no basis for the Court to apply the exceptional and extraordinary relief under Rule 60(b)(6) because Appellants' unfounded allegations have already been litigated, and as discussed *supra*, Class Counsel did not affirmatively misrepresent, or omit, information to the Class or before the Court, nor is that a basis for Rule 60(b) relief.

Rule 60(b)(6) should be narrowly applied lest it undermine rules that favor finality of judgment. *Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011) ("if the

reason asserted for the Rule 60(b)(6) motion could have been addressed on appeal from the judgment, we have denied the motion as merely an inappropriate substitute for an appeal . . . [s]tated simply, 'extraordinary circumstances' do not arise due to limitations that otherwise apply, and a plaintiff cannot use Rule 60(b)(6) to evade such time limitations."); *see McCurry,* 298 F.3d at 596 (explaining that Rule 60(b)(6) relief is not available for straightforward claims of attorney error and strategic miscalculation). None of the unsubstantiated accusations or challenged conduct here warrants, or justifies, relief from the Final Approval Order or rescission of Appellants' voluntary personal injury releases.

### E. The District Court Did Not Abuse Its Discretion in Denying Relief Under Rule 60(d)(3).

Contrary to Appellants' assertions, the district court properly denied Appellants relief under Rule 60(d)(3). As an initial matter, Appellants acknowledge that the district court correctly articulated the heightened standard for relief under Rule 60(d)(3). App. Br. 16. Under Rule 60(d)(3), the court retains the power to "set aside judgment for fraud on the court." "Since attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the court." *H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir. 1976). Allegations of attorney misdeeds, however, are "serious charge[s] and ought not to be recklessly made without substantial support." *Id.* at 1118-19.

Importantly, fraud on the court is "conduct: 1) on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) *deceives the court*." *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993) (emphasis added). Fraud on the court must be proved by clear and convincing evidence. *Id.* Moreover, fraud on the court applies to "only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Id.* at 352.

Under Rule 60(d), the level of fraud or misconduct alleged must be "several notches of severity above that required for a Rule 60(b)(3) motion." *Giasson Aerospace Sci., Inc. v. RCO Eng'g, Inc.*, 872 F.3d 336, 340 (6th Cir. 2017). Relief under Rule 60(d) is reserved for "'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata." *Park W. Galleries, Inc. v. Hochman*, 692 F.3d 539, 545 (6th Cir. 2012). This Court has ruled that, in considering the allegations of fraud on the court, the court need only consider whether a party deliberately disobeyed an order of the court, not the parties' voluntary dealings with each other in discovery. *H.K. Porter*

*Co.*, 536 F.2d at 1119. "[A]llegations of nondisclosure during pretrial discovery are not sufficient to support an action for fraud on the court." *Id.*

In the Order, the district court held that Appellants "have not and cannot demonstrate by clear and convincing evidence that Class Counsel engaged in conduct sufficient to satisfy [Rule 60(d)(3)'s] stringent fraud standard." Order, R. 1053, Page ID # 73063. In refuting Appellants' very same assertions that Class Counsel misrepresented or fraudulently concealed health impacts, the district court held that it was not deceived as required by the Rule, reasoning that:

> The record, however, decisively supports the fairness of the Settlement. In approving the Settlement, the Court reviewed extensive briefing and conducted a fairness hearing, at which it heard thorough arguments from the parties, posed questions to Class Counsel, and addressed each Objector's arguments. Objectors relied heavily on the claims of Scott Smith and Stephen Petty, purported experts in environmental testing and exposure, as well as George Thompson, Ph.D., a purported toxicology expert. *See, e.g.*, Affidavit of Dr. George Thompson (ECF Nos. 508 at PageID #: 9097-9102; 537, and 551-6). Their views of potential contamination and health risks were aired in public filings between July and September 2024. The Court also considered the Declaration of Judge Phillips (ECF No. 518-5), who served as the mediator and made the recommendation that resulted in the Class Action Settlement. The Court also issued an Order (ECF No. 557), which specifically addressed and overruled the Objections, and approved the Settlement.

*Id.* at Page ID # 73060.

The district court properly held that the record did not support a finding of misconduct "several notches of severity" above that required for a Rule 60(b)(3) motion. On appeal, Appellants simply argue – yet again – that the record contains

an "attorney misrepresentation at a Rule 23(e) fairness hearing, going to the origin of expert content on which the court had to make Rule 23(e) findings, established by documentary evidence Class Counsel itself did not disclose, and directly answered to the tribunal's inquiry", and that such alleged misrepresentation meets the heightened standard required to succeed on a Rule 60(d)(3) fraud on the court claim. App. Br. 25. However, as discussed in Section C(ii) *supra*, the alleged "misrepresentation" is itself unfounded and fails to establish any evidence of fraud, misconduct or wrongdoing on the part of Class Counsel, once again falling well below the heightened standard required of Rule 60(d)(3).

## CONCLUSION

For the reasons set forth above, this Court should affirm.

Respectfully submitted,

/s/ *Seth A. Katz*

Seth A. Katz
BURG SIMPSON ELDREDGE HERSH
& JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80112
303-792-5595
skatz@burgsimpson.com

M. Elizabeth Graham
GRANT & EISENHOFFER P.A.
123 S. Justison Street, 6th Floor
Wilmington, DE 19801
303-622-7000
egraham@gelaw.com

Jayne Conroy (pro hac vice below)
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
212-784-6400
jconroy@simmonsfirm.com

*Plaintiffs' Class Counsel*

## CERTIFICATE OF COMPLIANCE

A. This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) / 6 Cir. R. 32 (principal) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 9,226 words, as counted by the word-processing system used to prepare it, within the 13,000-word limit.

B. This brief complies with typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of the Fed. R. App. P. 32(a)(6) because it was prepared in proportionally spaced typeface using Times New Roman 14-point font.

Respectfully submitted,

*/s/ Seth A Katz*

Seth A. Katz
BURG SIMPSON ELDREDGE HERSH
& JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80112
303-792-5595
skatz@burgsimpson.com

M. Elizabeth Graham
Adam J. Gomez
GRANT & EISENHOFFER P.A.
123 S. Justison Street, 6th Floor
Wilmington, DE 19801
303-622-7000
egraham@gelaw.com
agomez@gelaw.com

Jayne Conroy (pro hac vice below)
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
212-784-6400
jconroy@simmonsfirm.com

*Plaintiffs' Class Counsel*

# ADDENDUM

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry | Date Filed | Page ID Range | Description |
|---|---|---|---|
| 28 | 04/05/2023 | 549-571 | Consolidation Order (appointing Class Counsel) |
| 138 | 08/14/2023 | 1771-1876 | First Amended Master Consolidated Class Action Complaint |
| 452-2 | 04/26/2024 | 6002-6074 | Class Action Settlement Agreement |
| 485 | 07/01/2024 | 7304-7318 | Objection to Class Action Settlement Agreement and Motion to Enlarge Time to Opt Out of Property Portion of Class Settlement Agreement |
| 486 | 07/01/2024 | 7971-7990 | Objection to Class Action Settlement Agreement and Motion to Enlarge Time to Opt Out of Property Portion of Class Settlement Agreement |
| 487-2 | 07/01/2024 | 8681 | Objections to Settlement |
| 508 | 08/18/2024 | 9076-9102 | Objectors' Reply to Class Plaintiffs' Response in Opposition to Objectors' Request for Enlargement of Time to Opt-Out |
| 510 | 08/20/2024 | 9129-9132 | Order on Notice to Class Members / Opt-Out Issues |
| 516 | 09/06/2024 | 9153-10894 | Notice of Filing of Written Objections to Class Action Settlement Agreement |
| 518 | 09/06/2024 | 10896-10898 | Motion for Final Approval of Settlement |
| 518-2 | 09/06/2024 | 10949, 10954--10958 | Declaration of M. Elizabeth Graham |
| 518-3 | 09/06/2024 | 11060 | Declaration of Seth A. Katz |
| 518-5 | 09/06/2024 | 11085-11089 | Declaration of Judge Layn R. Phillips in Support of Motion for Final Approval of Class Action Settlement |
| 518-10 | 09/06/2024 | 11186-11204 | Declaration of Richard J. Schuhmann, Ph.D. |
| 529 | 09/18/2024 | 11590-11606 | Response to Motion for Final Approval of Settlement and Objectors' Brief in Support of Objections |
| 534 | 09/23/2024 | 11627 | Third-Party Affidavit/Declaration of Stephen Petty |
| 536 | 09/23/2024 | 11635-12313 | Third-Party Affidavit/Declaration of Scott Smith |
| 537 | 09/23/2024 | 12314-12319 | Affidavit of Dr. George Thompson |
| 540 | 09/23/2024 | 12404-12410 | Declaration of Stephen Petty |
| 540-1 | 09/23/2024 | 12311-12537 | Declaration of Stephen Petty—Exhibits |
| 553 | 09/25/2024 | 14423-14541 | Fairness Hearing Transcript |
| 557 | 09/27/2024 | 14580-14586 | Judgment on Final Approval of Settlement |
| 558 | 09/27/2024 | 14587 | Notice of Appeal |
| 570 | 10/08/2024 | 14768 | Notice of Appeal |

| Record Entry | Date Filed | Page ID Range | Description |
|---|---|---|---|
| 993 | 09/25/2025 | 68906-68907 | Motion for Relief from Judgment |
| 994 | 09/29/2025 | 69016-69017 | Motion for Relief from Judgment |
| 1002 | 10/10/2025 | 69093-69119 | Norfolk Southern's Combined Opposition to Certain Class Members' Motions for Relief from Judgment |
| 1003 | 10/10/2025 | 69130-69133 | Class Counsel's Response in Opposition to Movants' September 25, 2025, and September 29, 2025 Motions for Relief from Judgment |
| 1014-1 | 10/24/2025 | 70983 | Reply in Support of Motions for Relief from Judgment—Exhibit (Rebuttal PR Email Chain) |
| 1014-2 | 10/24/2025 | 70985-70987 | Reply in Support of Motions for Relief from Judgment—Exhibit (EPA Sampling-Plan Letter) |
| 1014-3 | 10/24/2025 | 70989-71000 | Reply in Support of Motions for Relief from Judgment—Exhibit (Peer-Reviewed Studies) |
| 1014-4 | 10/24/2025 | 71002 | Reply in Support of Motions for Relief from Judgment—Exhibit (Soil Testing) |
| 1014-5 | 10/24/2025 | 71037-71041 | Reply in Support of Motions for Relief from Judgment—Exhibit (FOIA Production Email) |
| 1053 | 05/01/2026 | 73040-73068 | Order Denying Motions for Relief from Judgment |
| 1054 | 05/29/2026 | 73069 | Notice of Appeal |